

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY 0 4 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF GEORGIA

## ATLANTA DIVISION



———————————————————— x

| | |
|---|---|
| BELMONT HOLDINGS CORP., Individually and on Behalf of All Others Similarly Situated, | Civil Action No. |
| Plaintiff, | **1 09-CV-1185** |
| vs. | |
| SUNTRUST BANKS, INC., SUNTRUST CAPITAL IX, JAMES M. WELLS, III, WILLIAM H. ROGERS, JR., RAYMOND D. FORTIN, L. PHILLIP HUMANN, MARK A. CHANCY, THOMAS E. PANTHER, ROBERT M. BEALL, II, J. HYATT BROWN, ALSTON D. CORRELL, JEFFREY C. CROWE, THOMAS C. FARNSWORTH, JR., PATRICIA C. FRIST, BLAKE P. GARRETT, JR., DAVID H. HUGHES, E. NEVILLE ISDELL, M. DOUGLAS IVESTER, J. HICKS LANIER, G. GILMER MINOR, III, LARRY L. PRINCE, FRANK S. | **CLASS ACTION** <br><br> COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS <br><br><br><br><br><br> **DEMAND FOR JURY TRIAL** |

—————————————————— x

[Caption continued on following page.]

ROYAL, KAREN HASTIE WILLIAMS,  )
PHAIL WYNN, JR., MORGAN            )
STANLEY & CO. INCORPORATED,     )
CITIGROUP GLOBAL MARKETS INC.,)
UBS SECURITIES LLC, MERRILL      )
LYNCH, PIERCE, FENNER & SMITH  )
INCORPORATED, SUNTRUST           )
ROBINSON HUMPHREY INC., BANC  )
OF AMERICA SECURITIES LLC and   )
PRICEWATERHOUSECOOPERS LLP,  )
                                                )
                          Defendants.          )
                                                )
_____)

## NATURE OF THE ACTION

1.     This is a securities class action on behalf of all persons who purchased SunTrust Capital IX 7.875% Trust Preferred Securities (the "Securities") of SunTrust Banks, Inc. ("SunTrust" or the "Company") pursuant and/or traceable to a false and misleading registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's February 2008 initial public offering of the Securities (the "Offering").  This action asserts strict liability claims under the Securities Act of 1933 ("1933 Act") against SunTrust, its officers and/or directors, its auditor, and the investment banks which underwrote the February 2008 Offering (collectively, "defendants").

2.     SunTrust is a financial holding corporation, providing a range of financial products and services to consumer and corporate customers in the United States and internationally.   The Company was incorporated 1984 and is based in Atlanta, Georgia.

3.     Defendants consummated the Offering pursuant to the false and misleading Registration Statement and Prospectus, selling 27.6 million units of the Securities at $25 per share, for proceeds of over $690 million.  The Registration Statement/Prospectus incorporated SunTrust's financial results for 2007 and Forms 8-K dated February 12, 2008.

- 1 -

4.      In November 2008, SunTrust received $3.5 billion in funds from the Troubled Asset Relief Program ("TARP") and an additional $1.4 billion in December 2008.  Then on January 22, 2009, when SunTrust released its earnings for the fourth quarter of 2008, SunTrust reported its first quarterly loss in at least two decades, cut its quarterly dividend from $0.54 to $0.10 per common share, and announced a significant increase in its provision for loan losses.  When this became public, the price of the Securities declined significantly.

5.      The true facts which were omitted from the Registration Statement were:

(a)      The Company's assets, including loans and mortgage-related securities were impaired to a greater extent than the Company had disclosed;

(b)      Defendants failed to properly record losses for impaired assets;

(c)      The Company's internal controls were inadequate to prevent the Company from improperly reporting its impaired assets; and

(d)      The Company's capital base was not as well capitalized as it had represented.

## JURISDICTION AND VENUE

6.      The claims asserted herein arise under and pursuant to §§11, 12(a)(2) and 15 of the 1933 Act [15 U.S.C. §§77k, 77l(a)(2) and 77o].  In connection with the acts complained of, defendants, directly or indirectly, used the means and instrumentalities

- 2 -

of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

7.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the 1933 Act.

