## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| BELMONT HOLDINGS CORP., | ) | |
| Individually and on Behalf of All Others | ) | |
| Similarly Situated, | ) | |
| | ) | Civil Action No. |
| Plaintiff, | ) | 1:09-cv-01185-WSD |
| v. | ) | (Consolidated) |
| | ) | |
| SUNTRUST BANKS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### MEMORANDUM IN SUPPORT OF DEFENDANT
### ERNST & YOUNG LLP'S MOTION TO DISMISS

John A. Chandler
Ga. Bar No. 120600
Cheri A. Grosvenor
Ga. Bar No. 314360
King & Spalding LLP
1180 Peachtree Street, N.E.
Atlanta, GA  30309
(404) 572-4600
(404) 572-5140 (fax)

Of Counsel:

William A. Barrett
Assistant General Counsel
Ernst & Young LLP
5 Times Square
New York, NY  10036-6530
(212) 773-9177 (direct dial)
(212) 773-2388 (fax)

## TABLE OF CONTENTS

Page

I.  INTRODUCTION..................................................................................1

II. BACKGROUND...................................................................................4

    A.    Plaintiff's Allegations .........................................................4

    B.    SunTrust's 2007 Financial Statements and Registration
        Statement ...........................................................................7

        1.    E&Y's Role as SunTrust's Auditor ..........................7

        2.    Prior Scrutiny of SunTrust's Allowance.....................8

        3.    The 2007 10-K and the Registration Statement Contained
              Extensive Risk Disclosures........................................9

    C.    Applicable Accounting Principles and Auditing Standards................10

    D.    The Real Estate Market Collapsed *After* the Registration
        Statement Took Effect..........................................................12

III. ARGUMENT ....................................................................................13

    A.    To State a Section 11 Claim, the Facts Alleged in the
        Complaint Must Support a Reasonable Inference That E&Y Is
        Liable..............................................................................13

    B.    The Complaint Fails to State a Viable Claim Against E&Y. ............14

        1.    Plaintiff's Claim Is Inconsistent with the Accounting
              Principles Cited in the Complaint..............................14

        2.    Plaintiff Fails to Plead Facts Supporting Its Boilerplate
              Allegations That E&Y Violated GAAS....................18

        3.    Plaintiff's Internal Controls Allegations Also Fail..................21

C.    Plaintiff Fails to Satisfy the Additional Pleading Requirements Applicable to Claims Based on Statements of Opinion. .....................22

D.    The Bespeaks Caution Doctrine Bars the Claim Against E&Y ..........24

IV.  CONCLUSION ................................................................................25

## TABLE OF AUTHORITIES

**CASES**

*Acito v. IMCERA Group, Inc.*,
  47 F.3d 47 (2d Cir. 1995) ..................................................................15

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ......................................................... 13-14, 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................... 13-14, 18, 20-21

*Bily v. Arthur Young & Co.*,
  834 P.2d 745 (Cal. 1992) ....................................................................8

*Bryant v. Avado Brands, Inc.*,
  187 F.3d 1271 (11th Cir. 1999) ...........................................................4

*D.E. & J. Ltd. P'ship v. Conaway*,
  284 F. Supp. 2d 719 (E.D. Mich. 2003), *aff'd*, 133 F. App'x 994 (6th Cir.
  2005) .................................................................................................20

*DiLeo v. Ernst & Young*,
  901 F.2d 624 (7th Cir. 1990) .............................................................15

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
  595 F. Supp. 2d 1253 (M.D. Fla. 2009), *aff'd*, No. 09-10954, 2010 U.S.
  App. LEXIS 1009 (11th Cir. Jan. 19, 2010) ................................. 20-21

*Fait v. Regions Fin. Corp.*,
  No. 09-CV-3161-LAK (S.D.N.Y.) (Ex. N) ..........................................5

*Fehribach v. Ernst & Young LLP*,
  493 F.3d 905 (7th Cir. 2007) .........................................................7, 22

*First Nationwide Bank v. Gelt Funding Corp.*,
  820 F. Supp. 89 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994) ...............23

iii

*Freidus v. ING Group N.V.*,
No. 09-CV-01049-LAK (S.D.N.Y.) (Ex. M) ........................................................5

*Halperin v. eBankerUSA.com, Inc.*,
295 F.3d 352 (2d Cir. 2002) ........................................................ 24-25

*In re Acceptance Ins. Cos. Sec. Litig.*,
423 F.3d 899 (8th Cir. 2005) ............................................................15

*In re Adams Golf, Inc. Sec. Litig.*,
381 F.3d 267 (3d Cir. 2004) ............................................................16

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
381 F. Supp. 2d 192 (S.D.N.Y. 2004) ..............................................23

*In re BellSouth Corp. Sec. Litig.*,
355 F. Supp. 2d 1350 (N.D. Ga. 2005)............................................16

*In re Cardinal Health Inc. Sec. Litig.*,
426 F. Supp. 2d 688 (S.D. Ohio 2006) ............................................20

*In re CIT Group, Inc. Sec. Litig.*,
349 F. Supp. 2d 685 (S.D.N.Y. 2004) ........................................15, 23

*In re Donald J. Trump Casino Sec. Litig.*,
7 F.3d 357 (3d Cir. 1999) ...............................................................22

*In re Metro. Sec. Litig.*,
532 F. Supp. 2d 1260 (E.D. Wash. 2007)........................................18

*In re Mirant Corp. Sec. Litig.*,
No. 1:02-CV-1467-RWS, 2009 WL 48188 (N.D. Ga. Jan. 7, 2009) ........... 14-15

