IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BELMONT HOLDINGS CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO. |
| SUNTRUST BANKS, INC., et al., | ) 1:09-CV-01185-WSD |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE
SUNTRUST DEFENDANTS' MOTION TO DISMISS**

J. TIMOTHY MAST
Georgia Bar No. 476199
THOMAS B. BOSCH
Georgia Bar No. 068740
TROUTMAN SANDERS LLP
Suite 5200, Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216
(404) 885-3000 (voice)
(404) 885-3900 (facsimile)

Attorneys for the SunTrust Defendants

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

I.   CLAIMS BASED UPON STATEMENTS OF OPINION MUST
     PLEAD SUBJECTIVE AND OBJECTIVE FALSITY WITH
     SPECIFICITY......................................................................................4

II.  PLAINTIFF HAS NOT ALLEGED ANY ACTIONABLE
     MISSTATEMENT OR OMISSION ......................................................6

     A.    Allegations Regarding SunTrust's Loan Portfolio.............................7

     B.    Allegations Regarding SunTrust's Internal Controls........................10

III. PLAINTIFF'S GAAP ALLEGATIONS ARE INSUFFICIENT.................11

IV.  ANY ALLEGED MISSTATEMENTS OR OMISSIONS ARE
     IMMATERIAL AS A MATTER OF LAW ..................................13

V.   THE BESPEAKS CAUTION DOCTRINE BARS PLAINTIFF'S
     CLAIMS ..............................................................................14

VI.  THE INDIVIDUAL DEFENDANTS ARE NOT SELLERS ....................15

CONCLUSION ....................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ..............................................................4, 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................4

*Citiline Holdings, Inc. v. iStar Financial Inc.,*
2010 U.S. Dist. LEXIS 29706 (S.D.N.Y. Mar. 26, 2010).......................8, 10, 15

*City of Omaha v. CBS Corp.*, 2010 WL 1029290 (S.D.N.Y. Mar. 16, 2010)...........1

*ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase
Co.*, 553 F.3d 187 (2d Cir. 2009).........................................................................13

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783
(11th Cir. 2010)....................................................................................................14

*Harris v. Ivax Corp.*, 182 F.3d 799 (11th Cir. 1999)...............................................15

*In re 2007 Novastar Fin., Inc.,* 2008 U.S. Dist. LEXIS 44166
(W.D. Mo. June 4, 2008) ......................................................................................9

*In re BellSouth Corp. Sec. Litig.*, 355 F. Supp. 2d 1350 (N.D. Ga. 2005) ..............10

*In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044
(C.D. Cal. 2008)...................................................................................................12

*In re ING Groep, N.V. ERISA Litig.*, 1:09-CV-0400, slip op.
(N.D. Ga. Mar. 30, 2010)......................................................................................3

*In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1248 (N.D. Cal.
2000) .....................................................................................................................5

*In re New Century*, 588 F. Supp. 2d 1206 (C.D. Cal. 2008) ...................................12

*Lane v. Page*, 581 F. Supp. 2d 1094 (D.N.M. 2008)................................................5

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial
Bank of Commerce*, 2010 WL 961596 (S.D.N.Y. Mar. 17, 2010).......................1

*Rubke v. Capitol Bancorp, Ltd.*, 551 F.3d 1156 (9th Cir. 2009) ...............................5

*TAAM Assocs. v. Housecall Med. Res., Inc.*, 1998 U.S. Dist. LEXIS 22372
    (N.D. Ga. Mar. 30, 1998)........................................................................4

*Washtenaw County Emp. Ret. Sys. v. Wells Real Estate Inv. Trust, Inc.*,
    2008 U.S. Dist. LEXIS 53652 (N.D. Ga. Mar. 31, 2008) ...............................4, 5

*Yu v. State St. Corp.,* 2010 U.S. Dist. LEXIS 17147
    (S.D.N.Y. Feb. 22, 2010).......................................................................1, 3, 6, 8

**Other Authorities**

141 Cong. Rec. S19060 (1995)...........................................................................14

Emerging Issues Task Force Topic No. D 80A (revised Sept. 2001) ....................12

Federal Rule of Civil Procedure 8 .......................................................................4, 7

Federal Rule of Civil Procedure 9(b).....................................................................4

SEC Rule 159A....................................................................................................15

## **INTRODUCTION**

The Complaint describes an unprecedented paralysis of the credit market and a global recession.  Major financial institutions like Bear Stearns, Merrill Lynch, and Lehman Bros. imploded as a consequence of the financial dislocation . . . [The Bank], like so many other institutions, could not have been expected to anticipate the crisis with the accuracy Plaintiff enjoys in hindsight . . . .

