# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **BELMONT HOLDINGS CORP., et al., Individually and on Behalf of All Others Similarly Situated,** | |
| **Plaintiffs,** | |
| **v.** | **1:09-cv-1185-WSD** **(Consolidated)** |
| **SUN TRUST BANKS, INC., et al.,** | |
| **Defendants.** | |

## OPINION AND ORDER

This matter is before the Court on Defendants Morgan Stanley & Co. Inc.,

Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith Inc., UBS

Securities LLC, Banc of America Securities LLC, and SunTrust Robinson

Humphrey, Inc.'s (collectively the "Underwriter Defendants") Motion to Dismiss

[81], Defendant Ernst & Young LLP's ("E&Y") Motion to Dismiss [82], the

SunTrust Defendants'[1] Motion to Dismiss [83], and on Defendant E&Y's Motion

for Leave to File a Reply [96].

---

[1] The "SunTrust Defendants" include: Defendants SunTrust Banks, Inc.; SunTrust Capital IX; James M. Wells, III; William H. Rogers, Jr.; Raymond D. Fortin; L. Phillip Humann; Mark A. Chancy; Thomas E. Panther; Robert M. Beall, II; J. Hyatt Brown; Alston D. Correll; Jefferey C. Crowe; Thomas C. Farnsworth, Jr.;

## I.     BACKGROUND

Plaintiff Belmont Holdings Corp. ("Belmont" or "Plaintiff") brings this purported class action under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l, and 77o, relating to the issuance of SunTrust Capital IX's 7.875% Trust Preferred Securities (the "Securities"). SunTrust Banks, Inc. ("SunTrust") initially offered the Securities to the public in February 2008 (the "Offering"). The Securities were issued pursuant to an October 18, 2006, Registration Statement, as amended by a February 27, 2008, Prospectus Supplement (collectively, the "RS/P"), which incorporated by reference SunTrust's 2007 Form 10-K (the "2007 10-K").

According to the Complaint, at the time of the Offering in 2008, the U.S. housing market crisis was already "wildly out of control and bleeding into all of the financial markets." (Compl. ¶ 13.) To raise capital, SunTrust issued the Securities, but "negligently incorporated [into the RS/P] false and misleading information about [its] capital and reserves, and its ability to manage and control risk," and thus misled investors about the nature of SunTrust's exposure to high-risk loans in the housing market. (Compl. ¶¶ 13, 16, 72.) After the Offering,

Patricia C. Frist; Blake P. Garrett, Jr.; David H. Hughes; E. Neville Isdell; M. Douglas Ivester; J. Hicks Lanier; G. Gilmer Minor, III; Larry L. Prince; Frank S. Royal; Karen Hastie Williams; and Phail Wynn, Jr.

SunTrust was required to seek help from the government and accepted almost $5 billion from the Troubled Asset Relief Program ("TARP").  In January 2009, SunTrust reported a quarterly loss and announced a significant increase in its provision for loan losses.  (Compl. ¶ 19.)

Plaintiff contends that the 2007 10-K underestimated SunTrust's allowance for loan and lease loss reserves ("ALLL").  Plaintiff highlights that the 2007 10-K stated:

> We continuously monitor the quality of our loan portfolio and maintain an allowance for loan and lease losses ("ALLL") sufficient to absorb all probable losses inherent in our loan portfolio.  We are committed to the timely recognition of problem loans and maintaining an appropriate and adequate ALLL.  At year-end 2007, the ALLL was $1,282.5 million, which represented 1.05% of period-end loans.  This compares with an ALLL of $1,044.5 million, or 0.86% of loans as of December 31, 2006.

(Compl. ¶ 99.)

> The Company's allowance for loan and lease losses is the amount considered adequate to absorb probable losses within the portfolio based on management's evaluation of the size and current risk characteristics of the loan portfolio.

(Compl. ¶ 100.)

> The provision for loan losses is the result of a detailed analysis estimating an appropriate and adequate ALLL.

(Compl. ¶ 101.)

> Performance of residential construction related loans has deteriorated; however, we have been proactive in our credit monitoring and management processes to provide "early warning" alerts for problem loans in the portfolio.