8.   Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because the SunTrust and the underwriter defendants conduct business in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

9.   In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

10.   Plaintiff and proposed lead plaintiff Belmont Holdings Corp. ("Belmont") is a Pennsylvania corporation located in Bala Cynwyd, Pennsylvania. Belmont acquired the Securities pursuant or traceable to the Offering and has been damaged thereby.

- 3 -

11.     Defendant SunTrust is a financial holding corporation, providing a range of financial products and services to consumer and corporate customers in the United States and internationally.

12.     Defendant SunTrust Capital IX ("SunTrust Capital") is a Delaware statutory trust.  SunTrust Capital issued the Securities that were then guaranteed by SunTrust.  The only assets of SunTrust Capital are 7.875% Junior Subordinated Notes due March 15, 2068 issued by SunTrust.

13.     Defendant James M. Wells, III ("Wells") has been Chairman of the Board of SunTrust since April 29, 2008 and Chief Executive Officer ("CEO") since January 1, 2007.  From December 9, 2004 until December 31, 2006, Wells was President and Chief Operating Officer of SunTrust.

14.     Defendant William H. Rogers, Jr. ("Rogers") has been President of SunTrust since December 12, 2008, with responsibility for geographic banking organization; the retail, commercial, mortgage and wealth and investment management business; and corporate marketing.  Rogers has had responsibility for the wealth and investment management line of business since October 2000.  In December 2004, Rogers assumed responsibility for the mortgage and commercial lines of business.  In November 2006, Rogers assumed responsibility for corporate and investment banking lines of business.

- 4 -

15.     Defendant Raymond D. Fortin ("Fortin") has been Corporate Executive Vice President since December 2004 and General Counsel of SunTrust. Fortin is responsible for legal affairs, serves as Corporate Secretary and has administrative responsibility for internal audit. Fortin signed the materially false and misleading Registration Statement.

16.     Defendant L. Phillip Humann ("Humann") was Executive Chairman of the Board of SunTrust until he retired in April 2008. Humann signed the false and misleading Registration Statement.

17.     Defendant Mark A. Chancy ("Chancy") is Corporate Executive Vice President and Chief Financial Officer ("CFO") of SunTrust. Chancy signed the false and misleading Registration Statement.

18.     Defendant Thomas E. Panther ("Panther") is Senior Vice President and Controller of SunTrust. Panther signed the false and misleading Registration Statement.

19.     Defendant Robert M. Beall, II ("Beall") is a director of SunTrust. Beall signed the false and misleading Registration Statement.

20.     Defendant J. Hyatt Brown ("Brown") was a director of SunTrust until April 2008. Brown signed the false and misleading Registration Statement.

- 5 -

21.     Defendant Alston D. Correll ("Correll") is a director of SunTrust. Correll signed the false and misleading Registration Statement.

22.     Defendant Jeffrey C. Crowe ("Crowe") is a director of SunTrust. Crowe signed the false and misleading Registration Statement.

23.     Defendant Thomas C. Farnsworth, Jr. ("Farnsworth") was a director of SunTrust until April 2008. Farnsworth signed the false and misleading Registration Statement.

24.     Defendant Patricia C. Frist ("Frist") is a director of SunTrust. Frist signed the false and misleading Registration Statement.

25.     Defendant Blake P. Garrett, Jr. ("Garrett") is a director of SunTrust. Garrett signed the false and misleading Registration Statement.

26.     Defendant David H. Hughes ("Hughes") is a director of SunTrust. Hughes signed the false and misleading Registration Statement.

27.     Defendant E. Neville Isdell ("Isdell") was a director of SunTrust until April 2008. Isdell signed the false and misleading Registration Statement.

28.     Defendant M. Douglas Ivester ("Ivester") is a director of SunTrust. Ivester signed the false and misleading Registration Statement.

29.     Defendant J. Hicks Lanier ("Lanier") is a director of SunTrust. Lanier signed the false and misleading Registration Statement.