*In re Serologicals Sec. Litig.*,
No. 1:00-CV-1025-CAP, 2003 WL 24033694 (N.D. Ga. Feb. 20, 2003) ... 15-16

*In re Washington Mut., Inc. Sec. Litig.*,
No. 08-MD-1919-MJP, 2009 WL 351763 (W.D. Wash. Oct. 27, 2009)...........22

*Landmen Partners Inc. v. Blackstone Group, L.P.*,
No. 1:08-CV-03601-HB, 2009 WL 3029002 (S.D.N.Y. Sept. 22, 2009)...........17

iv

*McCray v. Potter*,
    263 F. App'x 771 (11th Cir. 2008) ....................................................................13

*Olkey v. Hyperion 1999 Term Trust, Inc.*,
    98 F.3d 2 (2d Cir. 1996) ...............................................................................25

*Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*,
    711 F.2d 989 (11th Cir. 1983) .......................................................................4

*Robin v. Arthur Young & Co.*,
    915 F.2d 1120 (7th Cir. 1990) .....................................................................19

*Rubke v. Capitol Bancorp LTD*,
    551 F.3d 1156 (9th Cir. 2009) .....................................................................22

*Rudd v. Suburban Lodges of Am., Inc.*,
    67 F. Supp. 2d 1366, 1370 (N.D. Ga. 1999).................................................14

*Saltzberg v. TM Sterling/Austin Assocs.*,
    45 F.3d 399 (11th Cir. 1995) .......................................................................24

*Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*,
    No. 09-CV-01137, Slip Op. at *8-9 (N.D. Ga. Nov. 23, 2009) ........................13

*TAAM Assocs., Inc. v. Housecall Med. Res., Inc.*,
    No. 96-CV-2214-A-JEC, 1998 WL 1745361 (N.D. Ga. Mar. 30, 1998)...........16

*Virginia Bankshares, Inc. v. Sandberg*,
    501 U.S. 1083 (1991)............................................................................ 3, 22-23

*Wagner v. First Horizon Pharm. Corp.*,
    464 F.3d 1273 (11th Cir. 2006) ...................................................................24

*Washtenaw County Employees' Ret. Sys. v. Wells Real Estate Inv. Trust, Inc.*,
    No. 1:07-CV-862-CAP, 2008 WL 2302679 (N.D. Ga. Mar. 31, 2008).............23

**STATUTES**

15 U.S.C. § 77k(a) ............................................................................ *passim*

**OTHER AUTHORITIES**

AM. INST. OF CERTIFIED PUB. ACCOUNTANTS, AUDIT AND ACCOUNTING
   GUIDE FOR DEPOSITORY AND LENDING INSTITUTIONS (2006)............................10

AM. INST. OF CERTIFIED PUB. ACCOUNTANTS, CODIFICATION OF STATEMENTS
   ON AUDITING STANDARDS (2007) ............................................................ 7-8, 19

BANKERS ASS'N, BANKING TERMINOLOGY (3d ed. 1989).........................................23

FED. R. CIV. P. 8 ...........................................................................................2

FED. R. CIV. P. 9(b) ....................................................................................24

## **JOINT APPENDIX OF EXHIBITS**

The Exhibits cited in Defendant Ernst & Young's Brief in Support of Motion to Dismiss are contained in the Joint Appendix of Exhibits submitted by the SunTrust Defendants on behalf of all Defendants.

## I.    INTRODUCTION

Plaintiff's Consolidated Complaint ("Complaint"), even with the benefit of hindsight pleading, fails to offer a plausible theory of liability against Defendant Ernst & Young LLP ("E&Y").  Plaintiff allegedly bought preferred securities of SunTrust Capital IX, a subsidiary of SunTrust Banks, Inc. ("SunTrust"), pursuant to a purportedly false and misleading registration statement and prospectus issued on February 27, 2008 (the "Registration Statement" (Ex. E)).  (Compl. ¶ 1.)  The Registration Statement incorporated E&Y's audit report on SunTrust's financial statements for the year ended December 31, 2007 (the "2007 Financial Statements" (Ex. D, pp. 78-81)).  E&Y's opinion concluded that the 2007 Financial Statements presented fairly, in all material respects, the consolidated financial results of SunTrust and its subsidiaries at December 31, 2007 (the "2007 Audit Report" (Ex. D, p. 75)).

Relying on a $962.5 million provision for loan losses made almost a year after the Registration Statement took effect, Plaintiff claims that SunTrust's 2007 allowance for loan and lease losses ("ALLL") was understated by "hundreds of millions of dollars" because the increased provision allegedly should have been made at year-end 2007.  (Compl. ¶¶ 154-55.)  As a result, Plaintiff claims that the 2007 Audit Report was materially misstated and misleading.

Plaintiff's allegations demonstrate a fundamental lack of understanding of the applicable accounting principles relating to estimates, when and how the estimate of an allowance for loan losses can be recorded on the books of a bank, and when an estimate is an error. Plaintiff's § 11(a)(4) claim against E&Y requires a material misstatement in the portion of the offering document expertised by E&Y, here limited to its 2007 Audit Report on SunTrust's 2007 Financial Statements. The ALLL estimated by SunTrust in those financial statements is not a misstatement unless SunTrust made a mathematical error, misapplied generally accepted accounting principles ("GAAP"), or ignored or misused facts "*that existed at the time the financial statements were prepared*." (Statement of Financial Accounting Standards ("FAS") No. 154, ¶ h (emphasis added).) Thus, Plaintiff asks the Court to find it plausible that E&Y had a crystal ball and knew in February 2008 that the country would experience an economic freefall long before those events actually occurred in the latter half of 2008.