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce,* 2010 WL 961596, at *11 (S.D.N.Y. Mar. 17, 2010) ("*CIBC*") (dismissing claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934).  Like *CIBC* and other recent cases arising from the economic collapse, Plaintiff's Complaint[1] must be dismissed.  *See, e.g., Yu v. State St. Corp.,* 2010 U.S. Dist. LEXIS 17147, at *21, 32 (S.D.N.Y. Feb. 22, 2010) (dismissing Section 11 and 12 claims that depended upon the "vantage point on the other side of the financial crisis," and holding that "the simple fact of a write-down [of an asset] does not stand for the proposition that values stated before the write-down were inaccurate, and the write-downs certainly do not substitute for facts about the supposedly false valuations themselves"); *City of Omaha v. CBS Corp.*, 2010 WL 1029290, at *10-11, 17 (S.D.N.Y. Mar. 16, 2010) (collecting cases dismissing securities claims "directed toward the timeliness of a company's writedown to assets, either tangible or intangible" and noting that "[c]orporate officials need not

---

[1] Capitalized terms have the same definitions used in SunTrust's Opening Brief.

be clairvoyant[;] . . . allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud").

As Plaintiff's Consolidated Opposition to Defendants' Motions to Dismiss confirms, the Complaint does nothing more than rely on conclusory assertions, speculation, and hindsight to second-guess the timing of SunTrust's increases in the ALLL and the Provision.  When limited to the well-pleaded ***facts*** alleged in the Complaint, however, Plaintiff is left with:

- The residential real estate market deteriorated in 2007.  (¶¶ 8-10, 59-72.)

- SunTrust made extensive disclosures in its 2007 10-K about, among other things, the state of the economy in general, the residential real estate market in particular, and its concentration of loans in the Southeast, which was particularly hard hit.[2]  (2007 10-K at 5-6, 9, 16-17, 29-35, 40-41, 59-60, 65, 68, 126.)

- Along with disclosures regarding the judgment decisions and factors involved in these estimates, SunTrust increased its Provision at 2007 year-end to $664.9 million, a more than 150% increase from year-end 2006, with $356 million of the increase coming in Q4 2007.  (*Id.* at 17, 33, 59.)

- SunTrust also increased the ALLL from $1.0445 billion at year-end 2006 (representing .86% of period end loans in the portfolio) to $1.2825 billion at

---

[2] Remarkably, Plaintiff continues to claim that SunTrust "belatedly acknowledged" its geographic concentration in markets that were particularly adversely affected by declines in real estate values and other factors (Pl. Br. at 6-7), despite the fact that SunTrust made these precise disclosures in its 2007 10-K, which was incorporated into the RS/P.  (2007 10-K at 5; *see* Opening Br. at 5 n.6.)

year-end 2007 (representing 1.05% of period end loans totaling approximately $125 billion).[3]  (*Id.* at 33, 60.)

- *After* the February 27, 2008 offering, the economy declined dramatically and, ultimately, fell into a worldwide collapse after the failure of some of the country's largest financial institutions in late September 2008.  (¶¶ 140, 143-44.)[4]

- *After* these catastrophic events, TARP was announced.  SunTrust—like countless other financial institutions—participated in TARP.  (¶¶ 146-50.)

- *After* the financial collapse of late 2008, SunTrust increased its ALLL to $2.3511 billion and its Provision to $2.4742 billion.  (¶ 154.)