(Compl. ¶ 102.)

> Management believes the Company has the funding capacity to meet the liquidity needs arising from potential events.

(Compl. ¶ 106.)

Plaintiff contends that by the time of the Offering, SunTrust was "not 'well capitalized' at all.  Rather, it was operating with a very high degree of leverage, holding a small and declining amount of capital against a massive asset base. . . . [L]osses in even a small portion of its risk-adjusted assets could destroy much of its capital base and liquidity, rendering [SunTrust] undercapitalized and subjecting it to regulatory action or, worse, causing investor flight."  (Compl. ¶ 115.)  Plaintiff contends that SunTrust failed to disclose to investors "the risks of its mortgage-related exposures, and accurately account for losses in those assets and their impact on SunTrust's liquidity and capital adequacy."  (Id.)

At the end of 2007, SunTrust's ALLL was $1.28 billion and the provision for loan losses in 2007 was $644.9 million.  (2007 10-K at 14, 31.)[2]  SunTrust

---

[2] On a motion to dismiss, the Court may consider documents required to be filed with the SEC and documents on which the Complaint is based.  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1280 (11th Cir. 1999).

subsequently made a provision for loan losses in the fourth quarter of 2008 of $962.5 million.  (Compl. ¶ 154.)

Plaintiff further contends that SunTrust's financial statements failed to comply with Generally Accepted Accounting Principles ("GAAP") and SEC regulations.  Under GAAP, SunTrust was required to have adequate reserves for: i) estimated credit losses for loans specifically identified as being impaired; ii) estimated credit losses for loans with specific characteristics that indicate probable loss; and iii) estimated credit losses inherent in the remainder of the portfolio based on current economic events and circumstances.  (Comp. ¶ 163.)  According to the Complaint, "[e]ven though SunTrust's total loan balance increased significantly (over $10 billion) between 2007 and 2008, the Company's corresponding provision for loan losses and net charge-offs combined for all of 2007 did not cover even 1% of the total loan balance at the end of 2007.  It wasn't until the fourth quarter of 2008 that SunTrust belatedly increased its provision for loan losses and net charge-offs well after the housing market had already collapsed."  (Compl. ¶ 181.) Plaintiff contends that, as the housing market collapsed, SunTrust failed to increase its ALLL to account for the rise of non-performing loans from the fourth quarter of 2007 through the end of 2008.  "At the end of 2006, the allowance represented 196.4% as a percentage of the total nonperforming loans outstanding.  However,

by the end of 2007 the allowance as a percentage of total nonperforming loans had rapidly decreased to only 87.8%.  By the end of 2008 the allowance . . . was only 61.7%."  (Compl. ¶ 182.)

Plaintiff also contends that SunTrust misled investors about the effectiveness of its "disclosure controls and procedures, and internal control over financial reporting."  (Compl. ¶ 186.)

Plaintiff asserts that SunTrust's misstatements went unnoticed because the underwriters "performed almost no due diligence" and were "responsible for the contents and dissemination of the Registration Statement."  (Comp. ¶ 14, 230.) Plaintiff also contends that E&Y, engaged by SunTrust to perform independent accounting and auditing services, incorrectly represented that SunTrust's 2007 financial results were presented in accordance with GAAP and negligently allowed misleading statements to be incorporated into the Offering documents.  (Compl. ¶ 188.)

All Defendants move to dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that Plaintiff has failed to identify actionable misstatements or omissions in the Offering documents, and thus has failed to state a claim to relief under the Securities Act.

## II.   DISCUSSION

A.   <u>Standard on Motion to Dismiss</u>

The law governing motions to dismiss pursuant to Rule 12(b)(6) is well-settled.  Dismissal of a complaint is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." <u>Marshall County Bd. of Educ. v. Marshall County Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993).  In considering a motion to dismiss, the court accepts the plaintiff's allegations as true, <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984), and considers the allegations in the complaint in the light most favorable to the plaintiff.  <u>Watts v. Fla. Int'l Univ.</u>, 495 F.3d 1289, 1295 (11th Cir. 2007).  Ultimately, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).[3]  To state a claim to relief that is plausible, the plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct.