30.     Defendant G. Gilmer Minor, III ("Minor") is a director of SunTrust. Minor signed the false and misleading Registration Statement.

31.     Defendant Larry L. Prince ("Prince") is a director of SunTrust.  Prince signed the false and misleading Registration Statement.

32.     Defendant Frank S. Royal ("Royal") is a director of SunTrust.  Royal signed the false and misleading Registration Statement.

33.     Defendant Karen Hastie Williams ("Williams") is a director of SunTrust. Williams signed the false and misleading Registration Statement.

34.     Defendant Phail Wynn, Jr. ("Wynn") is a director of SunTrust.  Wynn signed the false and misleading Registration Statement.

35.     The defendants referenced above in ¶¶13-34 are referred to herein as the "Individual Defendants."

36.     Defendant CitiGroup Global Markets Inc. ("CitiGroup Global") is the brokerage and securities arm of CitiGroup.  CitiGroup Global was an underwriter for the Offering.

37.     Defendant Morgan Stanley & Co. Inc. ("Morgan Stanley") is a global financial services firm that, through its subsidiaries and affiliates, provides its products and services to customers, including corporations, governments, financial institutions and individuals.  Morgan Stanley assists public and private corporations in

- 7 -

raising funds in the capital markets (both equity and debt), as well as in providing strategic advisory services for mergers, acquisitions and other types of financial transactions. Morgan Stanley was an underwriter for the Offering.

38. Defendant UBS Securities LLC ("UBS") provides a range of financial products and services worldwide. UBS was an underwriter for the Offering.

39. Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") provides capital markets services, investment banking and advisory services, wealth management, asset management, insurance, banking and related products and services on a global basis. Merrill Lynch was an underwriter for the Offering.

40. Defendant SunTrust Robinson Humphrey Inc. ("SunTrust Robinson") provides a range of financial products and services worldwide and was an underwriter for the Offering.

41. Defendant Banc of America Securities LLC ("Banc of America") is the investment banking arm of Bank of America. Banc of America offers trading and brokerage services; debt and securities underwriting; debt and equity research; and advice on public offerings, leveraged buyouts, and mergers and acquisitions. Banc of America was an underwriter for the Offering.

42. Pursuant to the 1933 Act, the defendants referenced in ¶¶36-41 above are referred to herein as the "Underwriter Defendants."

- 8 -

43.     The Underwriter Defendants are *liable* for the false and misleading statements in the Registration Statement.   In connection with the Offering, the Underwriter Defendants drafted and disseminated the Registration Statement and were paid fees in connection therewith.  The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

44.     Defendant PricewaterhouseCoopers LLP ("PwC") is an audit, tax and advisory firm that served as SunTrust's auditor during the relevant period and, with its consent, was named as having certified a portion of the Registration Statement as well as the financial results in SunTrust's 2007 Form 20-F.

## CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who acquired the Securities pursuant or traceable to the Company's false and misleading Registration Statement for the Offering and who were damaged thereby (the "Class").  Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

- 9 -

46.    The members of the Class are so numerous that joinder of all members is impracticable. The Securities were actively traded on the NYSE under the symbol STI-Z. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by SunTrust or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

47.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

48.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

49.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are: whether the 1933 Act was violated by defendants' acts as alleged herein; whether statements made by defendants to the investing public in the Registration Statement misrepresented

- 10 -

material facts about the business, operations and management of SunTrust; and to what extent the members of the Class have sustained damages and the proper measure of damages.

50.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## THE FALSE AND DEFECTIVE REGISTRATION STATEMENT AND PROSPECTUS

51.     On or about October 18, 2006, SunTrust filed with the SEC a Form S-3 Registration Statement and Prospectus using a "shelf" registration or continuous offering process.  Under the shelf, SunTrust would be permitted to sell securities described in various prospectus supplements in one or more offerings.  The prospectus supplements would form part of the registration statement for each offering.  The securities were to be issued by SunTrust.  The Form S-3 stated:

> The SEC allows us to "incorporate by reference" into this prospectus the information we file with it, which means that we can disclose important information to you by referring you to those documents.  The information incorporated by reference is an important part of this prospectus and information that we subsequently file with the

SEC will automatically update and supercede information in this prospectus . . . . We incorporate by reference . . . any future filings we make with the SEC under Sections 13(a), 13(c), 14 or 15(d) of the Securities Exchange Act of 1934 . . . .