Such a conclusion, however, is unsupported by the Complaint's allegations. As discussed below, the claim against E&Y fails for several independent reasons. *First*, the claim against E&Y fails to satisfy a basic Rule 8 pleading standard. Plaintiff does not allege that E&Y had sufficient factual information that further losses in the loan portfolio were probable and reasonably capable of estimation

2

under FAS 5, and the Complaint fails to specify how much higher the ALLL should have been.  Indeed, SunTrust has not restated its 2007 Financial Statements, which would have been required had the ALLL as of the end of 2007 been in error. (FAS No. 154; *see* discussion in Section II.C *infra*.)  Moreover, there are no allegations as to what audit procedures E&Y failed to perform, or what audit evidence E&Y ignored or missed.  *Second*, the Complaint fails to satisfy the additional pleading requirements established by the U.S. Supreme Court in *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991), which held that claims based on an opinion must allege that the defendant did not actually hold the opinion stated.  There are no such allegations here.  *Third*, as a result of the extensive warnings contained in SunTrust's 2007 10-K and Registration Statement, Plaintiff's claim is barred by the bespeaks caution doctrine.

In short, the Complaint provides no plausible basis to conclude that E&Y should be liable to Plaintiff for failing to foresee the unimaginable scope of the economic decline in 2008 when it released its 2007 Audit Report.  Thus, under the applicable legal standards, Plaintiff's claim against E&Y should be dismissed.[1]

---

[1]    E&Y also adopts by reference the arguments raised in the other defendants' motions to dismiss, where applicable.

## II.    BACKGROUND

### A.    Plaintiff's Allegations[2]

Defendant SunTrust is a financial holding corporation, providing a range of financial products and services to consumer and corporate customers in the United States and internationally.  (Compl. ¶ 26.)  Plaintiff acquired preferred securities of SunTrust Capital IX, a subsidiary of SunTrust, pursuant to an allegedly false and misleading registration statement issued in February 2008.  (*Id.* ¶ 1.)

According to Plaintiff, SunTrust's 2007 Financial Statements understated the company's ALLL.  (*Id.* ¶ 14.)  At the end of 2007, SunTrust's ALLL was $1.28 billion, an increase of $238 million over the 2006 allowance, and the provision for loan losses in 2007 was $664.9 million, up $402.4 million over the 2006 provision. (Ex. D, 2007 10-K at 14, 31.)[3]  Nevertheless, Plaintiff alleges in hindsight that the ALLL was inadequate because SunTrust subsequently made a provision for loan losses of $962.5 million in the fourth quarter of 2008.  (Compl. ¶ 154.)

Plaintiff asserts one claim against E&Y:  an alleged violation of Section 11 of the Securities Act of 1933, which imposes liability for a registration statement

---

[2]    For purposes of this Motion only, the Complaint's well-pleaded factual allegations are taken as true.  *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983).

[3]    On a motion to dismiss, the Court may consider documents required to be filed with the SEC and documents on which the Complaint is based.  *E.g.*, *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999).

4

that "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a); *see* Compl. ¶¶ 225-41 (Count I). The Complaint lacks allegations specific to SunTrust's portfolio, or to any audit procedures that E&Y should have performed but did not. Nonetheless, Plaintiff makes conclusory allegations that E&Y should have known that the general difficulties in the real estate market meant that the 2007 Financial Statements were false and misleading because SunTrust'S ALLL purportedly was too low. (*Id*. ¶ 202.) The boilerplate nature of the Complaint's allegations becomes obvious when the they are compared to the strikingly similar, and in many instances identical, allegations in recent complaints filed by Plaintiff's counsel, such as in *Fait v. Regions Financial Corp.*, No. 09-CV-3161-LAK (S.D.N.Y.) (Ex. N). *Compare* Compl. ¶¶ 1-2, 8-10, 20, 59-68, 78, 79-81, 84, 219-245 *with* Ex. N ¶¶ 1-2, 6-8, 15, 74-83, 90, 93-95, 97, 223-249 (*Fait* Compl.); *see also* Complaint, *Freidus v. ING Group N.V.*, No. 09-CV-01049-LAK (S.D.N.Y.) (Ex. M). In fact, **all** of the allegations against E&Y here are **virtually identical** to those in the *Fait* Complaint. *Compare* Compl. ¶¶ 188-215 *with* Ex. N ¶¶ 191-218 (*Fait* Compl.).

E&Y's 2007 Audit Report incorporated in the Registration Statement stated:

> In our opinion, the financial statements referred to above
> present fairly, in all material respects, the consolidated financial

> position of [SunTrust] and subsidiaries at December 31, 2007
> and the consolidated results of their operations and their cash
> flows for the year ended December 31, 2007, in conformity
> with U.S. generally accepted accounting principles.
> . . .
> In our opinion, [SunTrust] maintained, in all material respects,
> effective internal control over financial reporting as of
> December 31, 2007, based on COSO criteria.

(Ex. D, 2007 10-K at 75, 77; Compl. ¶ 189.)

Plaintiff alleges that E&Y's audit report was inaccurate in two respects.