Based on these circumstances, and from the "vantage point on the other side of the financial crisis," Plaintiff concludes that SunTrust should have predicted at the end of 2007 the financial calamity that eventually came in late 2008 and, thus, should have increased its ALLL and Provision prior to the offering to the levels ultimately recorded nearly a year later.  Courts consistently and repeatedly have rejected this type of hindsight pleading.  *See, e.g., Yu*, 2010 U.S. Dist. LEXIS

---

[3] Though Plaintiff relies heavily on the decrease in ALLL as a percentage of nonperforming loans from 2006 to 2007, Plaintiff's own allegations belie the importance Plaintiff ascribes to this figure.  Plaintiff admits that the percentage decreased further between 2007 and 2008, but, despite this decrease, Plaintiff does not allege that the 2008 ALLL was understated.  (¶ 182.)  To the contrary, Plaintiff relies on the 2008 ALLL as the lynchpin for its allegations.  (*E.g.*, ¶ 180.)

[4] In addition to the facts alleged in the Complaint, the Court may take judicial notice of, among other things, "general economic conditions, stock prices, and market trends."  *See In re ING Groep, N.V. ERISA Litig.*, 1:09-CV-0400, slip op. at 7-8 (N.D. Ga. Mar. 30, 2010) [copy attached hereto as Exhibit 1].

17147, at *21-23; Opening Br. at 20-23. Simply put, Plaintiff's right to relief is speculative, at best, and Plaintiff's claims must be dismissed regardless of the pleading standard applied.[5] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## I.    CLAIMS BASED UPON STATEMENTS OF OPINION MUST PLEAD SUBJECTIVE *AND* OBJECTIVE FALSITY WITH SPECIFICITY.

The setting of loss reserves and their treatment under GAAP are matters of judgment and opinion.[6] (Opening Br. at 16-18.) Although Plaintiff seeks to avoid dismissal by arguing that it is required to plead only that these statements of opinion were made "without a basis in fact" (which it has not done) (Pl. Br. at 26-30), "[s]tatements of opinion or belief are actionable **only** if they are **both** objectively **and** subjectively false." *Washtenaw County Emp. Ret. Sys. v. Wells Real Estate Inv. Trust, Inc.*, 2008 U.S. Dist. LEXIS 53652, at *23 (N.D. Ga. Mar.

---

[5] Many of the cases cited by Plaintiff predate *Iqbal* and *Twombly*, and do not apply current Rule 8 pleading standards. In any event, Plaintiff's claims sound in fraud and are subject to Rule 9(b)'s heightened pleading requirements. Plaintiff's premise that by understating its ALLL and Provision, SunTrust manipulated its reported financial performance to hide its deteriorating capital position in order to raise additional funds sounds in fraud. *See TAAM Assocs. v. Housecall Med. Res., Inc.*, 1998 U.S. Dist. LEXIS 22372, at *39-54 (N.D. Ga. Mar. 30, 1998) (dismissing Section 11 and 12 claims based on similar allegations under Rule 9(b) and noting that "the court has found no case which holds that an allegation such as that made by plaintiffs does not sound in fraud").

[6] Statements regarding SunTrust's anticipated future capital needs and the adequacy of its capitalization also were matters of judgment and opinion.

31, 2008) (emphasis added). Even when claims based on statements of opinion do not sound in fraud, "a plaintiff must plead with particularity why the statement of opinion was objectively and subjectively false." *Id.* (dismissing Section 14(a) negligence claim because the plaintiff failed to plead that the defendant did not believe the opinion when rendered); *see Rubke v. Capitol Bancorp, Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009) (holding that statements of opinion "can give rise to a claim under section 11 only if the complaint alleges with particularity that the statements were both objectively and subjectively false or misleading"); *In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1248, 1265-66 (N.D. Cal. 2000) (dismissing Section 14 negligence claim for failure to plead that defendant knew opinion was false); *Lane v. Page*, 581 F. Supp. 2d 1094, 1126-27 (D.N.M. 2008) (dismissing negligence claim for failure to plead subjective falsity of opinion, and rejecting plaintiff's contention that lack of a reasonable basis for opinion is sufficient to state a claim).

Here, Plaintiff's express disclaimer of fraud (¶¶ 226-37)—*i.e.,* subjective falsity—alone is fatal to its claims. In any event, because Plaintiff has pleaded neither subjective nor objective falsity with the requisite particularity, the Complaint must be dismissed.