---

[3] The Supreme Court explicitly rejected its earlier formulation for the Rule 12(b)(6) pleading standard: "'[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Twombly</u>, 127 S. Ct. at 1968 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  The Court decided that "this famous observation has earned its retirement." <u>Id.</u> at 1969.

1937, 1949 (2009).  "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. (citing Twombly, 550 U.S. at 557).  "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."  Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted).[4]

B.    Statutory Provisions

Plaintiff's claims are brought pursuant to Sections 11, 12, and 15 of the Securities Act.  Those provisions "impose liability on certain participants in a registered security offering when the publicly filed documents used during the offering contain material misstatements or omissions."  In re Morgan Stanley Info. Fund Sec. Litig., 592 F.2d 347, 358 (2d Cir. 2010).  Section 11 applies to

---

[4] Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In Twombly, the Supreme Court recognized the liberal minimal standards imposed by Federal Rule 8(a)(2) but also acknowledged that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  Twombly, 127 S. Ct. at 1965.

"registration statement[s]," Section 12 covers any "prospectus or oral communication," and Section 15 imposes liability on individuals or entities that "control[ ] any person liable" under Sections 11 or 12.  15 U.S.C. § 77k(a), l(a)(2), o.  Liability pursuant to Section 15 thus requires, as a preliminary matter, a demonstration of liability under either Section 11 or Section 12.  In re Morgan Stanley Info. Fund, 592 F.2d at 358.

Section 11 and 12(a)(2) are "Securities Act siblings" with "roughly parallel elements."  Id. at 359.  Section 11 prohibits materially false or misleading statements or omissions in registration statements, and requires a plaintiff to show (1) that it purchased a registered security, (2) the defendant participated in the offering in a manner sufficient to give rise to liability under Section 11, and (3) the registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  15 U.S.C. § 77k(a); In re Morgan Stanley Info. Fund, 592 F.2d at 358-59; In re Initial Public Offering Sec. Litig., 471 F.3d 24, 43 (2d Cir. 2006).

Section 12(a)(2) prohibits materially untrue or misleading statements or omissions in any prospectus or oral communication used to solicit the sale of a registered security and requires a plaintiff to establish that (1) the defendant is a

"seller" as defined by Section 12, (2) the sale was effectuated "by means of a prospectus or oral communication," and (3) the prospectus or oral communication "include[d] an untrue statement of material fact or omit[ted] to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading."  15 U.S.C. § 77l(a)(2); In re Morgan Stanley Info. Fund, 592 F.2d at 359.

Section 15 creates liability for individuals or entities that "control[ ] any person liable" under section 11 or 12.  Id. § 77o.  Accordingly, a claim under section 15 turns on whether a plaintiff demonstrates primary liability under sections 11 and 12.  In re Morgan Stanley Info. Fund, 592 F.2d at 358.

C.    Pleading Standard

The parties dispute whether the heightened pleading standard imposed by Rule 9(b) for fraud claims should apply.  Generally, a plaintiff asserting claims under Sections 11 and 12 does not need to plead scienter or otherwise comply with Rule 9 because "[f]raud is not an element or a requisite to a claim under Section 11 or Section 12(a)(2)."  Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004).  Issuers are subject to "virtually absolute" liability, while all other potential defendants may be held liable for "mere negligence."  In re Morgan Stanley Info. Fund, 592 F.3d at 359 (citing Herman & MacLean v. Huddleston, 459 U.S. 375,

381-82 (1983)).  Where the asserted claims, however, "are premised on allegations of fraud," and "the gravamen of the complaint is plainly fraud," the heightened pleading requirements of Rule 9 apply.  <u>Rombach</u>, 355 F.3d at 172.

Defendants contend that the Complaint "sounds in fraud" because Plaintiff "[i]n effect . . . alleges that SunTrust hid its true financial condition from investors in order to raise capital through . . . the offering at issue."  (SunTrust's Br. at 13.) Plaintiff observes that its pleading "expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct," (Compl. ¶ 226, 237, 243), and argues that the Complaint pleads only strict liability and negligence, tracking the language from the Securities Act, and does not plead any facts suggesting Defendants acted with fraudulent intent.