52.    On February 27, 2008, SunTrust filed its Prospectus Supplement to its Prospectus dated October 18, 2006, which forms part of the Registration Statement pursuant to which SunTrust was to sell 27.6 million shares of Securities to the public at $25 per share.  The Prospectus stated:

The SEC allows us to incorporate by reference the information we file with them, which means that we can disclose important information to you by referring you to those documents. The information incorporated by reference is considered to be a part of this prospectus supplement, and later information that we file with the SEC will automatically update and supersede this information. We incorporate by reference the following documents listed below and any future filings made with the SEC under Section 13(a), 13(c), 14 or 15(d) of the Securities Exchange Act of 1934, as amended, or the "*Exchange Act*," until we or any of the underwriters sell all of the securities:

- Annual Report on Form 10-K for the year ended December 31, 2007; and

- Current Reports on From 8-K dated February 16, 2007 (Form 8-K/A filed on January 7, 2008) and February 12, 2008 (except Item 7.01 and the related Exhibit 99.1 included in Item 9.01).

53.    SunTrust's Form 10-K for the year ended December 31, 2007, filed with the SEC on February 20, 2008 and incorporated by reference into the Prospectus and Registration Statement, reported net income for 2007 of $1,603.7 million, assets of

- 12 -

$179.6 billion, assets under advisement of $250.0 billion and total loans serviced by SunTrust Mortgage reaching $149.9 billion.

54.     The 2007 full year results included approximately $700 million in market valuation losses related to the asset-backed securities, the mortgage loan warehouse, and the capital markets warehouse and residual interests, net of market valuation gains on the Company's debt carried at fair value.  In aggregate, the Company recorded net market valuation losses of $555 million during the quarter.  The Company recorded approximately $510 million in market valuation losses related to securities that were purchased during the fourth quarter from certain money market funds that are managed by Trusco Capital Management, a subsidiary of the Company, as well as Three Pillars Funding LLC, a multi-seller commercial paper conduit sponsored by the Company.  At the time of purchase, these securities were predominantly AAA or AA-rated, short dated residential mortgage-backed securities, Structured Investment Vehicles ("SIVs"), and corporate and consumer collateralized debt obligations.  These mark-downs reflect the lack of liquidity in the market for these securities, deterioration in the credit quality of the underlying assets, and/or the fact that the respective investment vehicle has entered restructuring proceeds.  The Company also recognized in the fourth quarter approximately $45 million in net market valuation losses related to its trading and securitization assets, mortgage loan valuation write-

downs, and a net write-up in SunTrust corporate debt.  Also significantly impacting

the fourth quarter was $356.8 million in provision for loan losses, which was driven

by deterioration in the residential real estate market.

55.    The 2007 Form 10-K, under Capital Resources, stated:

We are committed to remaining well capitalized and have set a Tier 1 target ratio for the Company of 7.5%.  This ratio declined during 2007 with much of the decrease taking place during the fourth quarter moving from 7.44% at September 30, 2007 to 6.93% at December 31, 2007.  We expect the Tier 1 ratio to be restored to the targeted level via the potential issuance of enhanced trust preferred securities qualifying as regulatory capital, and transactions we are currently evaluating with respect to our holdings of common stock in The Coca-Cola Company that would yield an increase in Tier 1 capital.

The decline in our capital ratios during 2007 was the result of the net impact of the following factors:

- Effective January 1, 2007 we adopted SFAS No. 157 and SFAS No. 159.  The adoption of these fair value standards resulted in a $399.5 million reduction in retained earnings, which was partially offset by a $147.4 increase in accumulated other comprehensive income due to the transfer of approximately $15.4 billion in available for sale investment securities to trading assets.  See "Adoption of Fair Value Accounting Standards" in MD&A and Note 20, "Fair Value," to be Consolidated Financial Statements for more information.