First, Plaintiff alleges that E&Y's audit report is false because SunTrust violated

GAAP by "improper[ly] accounting for its [ALLL]" in the 2007 Financial

Statements. (*Id. ¶* 202.) Second, they allege that E&Y failed to comply with

generally accepted auditing standards ("GAAS") by: (1) ignoring audit evidence;

(2) designing a deficient audit system; and (3) failing to identify a material

weakness in SunTrust's internal controls.[4] (Compl. ¶¶ 191, 209, 211, 215.) The

Complaint, however, lacks allegations concerning audit steps omitted by E&Y in

violation of GAAS.

---

[4] Internal control is a process, effected by an entity's board of directors, management, and other personnel, designed to provide "reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with [GAAP]." (Compl. ¶ 184.)

**B.**     **SunTrust's 2007 Financial Statements and Registration Statement**

      **1.**     **E&Y's Role as SunTrust's Auditor**

SunTrust first retained E&Y as its outside auditor in connection with its 2007 Financial Statements.  (Compl. ¶ 188.)  As previously noted, both the 2007 Financial Statements and E&Y's 2007 Audit Report were included in SunTrust's 2007 10-K and, in turn, were incorporated by reference (with E&Y's consent) in the Registration Statement.  To give its consent, E&Y needed only to conduct a "reasonable investigation" of subsequent events "from the date of [its] audit report up to the effective date [of the Registration Statement] or as close thereto as is reasonable and practicable in the circumstances."  AM. INST. OF CERTIFIED PUB. ACCOUNTANTS ("AICPA"), CODIFICATION OF STATEMENTS ON AUDITING STANDARDS AU § 711 (2007).  Here, only eight days elapsed between the date of E&Y's 2007 Audit Report and the date of the Registration Statement. (Ex. D at 75; Ex. E.)

The 2007 Audit Report includes an opinion on financial statements prepared by SunTrust.  "The financial statements are management's responsibility.  The auditor's responsibility is to express an opinion on the financial statements."  AU § 110.03; *see also Fehribach v. Ernst & Young LLP*, 493 F.3d 905, 910 (7th Cir. 2007) ("[A]n auditor's duty is not to give business advice; it is merely to paint an

accurate picture of the audited firm's financial condition, insofar as that condition is revealed by the company's books and inventory and other sources of an auditor's opinion.") (citation and internal quotation marks omitted); *Bily v. Arthur Young & Co.*, 834 P.2d 745, 763 (Cal. 1992) ("[A]n audit report is a *professional opinion* based on numerous and complex factors," which "involv[e] discretion and judgment on the part of the auditor.") (emphasis added).

"The objective of the ordinary audit of financial statements . . . is the expression of an opinion on the fairness with which they present, in all material respects, financial position, results of operations, and its cash flows in conformity with [GAAP]." AU § 110.01. Thus, E&Y opined on the presentation of the financial statements as a whole, of which SunTrust's ALLL was a single component. (*See* Ex. D, 2007 10-K at 75.)

### 2.    Prior Scrutiny of SunTrust's Allowance

SunTrust's ALLL received scrutiny prior to E&Y's tenure as SunTrust's auditor. (Compl. ¶ 127.) As a result, "SunTrust restated its earnings for the first and second quarters of 2004 due to errors in its allowance calculation." (*Id.*) Notably absent from the Complaint, however, is the fact that SunTrust's ALLL had been ***overstated***, not understated, in 2004. (*See* Nov. 12, 2004 Form 10-Q/A at 17 (Ex. A); *see also* Dec. 9, 2005 SEC Comment Letter and Dec. 22, 2005 SunTrust

Response (Exs. B and C, respectively).)  Thus, the restatement *reduced* the ALLL rather than *increasing* it, as Plaintiff alleges should have occurred here.  Such facts further undermine the plausibility of Plaintiff's contentions that SunTrust could have and should have increased its ALLL by "hundreds of millions of dollars" as of December 31, 2007.

> **3.    The 2007 10-K and the Registration Statement Contained Extensive Risk Disclosures.**

As explained below, an allowance is an estimate of losses inherent in a portfolio at a given time.  Naturally, declines in the economy and the real estate market occurring after SunTrust calculates its ALLL for a given period may result in a higher ALLL in subsequent reporting periods.  SunTrust provided clear warnings of this possibility in the offering materials:

- "**Deteriorating credit quality, particularly in real estate loans, has adversely impacted us and may continue to adversely impact us.**" (Ex. E, Prospectus at S-v; Ex. D, 2007 10-K at 9 (bold in original).)

- "Additional increases in loan loss reserves may be necessary in the future."  (Ex. D, 2007 10-K at 9.)

- "[C]hanges in the financial condition of individual borrowers, economic conditions, or the condition of various markets in which collateral may be sold could require us to significantly decrease or increase the level of the ALLL."  (*Id*. at 41.)

- "The qualitative factors associated with unallocated allowances are subjective and require a high degree of management judgment.  These

9

factors include the inherent imprecisions in models and lagging or incomplete data."  (*Id*. at 84.)

These very risks materialized later in 2008, necessitating an increase in SunTrust's ALLL at that time.

### C.    Applicable Accounting Principles and Auditing Standards

Plaintiff's Complaint relies heavily on quotations and summaries of accounting principles relating to SunTrust's estimate of the ALLL and to auditing standards governing E&Y's audit of the financial statements as a whole.  Few of those principles are relevant on this Motion.