## II.   <u>PLAINTIFF HAS NOT ALLEGED ANY ACTIONABLE MISSTATEMENT OR OMISSION.</u>

Despite the fact that claims based on hindsight, as a matter of law, are not actionable under the securities laws, the majority of the Complaint focuses on post-offering facts and events.  *See Yu*, 2010 U.S. Dist. LEXIS 17147, at *22 (holding that a "backward-looking assessment of the infirmities of mortgage-related securities . . . cannot help plaintiffs' case").  Recognizing this flaw, Plaintiff now wholly ignores its allegations regarding the unimaginable post-offering events that led SunTrust to increase its ALLL and Provision at the end of 2008.  (¶¶ 140, 143-44.)  Instead, though it still repeatedly refers to SunTrust's year-end 2008 increases, Plaintiff argues that the Complaint alleges facts sufficient to state a claim based "solely on events as of the February 2008 Offering."  (Pl. Br. at 19.)

Initially, Plaintiff's pre-offering allegations are conclusory statements regarding SunTrust's loan portfolio and hindsight-based speculation that SunTrust must have ignored known trends in setting its ALLL and Provision for Q4 2007.  Although it identifies certain types of loans in the portfolio, the Complaint does not include a single instance of allegedly improper accounting for these loans, and provides no explanation of, let alone facts to support, its conclusion that the ALLL and Provision were understated by "hundreds of millions of dollars."  (*E.g.*, Pl. Br.

at 2.)  Plaintiff's unsupported conclusions must be rejected by the Court. [7]  *See*

*Iqbal*, 129 S. Ct. at 1949 (under Rule 8, courts must reject conclusions and "naked

assertion[s]" devoid of "further factual enhancement").  Further, as established in

the Opening Brief and discussed below, Plaintiff has not alleged facts sufficient to

state a claim.

### A.    Allegations Regarding SunTrust's Loan Portfolio

Plaintiff speculates that by February 2008, "the collapse of the housing

market (especially in Florida and Georgia) had significantly impacted the value of

SunTrust's vast exposure to nonprime and exotic loans and the Company was

obligated to disclose and account for these risks."  (Pl. Br. at 19-20.)  Plaintiff

ignores the fact that SunTrust fully disclosed in the RS/P and the 2007 10-K the

types of loans in its portfolio, its geographic concentration, the deterioration in

those markets, and the risk of further economic declines (*i.e.*, the specific risks

about which Plaintiff now complains).  And Plaintiff does not allege a single ***fact***

---

[7] Though couched in colorful language, Plaintiff's arguments regarding "Level 3"
accounting also are unavailing.  (*E.g.*, Pl. Br. at 9-10.)  Plaintiff does not allege that
Level 3 accounting is improper or that SunTrust made any false or misleading
statements with respect to its use of such accounting.  Further, as made clear in the
2007 10-K, Level 3 accounting was used for, among other things, "loans held for
sale," which are accounted for separately from SunTrust's portfolio and, therefore,
have nothing to do with the setting of SunTrust's ALLL or Provision.  (*See* 2007
10-K at 19-20, 22, 24.)

supporting its "naked assertion" that SunTrust ignored any of these risks when setting the ALLL and Provision in the 2007 10-K.[8] *See Yu,* 2010 U.S. Dist. LEXIS 14147, at *32-33 (dismissing Section 11 and 12 claims where complaint alleged that "troubles . . . began emerging before the write-down occurred," but did not "contain allegations showing that those market events diminished the value of any of the Fund's holdings in a way that should have been, but was not, reflected"). Finally, Plaintiff does not allege that SunTrust deviated in any way from its disclosed practices in estimating the ALLL and Provision. *See id.* (holding that valuations that complied with disclosed methods "would not be actionable as false or misleading" and dismissing the plaintiffs' claims because "the Complaint d[id] not aver a single concrete fact to suggest that defendants deviated from the prescribed valuation methodologies").