The Court concludes Plaintiff is not required to meet the heightened pleading requirements of Rule 9.  The "gravamen" of Plaintiff's complaint sounds in negligence.  <u>In re Refco, Inc.</u>, 503 F. Supp. 2d at 632.  Where "plaintiff's claims as to defendants' intent . . . are carefully couched in the language of negligence," a complaint will not be found to sound in fraud.  <u>In re Worldspace Sec. Litig.</u>, No. 07 Civ. 2252, 2008 U.S. Dist. LEXIS 56224, at *15 (S.D.N.Y.  July 21, 2008) (citations and quotations omitted).  Plaintiff has expressly stated that it does not

allege fraud claims and, relying on his representation, the Court concludes that neither fraud nor intentional or reckless misconduct is alleged in this action.

D.    Section 11 and 12 Claims

A claim under Section 11 has three elements: 1) a defendant is a signer of a registration statement or a director of the issuer or an underwriter for the offering; 2) the plaintiff purchased the registered securities; and 3) any part of the registration statement for the offering contained an untrue statement of a material fact or omitted to state a material fact necessary to make the statements not misleading.  Coronel v. Quanta Capital Holdings Ltd., No. 07 Civ. 1405, 2009 U.S. Dist. LEXIS 6633, at *34 (S.D.N.Y.  Jan. 23, 2009) (citing In re Initial Public Offering Sec. Litig., 471 F.3d 24, 43 (2d Cir. 2006)).

Because Section 11 is "designed to assure compliance with the disclosure provisions of the [Securities] Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering," it "places a relatively minimal burden on a plaintiff."  Huddleston, 459 U.S. at 382.  Unlike a fraud claim, Section 11 does not require a plaintiff to plead scienter, reliance, or loss causation, and issuers are subject to "virtually absolute" liability under Section 11, while other potential defendants, including individual officers and directors or

underwriters, may be held liable for mere negligence.  In re Morgan Stanley Info.
Fund, 359 F.3d at 359 (citations omitted).

SunTrust argues that Plaintiff has not adequately alleged any actionable
misstatement or omission.  It alleges that Plaintiff merely relies on hindsight,
"from the vantage point on the other side of the financial crisis," to second-guess
the timing of SunTrust's increases of its ALLL.  SunTrust argues that the setting of
loss reserves and their treatment under GAAP are matters of judgment and opinion,
and that statements made regarding SunTrust's anticipated future capital needs and
the adequacy of its capitalization are not actionable.  SunTrust characterizes
Plaintiff's allegations as "speculation that SunTrust must have ignored known
trends in setting its ALLL and [loan loss] Provision for [the fourth quarter of]
2007."  (SunTrust's Reply Br. 6.)

The statements that Plaintiff alleges were false or misleading relate to
(i) whether SunTrust properly set its ALLL and provision for loan losses and
(ii) SunTrust's ability to manage and control risk.  To support its claims, Plaintiff
alleges that *after* the Offering, and after the continued deterioration of the housing
market, SunTrust raised its ALLL and provision for loan losses.  Plaintiff thus
seeks to assert its Securities Act claims using a backward-looking assessment that
interprets, in the context of later events, the statements that Plaintiff has identified

in SunTrust's RS/P as untrue or misleading at the time they were made.

Ordinarily, however, "corporate officials need not be clairvoyant; they are only

responsible for revealing those material facts reasonably available to them.  Thus,

allegations that defendants should have anticipated future events and made certain

disclosures earlier than they actually did do not suffice to make out a claim for

securities fraud."  Novak v. Kosaks, 216 F.3d 300, 309 (2d Cir. 2000).  In the case

of loan losses, "[t]hat defendants later decided to revise the amount of loan loss

reserves that [they] deemed adequate provides absolutely no reasonable basis for

concluding that defendants did not think reserves were adequate at the time the

registration and prospectus became effective."  In re CIT Group, Inc. Sec. Litig.,

349 F. Supp. 2d 685, 690-91 (S.D.N.Y. 2004).

Whether SunTrust had adequate reserves for its predicted loan losses

generally is not a matter of objective fact, but rather a statement of SunTrust's

opinion regarding what portion of its loan portfolio would be uncollectable.