- Also effective January 1, 2007, we adopted FIN 48 which resulted in a reduction of total equity of $41.9 million.  We also adopted FSP FAS 13-2, "Accounting for a Change or Projected Change in the Timing of Cash Flows Relating to Income Taxes Generated by a Leveraged Lease Transaction," effective January 1, 2007.  The adoption of this standard resulted in a reduction of total equity of $26.3 million.

- 14 -

- On February 13, 2007, we amended our retirement benefits plans, supplemental benefits plans and our other postretirement welfare plans. These amendments resulted in a remeasurement of our plans' obligations and increased accumulated other comprehensive income by $79.7 million.

- On July 6, 2007, we repaid $250.0 million of Tier 1 qualifying, junior subordinated debentures held by a trust that had an original maturity date of June 15, 2027.

- On December 21, 2007, we redeemed $350 million of a privately placed REIT Preferred security that had qualified as Tier 1 capital.

- During the second half of 2007, our equity was negatively impacted by market valuation pre-tax write-downs of $527.7 million related to securities purchased from Three Pillars and money funds managed by Trusco.

- During 2007, we repurchased 10,758,059 shares for $853.4 million under a Board authorized program. As of December 31, 2007, we were authorized to purchase up to an additional 30,000,000 shares under publicly announced plans or programs although we do not expect to engage in repurchases in the immediate future.

56. SunTrust reported its 2007 earnings results on January 23, 2008. Also on this date, SunTrust held an earnings conference call in which defendants Wells and Rogers participated. Defendants emphasized that:

[Chancy:]   The rapid deterioration of the consumer and residential real estate portfolios in the fourth quarter drove charge-offs to 55 basis points, up from 34 basis points in the third quarter. In October, we saw an increase in delinquency and severity of losses that was within our previous expectations of 35 to 45 basis points annualized for the quarter. However, a significant acceleration in roll rates through the delinquency queues and severity of losses occurred in November. In mid-December,

once we were able to fully analyze the November trends, it became apparent that we would exceed our previous estimate. In addition to these factors, the accelerating decline in residential real estate values created a need to significantly increase the allowance for loan and lease losses to 1.05% of loans.

Our current allowance recognizes that some further erosion in real estate values is likely and assumes similar roll rate and delinquency trends during the first half of 2008. . . . As such, we expect charge-offs to increase in the first quarter and perhaps the second quarter in the consumer and residential real estate based portfolios. Further, we are projecting charge-offs to moderate in the second half in these portfolios, to have relatively good C&I performance and an increasing risk in charge-offs in residential construction as current weakness turns into charge-offs later this year.

\*       \*       \*

In the fourth quarter, we also recorded a market valuation writedown of $116 million on $967 million of securities we consolidated in the third quarter of 2007 as a result of our intent to close a privately placed money market fund. These securities had original AAA ratings and consist of roughly 80% residential mortgage-backed securities. Market valuation writedown of approximately $16 million was recorded in the third quarter; however, the market value for these securities declined significantly during the fourth quarter due to some trading activity in certain of the securities and we determined that an additional writedown of $116 million was appropriate.

\*       \*       \*

So in summary, in the last few months we've purchased over $3 billion in securities and marked them to reasonable market values. We are seeking to mitigate risk via sales, expecting near-term cash flows in some situations and choosing to hold other securities. Markets remain volatile and we expect to receive December performance data later this month that could affect the value of these securities.

- 16 -

*     *     *

During the quarter we made good progress in mitigating our securitization related exposures. [Key] actions include securitizing commercial loans and retaining only the AAA securities, selling off half of the SBA loans, and selling off other selected positions. Our remaining exposure is over 90% government guaranteed SBA and CLO assets and $46 million of that residual is residual interest on our own commercial loans that were securitized in the first quarter of 2007 as part of our balance sheet management strategies. In summary, . . . our exposure to further losses has been reduced by over $850 million since the third quarter.