"Financial accounting and reporting reflects primarily the effects of past transactions and existing conditions, not future transactions or conditions."  (FAS No. 5, ¶ 67.)  Thus, GAAP ***prohibits speculation*** about what could happen in the future, instead requiring that a company base its estimate of its ALLL upon losses that are ***inherent in the portfolio at the time of the analysis***.  (*See id.*; AICPA, AUDIT AND ACCOUNTING GUIDE FOR DEPOSITORY AND LENDING INSTITUTIONS § 9.16 (2006) ("Management should consider its overall loan loss allowance and liability . . . to be appropriate .  .  . to cover estimated losses inherent in the loan portfolio.").)

FAS 5 provides guidance for accounting for, among other things, loss contingencies on residential loans -- the loans that are the sole focus of the

Complaint.  Under FAS 5, a loss contingency shall "be accrued by a charge to income if ***both*** of the following conditions are met:  (a) [i]nformation available ***prior to issuance of the financial statements*** indicates that it is probable that an asset had been impaired or a liability had been incurred ***at the date of the financial statements***" and "(b) [t]he amount of the loss can be ***reasonably estimated***."  (FAS No. 5, ¶ 8 (emphasis added); Compl. ¶ 175.)

An ALLL is an estimate of a loss based on an existing condition that will likely be resolved upon the occurrence or failure to occur of a contingent future event.  (FAS No. 5, ¶ 1.)  Importantly, an estimate changing from one reporting period to another does not mean that the prior estimate was an error.  (*See* FAS No. 154, ¶ 19 ("A change in accounting estimate shall be accounted for in (a) the period of change if the change affects that period only or (b) the period of change and future periods if the change affects both.").)  For example, when SunTrust increased its ALLL by $1.1 billion by the end of 2008, SunTrust was providing a new estimate based on probable losses inherent in its loan portfolio *at the end of 2008* and based on uncertainties *that became inherent in the portfolio during 2008*. (*See* 2008 Form 10-K at 32 (Ex. L); FAS No. 5, ¶ 8.)  Had the ALLL as of the end of 2007 been in error, SunTrust would have been required to restate its 2007 Financial Statements.  (*See* FAS No. 154, ¶ 25 ("Any error in the financial

11

statements of a prior period discovered subsequent to their issuance shall be reported as a prior-period adjustment by restating the prior period financial statements.").)  SunTrust's SEC filings make clear, however, that no such restatement has occurred.

### D.    The Real Estate Market Collapsed *After* the Registration Statement Took Effect.

The Complaint contains numerous allegations regarding events that occurred *after* the issuance of the Registration Statement on February 27, 2008.  Although Plaintiff's claim is limited to E&Y's 2007 Audit Report and E&Y thus cannot be held liable for subsequent events, such allegations are significant because they undermine the plausibility of Plaintiff's theory that E&Y should have foreseen these events as of December 31, 2007.

Although the Complaint alleges that "[r]eal estate sales slowed, mortgage originations stalled, values began declining and foreclosures began accelerating" in late 2006 (Compl. ¶ 8), it aptly illustrates that the financial effects of these trends did not materialize, and could not be reasonably estimated, until 2008.  For example, the Complaint mentions that SunTrust's "capital position deteriorated further in 2008," to the point that SunTrust -- like numerous other financial institutions -- "was required to seek government help" in November 2008.  (*Id.* ¶¶ 19, 148.)  Furthermore, transactions with affiliates are alleged to have damaged

SunTrust's profitability "throughout 2008." (*Id.* ¶ 19.)  In this respect, the allegations regarding SunTrust's capital position in late 2008 mirror SunTrust's description of the "credit quality deterioration" and "intensification of recessionary conditions" in the fourth quarter. (Ex. L, 2008 10-K at 34.)  In sum, the Complaint focuses on events alleged to have occurred after the Registration Statement was filed, which cannot have influenced E&Y's 2007 Audit Report.

## III.    ARGUMENT

### A.    To State a Section 11 Claim, the Facts Alleged in the Complaint Must Support a Reasonable Inference That E&Y Is Liable.

A complaint must contain enough factual allegations to set forth a claim that is plausible on its face, not one that is merely conceivable or possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).  In *Iqbal* and *Twombly*, the Supreme Court retired the "any set of facts" test previously employed to assess the viability of a complaint. *See* Order on Motion to Dismiss, *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, No. 09-CV-01137, Slip Op. at *8-9 (N.D. Ga. Nov. 23, 2009).  Now, to be legally sufficient, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" with "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claims. *McCray v. Potter*, 263 F. App'x 771, 773 (11th Cir. 2008)

13

(quoting *Twombly*, 550 U.S. at 556).  To make this assessment, courts first must

discard any "conclusory statements" contained in the complaint and then conduct a

"context-specific" analysis of the remaining, well-pleaded factual allegations to

determine whether a claim is plausible.  *Iqbal*, 129 S. Ct. at 1949-50.  Plaintiff's

claim against E&Y fails to satisfy these pleading standards.

**B.    The Complaint Fails to State a Viable Claim Against E&Y.**

    **1.    Plaintiff's Claim Is Inconsistent with the Accounting
Principles Cited in the Complaint.**

Plaintiff's allegations regarding the timing of SunTrust's increase of its

ALLL do not state an actionable claim against E&Y.  (Compl. ¶ 154.)  "In order to

sustain a claim under the Securities Act, Plaintiff 'must plead facts establishing

that the [Registration Statement] contained a material misrepresentation or

omission **on the date it was issued**.'"  *In re Mirant Corp. Sec. Litig.*, No. 1:02-CV-

1467-RWS, 2009 WL 48188, at \*20 (N.D. Ga. Jan. 7, 2009) (Story, J.) (emphasis

added) (citing *Rudd v. Suburban Lodges of Am., Inc.*, 67 F. Supp. 2d 1366, 1370

(N.D. Ga. 1999)).  In *Mirant*, Judge Story dismissed a § 11 claim alleging that

Mirant should have written down an asset in an earlier financial statement prior to

its initial public offering.  *See* 2008 WL 48188, at \*22.  Although the opinion

concluded that the allegations there sounded in fraud, Judge Story's analysis is

nonetheless instructive here:

> Plaintiffs' Complaint, though it alleges that Mirant did not
> conduct an impairment test, does not allege facts establishing that
> FAS 121 required Mirant to recognize an impairment of $36
> million. Therefore, it fails to allege facts that would render its
> IPO Registration Statement misleading . . .