Plaintiff's reliance on *Citiline Holdings, Inc. v. iStar Financial Inc.,* 2010 U.S. Dist. LEXIS 29706 (S.D.N.Y. Mar. 26, 2010), also is misplaced.  In *Citiline,* only one week prior to the offering, the company stated, among other things, that it tracked the value of its portfolio on a "real-time basis"; that, despite the faltering economy, the "portfolio was performing pretty much as expected"; and "that there was a lot of room for things to go wrong and for us to be okay" since they had "a

---

[8] Indeed, SunTrust substantially increased its ALLL and more than doubled its Provision in 2007.  (*See* 2007 10-K at 33.)

nice cushion for the portfolio." *Id.* at *4-5. Despite the fact that there were no meaningful intervening events in the two weeks between the filing of the registration statement and the end of Q4, shortly after the offering, the company disclosed Q4 "financial results [that] were impacted by $134.9 million of charges associated with the impairment of two [specifically identified] credits and a $113 million increase in its loan loss provisions." *Id.* at *6-7. These charges erased nearly 90% of the company's earnings from the first three quarters of the year. *Id.* The company also disclosed existing increases in the value of nonperforming and watch-list loans by more than 65% and 100%, respectively. *Id.* Thus, the plaintiffs alleged that the defendants omitted from the registration statement a number of specific, critical facts that were known at the time of the offering.

Here, Plaintiff has alleged no facts stating a plausible claim that SunTrust omitted specific, critical facts that were ***known at the time of the offering***.[9] Rather, Plaintiff offers general statements about the residential mortgage market and SunTrust's loan portfolio in 2007 and, based on 20/20 hindsight, asserts that

---

[9] Significantly, SunTrust has not restated any aspect of its financial performance for the relevant time period. *See In re 2007 Novastar Fin., Inc.*, 2008 U.S. Dist. LEXIS 44166, at *12 (W.D. Mo. June 4, 2008). Moreover, though Plaintiff again points to the SEC's inquiry, Plaintiff ignores that the SEC closed its inquiry after SunTrust explained its calculation of the ALLL in the 2007 10-K. (*See* Opening Br. at 31-32.)

SunTrust should have increased its ALLL and Provision prior to the offering to the levels ultimately recorded after the economic collapse. *Citiline* does not countenance this type of hindsight pleading.

### B.    Allegations Regarding SunTrust's Internal Controls

Plaintiff's argument that misstatements regarding the adequacy of internal controls may sometimes be actionable under securities laws misses the point.  (Pl. Br. at 30.)  First, Plaintiff has not alleged any misstatement related to SunTrust's internal controls.  To the contrary, Plaintiff points to SunTrust's statements that:

- "The [P]rovision is the result of a detailed analysis estimating an appropriate and adequate ALLL"; and

- "Performance of residential construction loans has deteriorated; however, we have been proactive in our credit monitoring and management processes to provide 'early warning' alerts for problem loans in the portfolio."

(Pl. Br. at 32 n.9.)  But the Complaint does not allege that SunTrust did not engage "in a detailed analysis in estimating" its ALLL, or that SunTrust was not "proactive" in its credit monitoring.  Plaintiff does not allege a false or misleading statement regarding internal controls and puts forward nothing more than conclusory and non-actionable criticisms of SunTrust's internal controls.  *See, e.g., In re BellSouth Corp. Sec. Litig.*, 355 F. Supp. 2d 1350, 1373 (N.D. Ga. 2005).

Moreover, contrary to Plaintiff's re-characterization of its CI allegations, these allegations do not support Plaintiff's claims.  Nothing in the Complaint

indicates that the CIs were "high level" employees (Pl. Br. at 32) who were "employed in various aspects of SunTrust's processes for determining SunTrust's ALLL and/or Provision." (*Id.* at 33.) The CIs offer only speculation and conclusions about pre-class period circumstances that Plaintiff does not tie to any alleged misstatement or omission.[10] Simply put, the internal control allegations do not state a plausible claim for relief, and Plaintiff's efforts to salvage these deficient allegations by putting additional spin on them also should be rejected. (*See* Opening Br. at 34-38.)

## III.    PLAINTIFF'S GAAP ALLEGATIONS ARE INSUFFICIENT.[11]

In an effort to avoid the deficiency of its GAAP allegations, Plaintiff now argues that the SunTrust Defendants' motion creates an issue of fact regarding whether SunTrust's Q4 2007 loan loss reserves complied with GAAP. (Pl. Br. at 24.) The reality, however, is that the Complaint does not allege facts sufficient to state a GAAP violation and must be dismissed. For example, Plaintiff has alleged

---

[10] Remarkably, Plaintiff now argues that the fact that these individuals were not employed by SunTrust during the class period—and thus necessarily have no knowledge of facts known to the SunTrust Defendants at the time of the offering— somehow supports its claims. (Pl. Br. at 34.) Though Plaintiff speculates that SunTrust "laid off many of those involved in trying to fix SunTrust's internal control problems," this conclusion is not supported by the CI allegations in the Complaint or by the article upon which Plaintiff relies. (¶¶ 83, 117-28.)