Plaintiff does not allege that SunTrust did not actually hold the opinion it

expressed in its financial statements at the time they became effective.  Absent an

allegation that Defendants did not believe the statements incorporated into the

RS/P, Plaintiff has not stated a claim for misstatements relating to SunTrust's

opinion regarding the adequacy of its loan reserves.  See e.g., Fait v. Regions

Financial Corp., --- F. Supp. 2d. ----, 2010 WL 1883487, *5 (S.D.N.Y. May 10, 2010); In re CIT Group, 349 F. Supp. 2d at 689 ("[S]tatements about defendants' belief in the adequacy of loan loss reserves could be actionable if it is alleged that defendants did not actually believe the loan loss reserves were adequate, or if defendants had no reasonable factual basis for their belief.") (citing Virginia Bankshares, Inc. v. Sanberg, 501 U.S. 1083, 1092-93 (1991)).  Plaintiff only asserts that SunTrust's opinion with respect to its loan reserves was ill-founded and proved so by a later course of economic events.

Here, Plaintiff does not allege – and specifically disavows – that SunTrust did not believe the opinions and judgments it stated in the RS/P with respect to its ALLL and loan loss provision.  Plaintiff's complaint, therefore, does not state a claim under Sections 11 or 12, and SunTrust's motion to dismiss is required to be granted.  The Court will provide Plaintiff an opportunity to file an amended complaint.  The Court agrees with Defendants, however, that if Plaintiff elects to allege that Defendants knowingly or recklessly caused material misstatements to be published, Plaintiff may be required to meet the heightened pleading standards of Rule 9(b).[5]  In its current pleading, Plaintiff appears to be attempting to have it

---

[5] If Plaintiff elects to file an Amended Complaint, Plaintiff shall also file a red-lined version that clearly indicates what changes have been made to the original Complaint.

both ways, that is, disavowing a claim for fraud to avoid the need to meet the heightened pleading standard, at the same time suggesting that SunTrust's stated opinion was false because SunTrust knew or should have known that it was under-capitalized.

Having concluded that Plaintiff has failed to state a claim under Sections 11 and 12, the Court does not need to reach the question of whether the facts Plaintiff has alleged are sufficient under the pleading standards of Twombly and Iqbal. For the sake of completeness, however, the Court elects to consider this issue briefly. With respect to Plaintiff's claim that SunTrust's statements regarding its ALLL and provision for loan losses, the Court observes that Plaintiff does not allege facts demonstrating that SunTrust improperly accounted for its loans or deviated from its disclosed practices in estimating the ALLL or loan loss provision. Plaintiff offers, at most, conclusory assertions, including that SunTrust's ALLL and loan loss provision were understated, as evidenced by the fact that SunTrust subsequently raised these figures after the economic downturn. This hindsight assessment does not permit the court to infer that SunTrust's financial assessments were false or misleading *at the time they were made*. The Court concludes that Plaintiff's Complaint fails to provide minimal factual content, required by Twombly and Iqbal, to permit the court to draw a reasonable inference that

SunTrust omitted specific material facts known at the time of the Offering or that the statements upon which Plaintiff relies to support its claim were either untrue or misleading at the time they were made.

With respect to statements regarding SunTrust's ability to manage and control risk, the Court concludes Plaintiff does not provide factual support for the alleged misstatements relating to SunTrust's internal controls.  The statements Plaintiff indentifies indicate that SunTrust's ALLL and loan loss provision resulted from a "detailed analysis estimating an appropriate and adequate ALLL" and that SunTrust proactively monitored its credit to provide "early warnings" for problem loans.  (Compl. ¶¶ 101, 102.)  Plaintiff does not allege that SunTrust failed to perform a "detailed analysis" in estimating its ALLL or that SunTrust failed to "proactively monitor" its loans.  Plaintiff at most asserts the speculative conclusion that because SunTrust later revised its ALLL and loan loss provision, its internal controls must initially have been inadequate and, thus, SunTrust's statements about its controls were necessarily misleading.  Plaintiff does not allege any factual underpinnings for its conclusory allegations that allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