*     *     *

Consumer and residential real estate are clearly under stress throughout the industry and the same is true at SunTrust, though our commercial portfolio is generally performing well. Credit deterioration is not broad-based. It comes from specific sub-segments of our portfolio, including Alt-A loans, high LTV second liens, broker originated loans, and residential construction and construction to perm. These portfolios total approximately $16 billion in outstandings, or roughly 13% of our total portfolio at December 31, and much of this is reasonably well secured. We implemented numerous actions throughout 2007 to curtail or eliminate the inflow of new higher risk loans and will focus in 2008 on mitigating the risk that we do have. Finally, as noted earlier, we expect charge-offs to trend up in the near term; however, given our under-writing standards, collateral position, and risk mitigation activities, we expect 2008 losses to be manageable.

57.     In response to questions about SunTrust's Residential Portfolio, Thomas

Freeman ("Freeman"), SunTrust's Chief Risk Officer, noted:

It's a really difficult question to answer because the severity is product specific and also geographic specific in terms of what's going on. We're seeing more severity in the declining markets than we are in the more stable markets and the level of severity in terms of the types of product

- 17 -

has a lot to do with the loan to values and the quality of the underlying assets, and so that would be a range across . . . the whole product set.

*       *       *

Actually, what we tried to do in the slides was walk you through where the severity is actually coming from. The severity is really coming out of the Alt A portfolio and the high loan-to-value home equity portfolio and that [is where you are] seeing severity, as well as in the brokered lines. If you take those out, actually Florida's performing just about what the rest of the portfolio is performing at. It's not geographic specific. It's more product specific and channel specific.

58.    In the Annual Report to Shareholders Letter, signed by defendant Wells

on February 29, 2008, he stated:

> We do not believe the direct financial impact on SunTrust of the meltdown in the housing and credit markets was disproportionate for an institution of our size and business mix. In addition, the fact that other large financial services institutions were hurt by these same forces provides a context within which to consider our results relative to others. From a SunTrust share price perspective, however, I am cutely aware that industry context does not offer much in the way of practical comfort.

> As we look ahead, it seems likely that our industry, and thus our Company, will be operating for some time in an environment marked by economic uncertainty at best, continued weakness in housing, unsettled capital markets, and a still-unfolding credit cycle. In other words, as I write this letter in early 2008, it doesn't look like earnings pressures on banks will soon be receding.

> Industry challenges notwithstanding, you should know that SunTrust has the financial and human resources necessary to see us through tough times. We enjoy a solid balance sheet, ample liquidity, adequate reserves, and strong capital ratios. It is not to imply satisfaction with last year's results to observe that SunTrust was in fact profitable in 2007. In addition, in February 2008 the Board of Directors approved a

- 18 -

five percent increase in the quarterly dividend on common stock, maintaining our long history of annual dividend increases. The current indicated annual dividend is $3.08 per share.

59.     The Registration Statement/Prospectus contained untrue statements of material fact or omitted to state other facts necessary to make the statements made therein not misleading and was not prepared in accordance with applicable SEC rules and regulations.  Specifically, the Registration Statement/Prospectus failed to disclose that:

(a)     The Company's assets, including loans and mortgage-related securities loans were impaired to a greater extent than the Company had disclosed;

(b)     The Company's investments were impaired to a greater extent than the Company had disclosed;

(c)     Defendants failed to properly record losses for impaired assets;

(d)     The Company's internal controls were inadequate to prevent the Company from improperly reporting its impaired assets; and

(e)     The Company's capital base was not as well capitalized as it had represented.

## POST-OFFERING EVENTS

60.     On January 22, 2009, SunTrust issued a press release stating:

SunTrust Banks, Inc. reported net income available to common shareholders of $746.9 million, or $2.13 per average common diluted

- 19 -

share, for 2008 compared to $1,603.7 million, or $4.55 per average common diluted share in 2007.   Net income available to common shareholders in the fourth quarter was a loss of $379.2 million, or $1.08 per average common diluted share, compared to $3.3 million, or $0.01 per average common diluted share, in the fourth quarter of 2007.   The Company's 2008 and fourth quarter results were adversely impacted by credit-related charges that reflect the dramatic deterioration in the economy, especially during the fourth quarter.

*     *     *

Mr. Wells said the significant increase in the fourth quarter provision for loan losses from the prior quarter covered current loan charge-offs and also strengthened the Company's allowance for loan losses.   He noted that the Company concluded 2008 "in a very strong regulatory capital position and with excellent liquidity."   Mr. Wells further noted that, "despite our strong capital position, given the strain on earnings from increased credit costs and the challenging revenue environment, SunTrust's Board of Directors has decided to reduce the quarterly dividend to $0.10 per common share outstanding until the economic environment and earnings outlook improve."

*     *     *

The Company recorded provision for loan losses of $962.5 million, or $410.0 million in excess of net charge-offs, increasing the allowance for loan losses to 1.86% of total loans during the fourth quarter.   Additionally, during the fourth quarter, the Company recorded $236.1 million in operating losses, which were primarily related to losses stemming from borrower misrepresentations and insurance claim denials, and $100.0 million related to mortgage reinsurance reserves.

61.    Also on January 22, 2009, during the Company's fourth quarter 2008 earnings conference call, Chancy and Freeman made the following statements:

[Chancy]:  Related to our participation in the capital purchase program and as I'm sure you are aware, SunTrust originally chose to participate at

- 20 -

less than the full amount available and then subsequently decided to increase the amount to the full 3% of risk weighted assets available to us.

Our original decision was predicated on a number of factors. Including the economic outlook in mid-October, the recently completed Coke transactions, the capital and liquidity that we deemed necessary to support organic loan growth, the 8% pretax costs of the capital relative to our ability to leverage the funds, and finally, refinancing considerations. So what changed?

As we pointed out in our press release in December, the economic data and outlook changed significantly in November and early December. Other factors influenced our thinking as well. As we were evaluating acquisition activity and opportunities we reached the conclusion that potential capital requirements were more significant than previously thought as asset and loan values had declined further. Another factor was the desire to ensure adequate capital to meet the borrowing needs to clients and prospects through this recession. And finally, we noted that most regional banks issued the maximum amount of securities available and we did not wish to be at a competitive disadvantage.

\*     \*     \*

Total provision expense for the quarter was $963 million, bringing the full year amount to $2.5 billion. Net charge-offs increased to $553 million or 1.72% of loans in the fourth quarter. Charge-offs were increasing about as expected through November, however, a significant increase in December drove the overall rate of increase higher with residential mortgages being the largest contributor. $410 million of provision was recorded in excess of net charge-offs in the quarter. This excess provision increased the allowance to $2.4 billion, or 1.86% of loans. For the full year, we have increased the reserve by 83% or $1.1 billion from the end of 2007.

\*     \*     \*

[Freeman:]  Annualized fourth quarter net charge-offs increased to 1.72% of average loans, up from 124 basis points in the third quarter. Charge-offs for all products increased in the quarter, with the largest growth in the construction, consumer and commercial categories.  A leading indicator of credit quality is the 30 to 89 day delinquency.  This ratio deteriorated in the fourth quarter, climbing to 1.81% at year end, after having been stable all year in the 1.5% range.  While several product categories showed some upward trends in early stage delinquency, residential mortgages exhibited the highest rate of increase. And were the largest contributor to the overall increase.

The increase in early stage delinquencies was driven by a sudden jump in consumer roll rates in October and November with December showing some improvement in mortgage roll rates.  Roll rates are the proportion of the delinquency stage, say 30 to 59 days past due that moves on to the next stage, say 60 to 89 days past due during the course of a reporting period.  We adjusted our residential real estate roll rate assumptions for delinquency and frequency which necessitated an increase in the allowance for loan losses.  The increase in projected mortgage losses drove the $410 million increase to 1.86% of loans.  At the margin, the expected increase in losses is driven by changes in consumer payment behavior, and the resulting increase in loss frequency.

62.   When this information became public, the price of the Securities declined significantly.

## COUNT I

### Violations of Section 11 of the 1933 Act
### Against All Defendants

63.   Plaintiff repeats and realleges each and every allegation contained above.

For purposes of this Count, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this

- 22 -

Count is based solely on claims of strict liability and/or negligence under the 1933 Act.

64.    This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

65.    The Registration Statement was false and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

66.    SunTrust is the registrant for the Offering.  As issuer of the shares, SunTrust is strictly liable to plaintiff and the Class for the misstatements and omissions.

67.    The Individual Defendants named in this Count were responsible for the contents and dissemination of the Registration Statement.  Each of the Individual Defendants named in this Count signed or authorized the signing of the Registration Statement or were identified in the Prospectus.

68.    The Underwriter Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

69.    PwC acted as SunTrust's auditor and was named by consent as having certified part of the Registration Statement as well as SunTrust's 2007 Form 10-K.

- 23 -

70.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

71.     By reason of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

72.     Plaintiff acquired the Securities pursuant and/or traceable to the Registration Statement for the Offering.

73.     Plaintiff and the Class have sustained damages.  At the time of their purchases of the Securities, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to mid-2008.  Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based and the time plaintiff filed this complaint. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this complaint.

## COUNT II

### Violations of Section 12(a)(2) of the 1933 Act
### Against SunTrust and the Underwriter Defendants

74.     Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein.  For purposes of this Count, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the 1933 Act.

75.     By means of the defective Prospectus, the defendants named herein assisted in the sale of shares of the Securities to plaintiff and other members of the Class.

76.     The Prospectus contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above.  Defendants named herein owed plaintiff and the other members of the Class who purchased the Securities pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus as set forth above.

- 25 -

77.     Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectus at the time plaintiff acquired the Securities.

78.     By reason of the conduct alleged herein, these defendants violated §12(a)(2) of the 1933 Act.  As a direct and proximate result of such violations, plaintiff and the other members of the Class who purchased the Securities pursuant to the Prospectus sustained substantial damages in connection with their purchases of the Securities.  Accordingly, plaintiff and the other members of the Class who hold such shares have the right to rescind and recover the consideration paid for their shares, and hereby tender their shares to the defendants sued herein.  Class members who have sold their shares seek damages to the extent permitted by law.

## COUNT III

### Violations of Section 15 of the 1933 Act
### Against the Individual Defendants

79.     Plaintiff repeats and realleges each and every allegation contained above. For purposes of this Count, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the 1933 Act.

- 26 -

80.    This Count is brought pursuant to §15 of the 1933 Act against the Individual Defendants.

81.    Each of the Individual Defendants was a control person of SunTrust by virtue of his or her position as a director, senior officer and/or major shareholders of SunTrust which allowed each of these defendants to exercise control over SunTrust and its operations.

82.    Each of the Individual Defendants was a culpable participant in the violations of §11 of the 1933 Act alleged in the Count above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the Offering to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action and certifying plaintiff as a Class representative;

B.    Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

- 27 -

C.      Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.      Awarding rescission or a rescissory measure of damages; and

E.      Such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED:  May 4, 2009                    COUGHLIN STOIA GELLER
                                          RUDMAN & ROBBINS LLP
                                       JOHN C. HERMAN
                                       Georgia Bar No. 348370


                                       _____
                                               JOHN C. HERMAN

                                       Monarch Centre, Suite 1650
                                       3424 Peachtree Road, N.E.
                                       Atlanta, GA  30326
                                       Telephone:  404/504-6500
                                       404/504-6501 (fax)

                                       COUGHLIN STOIA GELLER
                                          RUDMAN & ROBBINS LLP
                                       DARREN J. ROBBINS
                                       MATTHEW P. MONTGOMERY
                                       655 West Broadway, Suite 1900
                                       San Diego, CA  92101
                                       Telephone:  619/231-1058
                                       619/231-7423 (fax)

- 28 -

LAW OFFICES OF BERNARD M.
  GROSS, P.C.
DEBORAH R. GROSS
Wanamaker Bldg., Suite 450
100 Penn Square East
Philadelphia, PA  19107
Telephone:  215/561-3600
215/561-3000 (fax)

Attorneys for Plaintiff

C:\Documents and Settings\garmstrong\Local Settings\Temporary Internet Files\OLK1\Cpt SunTrust.doc