*Id.* at *21. The Complaint here likewise fails to establish that the governing

accounting principles required SunTrust to increase its ALLL by "hundreds of

millions" at December 31, 2007.

Numerous other courts have reached the same conclusion as the *Mirant*

court. *See, e.g.*, *In re Acceptance Ins. Cos. Sec. Litig.*, 423 F.3d 899, 903 (8th Cir.

2005) (affirming dismissal of § 11 claim alleging that reserves were inadequate

because "retrospective analysis of awareness cannot be the basis for a claim");

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) ("Mere allegations

that statements in one report should have been made in earlier reports do not make

out a claim . . . ."); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)

("No matter when a bank [writes down a loan], someone may say that it should

have acted sooner."); *In re CIT Group, Inc. Sec. Litig.*, 349 F. Supp. 2d 685, 690

(S.D.N.Y. 2004) (rejecting argument "that defendants could not have actually

believed that loan loss reserves were adequate because defendants [later] decided

to increase loan loss reserves" and dismissing § 11 claim); *In re Serologicals Sec.

Litig.*, No. 1:00-CV-1025-CAP, 2003 WL 24033694, at *12 (N.D. Ga. Feb. 20,

2003) ("[T]he plaintiffs must do more than merely question the timing of the write-down."). The claim against E&Y here is equally deficient.

The allegations here are based on pure hindsight and provide no basis from which to conclude that E&Y knew at the end of 2007 that the economy, by the next fall, would be on the brink of a financial disaster, or that any facts existed to warrant a further increase in SunTrust's ALLL at that time. *See, e.g.*, *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 279 (3d Cir. 2004) ("[T]he fact that looking backward, one perceives a trend does not necessarily mean that conditions were such that one year earlier the situation was sufficiently obvious."); *In re BellSouth Corp. Sec. Litig.*, 355 F. Supp. 2d 1350, 1366 (N.D. Ga. 2005) ("In assessing whether a misrepresentation or omission was material, courts may not employ 20/20 hindsight . . . .") (citation omitted); *TAAM Assocs., Inc. v. Housecall Med. Res., Inc.*, No. 96-CV-2214-A-JEC, 1998 WL 1745361, at *5 (N.D. Ga. Mar. 30, 1998) (hindsight allegations cannot form the basis of a Securities Act claim) (citations omitted). Plaintiff cannot use the events of the latter half of 2008, including an "intensification of recessionary conditions" (Ex. L, 2008 10-K at 34) and a continued "deterioration" of SunTrust's capital position throughout 2008 (Compl. ¶ 19), to argue that the ALLL should have been increased in 2007.

Significantly, Plaintiff has not alleged that E&Y had sufficient factual

16

information to reasonably estimate the increase in loan losses suggested by

Plaintiff, as would be required by the applicable accounting principles.  Indeed,

Plaintiff cites the FAS 5 requirement that a loss contingency be booked in the

company's financial statements if the loss "can be reasonably estimated."  (FAS

No. 5, ¶ 8.)  Yet, the Complaint lacks any allegations that the extra "hundreds of

millions of dollars" Plaintiff contends should have been added to SunTrust's ALLL

a year earlier were capable of "reasonable estimation" at December 31, 2007.  In

fact, by failing -- even with the benefit of hindsight -- to specify the amount of loan

losses by which SunTrust's ALLL was understated as of December 31, 2007, the

Complaint underscores that such loan losses could not have been reasonably

estimated as of that date.

Plaintiff's allegations about economic conditions in the real estate market

generally, or about other financial institutions' financial condition, do not save

Plaintiff's deficient claim.  (*See, e.g.*, Compl. ¶¶ 9-10, 66-68.)  "[G]eneralized

allegations that problems brewing in the [real estate] market at large made it

'foreseeable' that a particular set of unidentified investments would sour are

insufficient to 'nudge[] [the] claims across the line from conceivable to plausible.'"

*Landmen Partners Inc. v. Blackstone Group, L.P.*, No. 1:08-CV-03601-HB, 2009

WL 3029002, at *9 (S.D.N.Y. Sept. 22, 2009) (quoting *Twombly*, 550 U.S. at 570,

17

and dismissing a § 11 claim).  In short, the Complaint's attempt to substitute generalities in lieu of specific facts about SunTrust's portfolio, specific facts supporting an increase in the ALLL as of December 31, 2007, or even a specific calculation of the increase they claim was required at that time is wholly inadequate to satisfy the pleading standards.

### 2.    Plaintiff Fails to Plead Facts Supporting Its Boilerplate Allegations That E&Y Violated GAAS.

Plaintiff essentially argues that E&Y must have violated GAAS because if it had conducted a GAAS audit, it would have discovered alleged GAAP violations by SunTrust with regard to the ALLL.  The Complaint devotes significant attention to listing GAAS standards and implying violations of those standards.  (*See* Compl. ¶¶ 192-201.)  GAAS violations, however, do not inherently give rise to auditor liability; it is only if a material misstatement of the financial statements results that a GAAS violation may be relevant.  *See, e.g.*, *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1294 (E.D. Wash. 2007) ("[A] false certification of GAAS compliance is only material under [§] 11 to the extent that the misrepresentation renders the financial statements inaccurate.").  Thus, as discussed above, Plaintiff has not pled sufficient facts to show any such violation.

The Complaint contains many paragraphs concerning E&Y's alleged responsibility under AU § 711 to update certain financial information between

18

December 31, 2007 and February 27, 2008 (the Registration Statement date).  (*See* Compl. ¶¶ 197-99.)  But E&Y's 2007 Audit Report is dated February 19, 2008, the date of substantial completion of field work gathering evidential matter for the audit (*see* Statement on Auditing Standards No. 103), so Plaintiff's argument is meaningless.  Only eight days passed and the Complaint does not identify any subsequent event occurring in that time that would have impacted the balances as of December 31, 2007.  In any event, failure to satisfy AU § 711 is not actionable under § 11.  *Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1125-26 (7th Cir. 1990).  And, the Complaint lacks allegations showing that E&Y failed to follow the procedures suggested in AU § 711.

Equally conclusory are the assertions that E&Y violated GAAS because it "failed to obtain sufficient, competent evidential matter to support SunTrust's assertions regarding its accounting for its [ALLL]."  (Compl. ¶ 209.)  What "evidential matter" did E&Y overlook?  What "red flags" did E&Y supposedly ignore?  The Complaint provides no details.  Even if E&Y had predicted the future, it could not have urged SunTrust to increase its ALLL unless the effect of those future events was present in the portfolio in December 2007.  (*See* FAS No. 5.)

Finally, the assertion that E&Y violated GAAS by purportedly failing to design an adequate audit lacks any factual support in the allegations.  (Compl. ¶¶

19

210-11.)  Plaintiff recites a litany of auditing standards and then suggests, again without factual support, that E&Y did not follow those standards.  Such allegations are legally insufficient.  *See, e.g.*, *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1282 (M.D. Fla. 2009) ("The complaint lists several other relevant accounting standards and conclusorily states that KPMG violated each accounting standard.  However, the plaintiffs fail to allege any fact supporting the allegations of other GAAS violations."), *aff'd*, No. 09-10954, 2010 WL 154519 (11th Cir. Jan. 19, 2010); *In re Cardinal Health Inc. Sec. Litig.*, 426 F. Supp. 2d 688, 778 (S.D. Ohio 2006) ("Plaintiffs have done no more than list these GAAS standards, failing to specify who, where, when, or how [the auditor] actually violated them."); *D.E. & J. Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 741 (E.D. Mich. 2003) ("All that plaintiffs have done here is recite a list of general GAAS requirements and then assert, without any factual support, that because Kmart's financial statements were allegedly incorrect, PWC 'must have' violated those requirements."), *aff'd*, 133 F. App'x 994 (6th Cir. 2005).

"Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 129 S. Ct. at 1950.  The Supreme Court has emphasized that a Complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 1949 (quoting *Twombly*, 550 U.S.

at 557).  Here, "naked assertions" of purported GAAS violations are all that

Plaintiff has alleged with respect to E&Y, and that is not enough to state a claim.

### 3.    Plaintiff's Internal Controls Allegations Also Fail.

The allegations concerning E&Y's opinion on SunTrust's internal controls

also are deficient.  Aside from listing auditing standards (Compl. ¶¶ 212-214), the

Complaint alleges only that E&Y "negligently represented that in its opinion the

Company had maintained effective internal controls . . . when [SunTrust's] loan

and lease loss reserves were significantly understated and the internal controls over

that accounting process were ineffective at the end of 2007." (Compl. ¶ 215.)

As this Court has recognized, "[internal controls] allegations are nothing

more than criticism of [a company's] management structure and management

decisions, and cannot form the basis for a securities violation."  *BellSouth*, 355 F.

Supp. 2d at 1373 (citations omitted); *see also Goodman Life*, 595 F. Supp. 2d at

1282 (dismissing a Section 10(b) claim for "fail[ing] to allege particularized facts

showing that KPMG failed to obtain an understanding of Jabil's internal

controls").

Moreover, Plaintiff's internal controls allegations merely repackage the

criticisms of E&Y's work with regard to SunTrust's ALLL.  (*See* Compl. ¶¶ 212-

15.)  These allegations are entirely conclusory, fail to establish that GAAP required

21

SunTrust to make an additional provision for loan losses of "hundreds of millions of dollars" in the 2007 Financial Statements, and lack any specificity as to how E&Y failed to satisfy its audit obligations with regard to its review of SunTrust's internal controls or how that alleged failure resulted in a misstatement in SunTrust's 2007 Financial Statements.  (*Id*.)  Thus, these allegations fail to give rise to a viable claim against E&Y.

### C.    Plaintiff Fails to Satisfy the Additional Pleading Requirements Applicable to Claims Based on Statements of Opinion.

Because Plaintiff's claim against E&Y arises solely out of E&Y's 2007 Audit Report, the Complaint is subject to additional pleading requirements established in *Virginia Bankshares*.  501 U.S. at 1095.[5]  There, the Supreme Court held that claims based on an opinion must also allege that the defendant did not

---

[5]    Although *Virginia Bankshares* addressed a claim under § 14(a) of the Securities Act, courts have consistently applied it to § 11 claims as well.  *See, e.g.*, *Rubke v. Capitol Bancorp LTD*, 551 F.3d 1156, 1162 (9th Cir. 2009); *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 372 (3d Cir. 1999).  Moreover, this Court should reject the reasoning applied in *In re Washington Mutual, Inc. Securities Litigation*, No. 08-MD-1919-MJP, 2009 WL 351763 (W.D. Wash. Oct. 27, 2009). The *WaMu* court declined to apply *Virginia Bankshares*, holding that the auditor's statements that the financial statements conformed with GAAP and the internal controls audit complied with PCAOB standards were each actionable statements of fact rather than non-actionable statements of opinion.  *See id.* at *21.  Such reasoning conflicts with authority establishing that an auditor's statement on GAAP compliance is a statement of opinion (*see, e.g.*, AU § 110.03; *Fehribach*, 493 F.3d at 910), and ignores the fact that such statements are not actionable unless the financial statements are materially misstated.  *See* Part III.B, *supra*.

actually hold the opinion stated. *Id.* An audit report that expresses an opinion on a

company's financial statements is an opinion covered by the *Virginia Bankshares*

standard. *See, e.g.*, *CIT Group*, 349 F. Supp. 2d at 690 (requiring allegations "that

defendants did not actually believe that loan loss reserves were adequate, or [that]

defendants had no reasonable factual basis for their belief").

Additionally, SunTrust based its ALLL on its "expectations about future

loan losses" inherent in the portfolio. AM. BANKERS ASS'N, BANKING

TERMINOLOGY 215 (3d ed. 1989). Thus, an allowance, by its nature, involves

matters of opinion and judgment, and in the case of real estate "depend[] on the

economics of the real estate market." *See First Nationwide Bank v. Gelt Funding*

*Corp.*, 820 F. Supp. 89, 95 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994).

E&Y's 2007 Audit Report is one step further removed, constituting an opinion on

SunTrust's financial statements, which in turn contained SunTrust's opinion

constituting its ALLL.

Thus, the Complaint here "must plead with particularity why the statement

of opinion was objectively and subjectively false." *Washtenaw County Employees'*

*Ret. Sys. v. Wells Real Estate Inv. Trust, Inc.*, No. 1:07-CV-862-CAP, 2008 WL

2302679, at *8 (N.D. Ga. Mar. 31, 2008); *see also In re AOL Time Warner, Inc.*

*Sec. & ERISA Litig.*, 381 F. Supp. 2d 192, 243 (S.D.N.Y. 2004) (same).[6] It does

not do so, and the absence of any allegation that E&Y did not genuinely hold the

opinions it stated in the 2007 Audit Report is fatal.

### D.    The Bespeaks Caution Doctrine Bars the Claim Against E&Y.

Plaintiff's claim against E&Y also is barred by the "bespeaks caution"

doctrine in light of the explicit warnings contained in SunTrust's 2007 10-K and

the Registration Statement.  Under that doctrine, "meaningful cautionary

statements and specific warnings of the risks involved" may "render the alleged

omissions or misrepresentations immaterial as a matter of law." *Saltzberg v. TM*

*Sterling/Austin Assocs.*, 45 F.3d 399, 400 (11th Cir. 1995) (per curiam).

Any reasonable investor reading the clear warnings in the 2007 10-K and

Registration Statement was on notice that SunTrust's loan losses might exceed its

ALLL if the economy worsened and housing markets continued to decline.  The

risks disclosed are precisely the risks that came to pass; in other words, "[t]he

cautionary language addresses the relevant risk directly." *Halperin v.*

*eBankerUSA.com, Inc.*, 295 F.3d 352, 360 (2d Cir. 2002) (affirming dismissal of

---

[6]    These pleading requirements are separate from the heightened Rule 9(b) pleading standard applied to complaints sounding in fraud.  *See Washtenaw*, 2008 WL 2302679, at *8, 9 (dismissing claim under *Virginia Bankshares* and declining to apply Rule 9(b) to negligence claim pursuant to *Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006)).

securities fraud claims).  The warnings were "specific enough to warrant a

reasonable investor's attention."  *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d

2, 9 (2d Cir. 1996) (affirming dismissal of § 11 claim because prospectuses had

extensive warnings).  As a result, the claim against E&Y should be dismissed.

## IV.    CONCLUSION

For the reasons set forth herein, E&Y respectfully submits that the claim

against it should be dismissed with prejudice.

Submitted this 29th day of January, 2010.

KING & SPALDING LLP

*/s/ John A. Chandler*
John A. Chandler
Ga. Bar No. 120600
Cheri A. Grosvenor
Ga. Bar No. 314360
1180 Peachtree Street, N.E.
Atlanta, GA  30309
(404) 572-4600
(404) 572-5140 (fax)

Of Counsel:

William A. Barrett
Assistant General Counsel
Ernst & Young LLP
5 Times Square
New York, NY  10036-6530
(212) 773-9177 (direct dial)
(212) 773-2388 (fax)

Counsel for Defendant Ernst & Young LLP

25

## **<u>FONT CERTIFICATION</u>**

The undersigned hereby certifies that this pleading complies with the font requirements of LR 5.1B because the document has been prepared in Times New Roman, 14 point.

*/s/ Cheri A. Grosvenor*
Cheri A. Grosvenor
Georgia Bar No. 314360

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which serves notification of such filing to all CM/ECF participants.

This 29th day of January, 2010.

*/s/ Cheri A. Grosvenor*
Cheri A. Grosvenor
Georgia Bar No. 314360