[11] Ernst & Young's Reply Brief is incorporated herein by reference.

no *facts* demonstrating either that (1) the losses recorded in SunTrust's 2008 ALLL and Provision had been incurred in 2007, or (2) even if incurred, the amount of such losses could have been reasonably estimated.  *See* Emerging Issues Task Force Topic No. D-80A (revised Sept. 2001) at Q.10.  Indeed, the Complaint provides no instances of loans against which SunTrust should have reserved in 2007, much less the amount that should have been reserved.

Rather, on the issue of whether losses already had been incurred, Plaintiff, in direct contravention of GAAP, alleges that SunTrust should have reserved in 2007 for losses that were not incurred at the time for loans that first became delinquent sometime in 2008, months after the offering.  (¶ 152.)  And both the Complaint and Plaintiff's Brief are silent as to whether any unidentified losses were reasonably estimable at the time of the offering.  These pleading failures alone are a sufficient basis for the Court to dismiss Plaintiff's Complaint.  *See In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1070 (C.D. Cal. 2008).[12]

---

[12] The cases relied upon by Plaintiff do not require a different result.  In all of those cases, the plaintiffs included detailed, specific facts sufficient to demonstrate falsity.  For example, in *In re New Century,* 588 F. Supp. 2d 1206 (C.D. Cal. 2008), specific contemporaneous facts contradicted the financial statements, and the company admitted "improper accounting and weak internal controls" and was forced to restate its financials for the reporting periods at issue.  *Id.* at 1214-15.

**IV.    ANY ALLEGED MISSTATEMENTS OR OMISSIONS ARE IMMATERIAL AS A MATTER OF LAW.**

As recognized by the cases relied upon by Plaintiff, Section 11 and 12 claims can be dismissed at the pleading stage where the alleged misstatements or omissions were immaterial as a matter of law.  *See, e.g., ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 203-07 (2d Cir. 2009) (dismissing claims because alleged misstatements and omissions were immaterial as a matter of law).  Moreover, contrary to Plaintiff's argument that the SunTrust Defendants rely on only one case (Pl. Br. at 35), it is well-established in this District and elsewhere that a sufficient "total mix of information"—*i.e.,* the offering documents, read as a whole and taken together in context with other available information—can render misstatements or omissions immaterial as a matter of law.  (*See* Opening Br. at 38-40.)  That is precisely the case here, where the total mix of information available at the time of the offering included:

- extensive warnings regarding deterioration of, and SunTrust's concentration of credit risk in, the residential real estate market, in general, and the market in the Southeast, in particular (2007 10-K at 5-6, 9, 16-17, 29-35, 59-60, 65, 68, 126; RS/P at S-iv to -v);

- explanations that the chosen levels of the ALLL and the Provision were the product of "estimates" that "require[d] a high degree of management judgment," and that the ALLL and the Provision could increase in the future (2007 10-K at 40-41, 31-34, 84); and

- publicly available information regarding the downturn of the residential mortgage market (¶¶ 8-10, 59-72).

Moreover, the increases to SunTrust's ALLL and Provision between year-end 2007 and year-end 2008 were less than 1.0% and 1.5%, respectively, of SunTrust's loan portfolio of over $125 billion. Accordingly, given the total mix of information, a reasonable investor could not have been misled about the securities offered, and the Complaint should be dismissed.[13] (*See* Opening Br. at 38-40.)

## V.   THE BESPEAKS CAUTION DOCTRINE BARS PLAINTIFF'S CLAIMS.

Plaintiff's argument regarding the applicability of the PSLRA's safe harbor is a red herring. As recognized by the Eleventh Circuit, the safe harbor is the "statutory equivalent" of the bespeaks caution doctrine. *E.g., Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 795-96 (11th Cir. 2010). Thus, regardless of whether analyzed under the safe harbor[14] or the bespeaks

---

[13] Plaintiff's focus on the adequacy of SunTrust's capital (Pl. Br. at 35) also fails. These allegations are wholly dependent upon the inadequate allegations regarding the ALLL and the Provision, and Plaintiff pleads no facts to support its conclusion that SunTrust was "dangerously close to minimum required capital levels" at the time of the offering. (Pl. Br. at 35.) In any event, SunTrust disclosed in the 2007 10-K that it may seek to improve its capital position by, among other things, issuing additional securities, which is precisely what it did.

[14] The offering here was based upon information and representations regarding SunTrust, not SunTrust Capital IX. Thus, the PSLRA's initial public offering exclusion should not apply. *See* 141 Cong. Rec. S19060 (1995) (Sen. Feinstein's address to the Chair) (confirming that the safe harbor applies to "seasoned issuers" and that the initial public offering exclusion applies to "new compan[ies]").

caution doctrine, in this Circuit, mixed statements of historical fact and projections like those at issue here are considered forward-looking and, thus, subject to protection. *See Harris v. Ivax Corp.*, 182 F.3d 799, 807 (11th Cir. 1999). The 2007 10-K and RS/P included detailed and extensive risk disclosures regarding all of the risks about which Plaintiff now complains (Opening Br. at 5-8, 41-42). Consequently, the alleged misstatements and omissions are protected by the bespeaks caution doctrine.

## VI.    THE INDIVIDUAL DEFENDANTS ARE NOT SELLERS.

Plaintiff's Section 12 claim should be dismissed on the merits for the reasons stated above and in the SunTrust Defendants' Opening Brief. Further, while no court in the Eleventh Circuit has addressed whether, and to what extent, SEC Rule 159A alters the "seller" analysis in private causes of action against issuers, even if SunTrust and SunTrust Capital IX are considered "sellers" for purposes of Section 12, the individual defendants are not, and Plaintiff's Section 12 claim against them should be dismissed. *Citiline*, 2010 U.S. Dist. LEXIS 29706, at *10-12.

## CONCLUSION

For the reasons set forth above and in their Opening Brief, the SunTrust Defendants respectfully request that the Court dismiss the Complaint with prejudice.

(signatures on following page)

Respectfully submitted, this 29th day of April, 2010.

*/s/ Thomas B. Bosch*
J. TIMOTHY MAST
Georgia Bar No. 476199
Email: tim.mast@troutmansanders.com
THOMAS B. BOSCH
Georgia Bar No. 068740
Email: tom.bosch@troutmansanders.com

TROUTMAN SANDERS LLP
600 Peachtree Street, Suite 5200
Atlanta, GA 30308
Tel: (404) 885-3000
Facsimile: (404) 962-2727

Attorneys for Defendants
SunTrust Banks, Inc.; SunTrust Capital
IX; James M. Wells, III; William H.
Rogers, Jr.; Raymond D. Fortin; L.
Phillip Humann; Mark A. Chancy;
Thomas E. Panther; Robert M. Beall, II;
J. Hyatt Brown; Alston D. Correll;
Jefferey C. Crowe; Thomas C.
Farnsworth, Jr.; Patricia C. Frist; Blake
P. Garrett, Jr.; David H. Hughes; E.
Neville Isdell; M. Douglas Ivester; J.
Hicks Lanier; G. Gilmer Minor, III;
Larry L. Prince; Frank S. Royal; Karen
Hastie Williams; and Phail Wynn, Jr.

## <u>CERTIFICATE OF COMPLIANCE PER LOCAL RULE 7.1D</u>

I hereby certify that the foregoing brief has been prepared in a Times New Roman 14 point font, one of the font and point selections approved by the Court in Local Rule 5.1B.

*/s/ Thomas B. Bosch*

Thomas B. Bosch

Georgia Bar No. 068740

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing **Reply Memorandum of Law in Support of the SunTrust Defendants' Motion to Dismiss** was electronically filed with the Clerk of Court using the CM/ECF system, which serves notification of such filing to all CM/ECF participants.

This 29th day of April, 2010.

/s/ Thomas B. Bosch
Thomas B. Bosch
Georgia Bar No. 068740