With respect to Plaintiff's allegations that SunTrust's loan loss reserves failed to comply with GAAP, Plaintiff also fails to state a claim. Plaintiff merely alleges that SunTrust violated various GAAP provisions when it established the ALLL in 2007. Plaintiff does not allege facts demonstrating that SunTrust failed to reserve against certain loans where a reserve was required. Plaintiff alleges that, as the market continued to deteriorate, and more loans became impaired, SunTrust's reserve diminished as a percentage of nonperforming loans. This is a statement of the obvious, not a cognizable claim. Plaintiff does not allege that SunTrust failed to reserve for loans that were impaired *at the time when it issued its financial statements* or that SunTrust incurred losses for which it failed to account in 2007. Plaintiff's allegations do not support a claim under Sections 11 or 12. See In re Countrywide Fin. Corp. Derivative Litig., 554 F. Supp. 2d 1044, 1070 (noting losses should not be recognized before it is probable that they have been incurred and plaintiff's failure to allege that losses were probable or could be reasonably estimated was fatal to claim).

The facts Plaintiff alleges simply do not support the inference that SunTrust's financial statements were untrue or misleading at the time they were made, and, thus, SunTrust's motion to dismiss is required to be granted.

E.    <u>Section 15 Claims</u>

Because Plaintiff failed to state claims under Sections 11 and 12 of the Securities Act, Plaintiff's dependent claim under Section 15 also is required to be dismissed.  <u>In re Morgan Stanley Info. Fund</u>, 592 F.2d at 358.

F.    <u>The Underwriter Defendants' Motion to Dismiss</u>

Because Plaintiff's claims asserted against the Underwriter Defendants are entirely derivative of the same claims asserted against the SunTrust Defendants, the Court necessarily concludes the Underwriter Defendants' motion to dismiss is required to be granted.  The Court also observes that the only allegations found in the Complaint that relate to the Underwriter Defendants are entirely conclusory. (<u>See</u> Compl. ¶¶ 14, 57.)

G.    <u>E&Y's Motion to Dismiss</u>

Plaintiff alleges that E&Y incorrectly represented that SunTrust's financial results for 2007 were presented in accordance with GAAP and that E&Y's audits and reviews of SunTrust's statements had been performed in accordance with Generally Accepted Accounting Standards ("GAAS").  (Compl. ¶ 189.)  The basis of Plaintiff's claims against E&Y, however, is that SunTrust's ALLL was understated at the time of the Offering.  As discussed above, Plaintiff has failed to allege facts sufficient to support a plausible inference that loans or losses in

SunTrust's portfolio were present but unaccounted for and, accordingly, that SunTrust's ALLL was in fact understated.

Plaintiff's allegations with respect to E&Y's conduct, moreover, are entirely conclusory.  (See Compl. ¶¶ 165, 166, and 174.)[6]  In the absence of sufficient factual allegations, the Court necessarily concludes that Plaintiff has not stated a claim against E&Y.

## III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants Morgan Stanley & Co. Inc., Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith Inc., UBS Securities LLC, Banc of America Securities LLC, and SunTrust Robinson Humphrey, Inc.'s Motion to Dismiss [81] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Ernst & Young LLP's Motion to Dismiss [82] is **GRANTED**.

**IT IS FURTHER ORDERED** that the SunTrust Defendants' Motion to Dismiss [83] is **GRANTED**.  Plaintiff may file an amended complaint but, if Plaintiff elects to do so, must also file a red-lined version that clearly indicates

---

[6] The majority of Plaintiff's allegations set out various accounting principles but do not include factual content demonstrating how E&Y failed to comply with these principles.  (See Compl. ¶¶ 161, 163, 164, 167, 169, 171, 172, 175, 176, 177, and 179.)

what changes have been made to the original complaint.  The amended complaint

must be filed, if at all, on or before October 8, 2010.

**IT IS FURTHER ORDERED** that Defendant Ernst & Young LLP's

Motion for Leave to File a Reply [96] is **GRANTED**.


**SO ORDERED** this 10th day of September, 2010.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE