# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| **BELMONT HOLDINGS CORP., et al., Individually and on Behalf of All Others Similarly Situated,** | |
| **Plaintiff,** | |
| **v.** | **1:09-cv-1185-WSD** |
| | **(Consolidated)** |
| **SUNTRUST BANKS, Inc., et al.,** | |
| **Defendants.** | |

## OPINION AND ORDER

This matter is before the Court on the SunTrust Defendants'[1] Motion to Dismiss [112], the Underwriter Defendants'[2] Motion to Dismiss [113], and Defendant Ernst & Young LLP's ("E&Y") Motion to Dismiss [114].

---

[1] The "SunTrust Defendants" include: Defendants SunTrust Banks, Inc.; SunTrust Capital IX; James M. Wells, III; William H. Rogers, Jr.; Raymond D. Fortin; L. Phillip Humann; Mark A. Chancy; Thomas E. Panther; Robert M. Beall, II; J. Hyatt Brown; Alston D. Correll; Jefferey C. Crowe; Thomas C. Farnsworth, Jr.; Patricia C. Frist; Blake P. Garrett, Jr.; David H. Hughes; E. Neville Isdell; M. Douglas Ivester; J. Hicks Lanier; G. Gilmer Minor, III; Larry L. Prince; Frank S. Royal; Karen Hastie Williams; and Phail Wynn, Jr.

[2] The "Underwriter Defendants" include: Defendants Morgan Stanley & Co. Incorporated, Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, UBS Securities LLC, Banc of America Securities LLC, and SunTrust Robinson Humphrey, Inc.

## I.    BACKGROUND

Plaintiff Belmont Holdings Corp. ("Belmont" or "Plaintiff") brings this purported class action under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "1933 Securities Act"), 15 U.S.C. §§ 77k, 77*l*, and 77o, relating to the issuance of Defendant SunTrust Capital IX's 7.785% Trust Preferred Securities (the "Securities").  SunTrust Banks, Inc. ("SunTrust") initially offered the Securities to the public in February 2008 (the "Offering").  SunTrust issued the Securities pursuant to an October 18, 2006, Registration Statement, as amended by a February 27, 2008, Prospectus Supplement (collectively, the "RS/P"), which incorporated by reference SunTrust's 2007 Form 10-K (the "2007 10-K").[3]

On November 30, 2009, Plaintiff filed its consolidated complaint in this action (the "Complaint").  Plaintiff alleged that, at the time of the Offering in 2008, the U.S. housing market was already "wildly out of control and bleeding into all the financial markets."  (Compl. ¶ 13.)  To raise capital, SunTrust issued the Securities, but "negligently incorporated [into the RS/P] false and misleading information about [its] capital and reserves, and its ability to manage and control risk," and thus misled investors about the nature of SunTrust's exposure to high-risk housing market loans.  (Id. ¶¶ 13, 16, 72.)  The Complaint notes that after the

---

[3]The Prospectus Supplement also incorporated Forms 8-K dated February 16, 2007 (Form 8-K/A filed on January 7, 2008) and February 12, 2008.

Offering, SunTrust sought help from the government and accepted almost $5 billion from the Troubled Asset Relief Program ("TARP").

The Complaint alleged that the 2007 10-K, which the RS/P incorporated, underestimated SunTrust's allowance for loan and lease loss reserves ("ALLL") and provision for loan loss ("Provision").  SunTrust stated in the 2007 10-K that:

> We continuously monitor the quality of our loan portfolio and maintain an allowance for loan and lease losses ("ALLL") sufficient to absorb all probable losses inherent in our loan portfolio.  We are committed to the timely recognition of problem loans and maintaining an appropriate and adequate ALLL.  At year-end 2007, the ALLL was $1,282.5 million, which represented 1.05% of period-end loans.  This compares with an ALLL of $1,044.5 million, or 0.86% of loans as of December 31, 2006.

(Id. ¶ 99.)

> The Company's allowance for loan and lease losses is the amount considered adequate to absorb probable losses within the portfolio based on management's evaluation of the size and current risk characteristics of the loan portfolio.

(Id. ¶ 100.)

> The provision for loan losses is the result of a detailed analysis estimating an appropriate and adequate ALLL.

(Id. ¶ 101.)

> Performance of residential construction related loans has deteriorated; however, we have been proactive in our credit monitoring and management processes to provide "early warning" alerts for problem loans in the portfolio.

(<u>Id.</u> ¶ 102.)

> Management believes the Company has the funding capacity to
> meet the liquidity needs arising from potential events.

(<u>Id.</u> ¶ 106.)

The Complaint alleged that, at the time of the Offering, SunTrust was "not 'well capitalized' at all."  (<u>Id.</u> ¶ 115.)  It alleged further that SunTrust "was operating with a very high degree of leverage, holding a small and declining amount of capital against a massive asset base. . . . [L]osses in even a small portion of its risk-adjusted assets could destroy much of its capital base and liquidity, rendering [SunTrust] undercapitalized and subjecting it to regulatory action or, worse, causing investor flight."  (<u>Id.</u>)  Plaintiff contended that SunTrust failed to disclose to investors "the risks of its mortgage-related exposures, and accurately account for losses in those assets and their impact on SunTrust's liquidity and capital adequacy."  (<u>Id.</u>)

Plaintiff further contended that SunTrust's financial statements failed to comply with Generally Accepted Accounting Principles ("GAAP") and SEC regulations.  GAAP required SunTrust to have adequate reserves for:  i) estimated credit losses for loans specifically identified as being impaired; ii) estimated credit losses for loans with specific characteristics that indicate probable loss; and iii) estimated credit losses inherent in the remainder of the portfolio based on current

economic events and circumstances.  (Id. ¶ 163.)  Plaintiff alleged that "[e]ven though SunTrust's total loan balance increased significantly (over $10 billion) between 2007 and 2008, the Company's corresponding provision for loan losses and net charge-offs combined for all of 2007 did not cover even 1% of the total loan balance at the end of 2007.  It wasn't until the fourth quarter of 2008 that SunTrust belatedly increased its provision for loan losses and net charge-offs well after the housing market had already collapsed."  (Id. ¶ 181.)

The Complaint alleged that, as the housing market collapsed, SunTrust failed to increase its ALLL to account for the rise of non-performing loans from the fourth quarter of 2007 through the end of 2008.  "At the end of 2006, the allowance represented 196.4% as a percentage of the total nonperforming loans outstanding.  However, by the end of 2007 the allowance as a percentage of total nonperforming loans had rapidly decreased to only 87.8%.  By the end of 2008 the allowance . . . was only 61.7%."  (Id. ¶ 182.)

Plaintiff also stated that SunTrust misled investors about the effectiveness of its "disclosure controls and procedures, and internal control over financial reporting."  (Id. ¶ 186.)

The Complaint asserted that the Underwriter Defendants "perform[ed] almost no due diligence" and that they were "responsible for the contents and

dissemination of the Registration Statement." (Id. ¶¶ 14, 230.)  Plaintiff claimed

that E&Y, engaged by SunTrust to perform independent accounting and auditing

services, incorrectly represented that SunTrust's 2007 financial results were

presented in accordance with GAAP and negligently allowed misleading

statements to be incorporated into the Offering documents.  (Id. ¶ 188.)

On January 29, 2009, each Defendant moved to dismiss the Complaint for

failure to state a claim.  On September 10, 2010, the Court issued an Order

granting the Defendants' motions to dismiss (the "September 10th Order").

In dismissing the action, the Court initially noted that Plaintiff used a

"backward-looking" assessment to interpret, in the context of later events, the

statements that Plaintiff alleged were false or misleading.  (September 10th Order

at 13-14.)  The Court noted that "allegations that defendants should have

anticipated future events and made certain disclosures earlier than they actually did

do not suffice to make out a claim of securities fraud." (Id. at 14 (quoting Novak

v. Kasaks, 216 F.3d 300, 309 (2d Cir. 2000).)

The September 10th Order also noted that whether SunTrust had adequate

reserves for its predicted loan losses was generally a statement of SunTrust's

opinion regarding what portion of its loans would be uncollectable.  (Id.)  As an

opinion, it could only be false if SunTrust did not actually believe the opinion

expressed.  (<u>Id.</u>)  Because the Complaint did not include allegations that SunTrust did not actually believe the statements incorporated into the RS/P or 2007 10-K, Plaintiff failed to state a claim under Sections 11 and 12 for SunTrust's alleged misstatements relating to SunTrust's opinion regarding the adequacy of its loan reserves.  (<u>Id.</u>)  The Court also dismissed Plaintiff's Section 15 claims, because those claims were dependent upon its Section 11 and 12 claims.  (<u>Id.</u> at 19.)

Having concluded that it was required to dismiss the claims against the SunTrust Defendants, the Court turned to the claims against the Underwriter Defendants and E&Y.  The Court also dismissed those claims because they were dependent upon the claims against the SunTrust Defendants.  (<u>Id.</u> at 19-20.)  The Court, however, allowed Plaintiff to file an amended complaint.

On October 8, 2010, Plaintiff filed its First Amended Consolidated Complaint ("the Amended Complaint").  The Amended Complaint alleges that Defendants: (1) failed to adequately reserve for SunTrust's mortgage-related exposure (losses); (2) failed to accurately increase SunTrust's ALLL or the Provision as prudent accounting required; (3) failed to disclose information concerning SunTrust's capital and mortgage-related assets; and (4) failed to disclose material weaknesses in SunTrust's internal controls.  (Am. Compl. ¶ 98.)

The Amended Complaint centers on allegations similar to those asserted in the Original Complaint,[4] but adds a number of clarifying allegations to support that the RS/P was misleading because it did not adequately disclose SunTrust's ALLL and that SunTrust's loan loss reserves were insufficient to cover SunTrust's loan losses. The Amended Complaint also relies upon a central claim that SunTrust knew its financial data, upon which ALLL and loan losses were determined, was flawed and that SunTrust knowingly relied upon flawed data to determine its ALLL, loan loss, and loan loss reserves. Plaintiff claims that SunTrust knew its reliance on flawed data would result in misleading financial information being included in the RS/P. Plaintiff supports these claims principally by relying on information provided by SunTrust's former Group Vice President of Risk Management, Scott Trapani.[5]

---

[4] Plaintiff deleted large portions of the original Complaint, including allegations regarding (1) SunTrust's alleged wrongdoing related to its investment in Structured Investment Vehicles; (2) SunTrust's employment of Level 3 fair value accounting; and (3) the global economic collapse that occurred months after the Offering. (See e.g., Redline Compl. [102.1] ¶¶ 6, 82, 147, 148, 153, 171, 172, 176, 227, 233, 237, 240.)

[5] The Amended Complaint represents directly and implicitly that Trapani performed his Group Vice President function through calendar year 2007 and allegations in the Amended Complaint assert facts provided by Trapani regarding conduct at SunTrust through the entirety of 2007. That is, the Complaint alleges that Trapani had personal knowledge of SunTrust's operations and financial affairs to the end of 2007. For example, the Amended Complaint alleges:

Trapani generally alleges that through 2007: (1) he told the Defendants that the ALLL and Provision were inadequate before the Offering; (2) he had conversations and meetings with several of the SunTrust Defendants regarding the insufficiency of ALLL and the Provision; (3) SunTrust's loan loss reserves were insufficient to cover its losses; (4) SunTrust's internal controls were dysfunctional; and (5) SunTrust knew or recklessly ignored several problems with its data used to calculate its exposure to potential loan losses.  (Id. ¶¶ 10, 13, 102, 127-29, 139, 143.)  Plaintiff contends that based on these circumstances, SunTrust knew that it

> Throughout 2007, the former Group Vice President at Risk Management had several discussions with defendants Panther, Chang and Wells concerning SunTrust's inability to trade mortgage delinquencies from internal data due to the Company's data integrity issues.  The former Group Vice President at Risk Management confirmed that defendants Fortin, Panther, Chancy and Wells all knew that SunTrust's loan loss reserve models were flawed as a result of the data integrity issues.  (Am. Compl. ¶ 10.)
>
> Trapani "was employed by the Company from 2005 through 2007. (Id. ¶ 115).

SunTrust states in its memorandum in Support of SunTrust Defendant's Motion to Discuss that Trapani ceased working at SunTrust in August 2007 when he "was placed on administrative leave . . . and never returned to work." Mem. Sup. at 5. n. 6.  The Court, of course, views the allegations in the Amended Complaint in a light most favorable to the Plaintiff and thus must assume Trapani had personal knowledge of the matters upon which allegations attributed to him are based including the facts alleged about SunTrust's conduct to the end of 2007.  If Trapani does not have personal knowledge of events in the second half of 2007, the Court will consider later whether these allegations support a violation of the pleading standards under the Federal Rules of Civil Procedure.

was unable "to track mortgage delinquencies from internal data due to [SunTrust's] data integrity issues" and that senior SunTrust officers "knew that SunTrust's loan loss reserve models were flawed as a result of the data integrity issues." (Id. ¶ 10.)

The Amended Complaint alleges further that, knowing its financial data was flawed, the SunTrust Defendant made a variety of false and misleading statements in its SEC filings, including:

1. With respect to ALLL, the 2007 Form 10-K falsely and misleadingly stated that SunTrust continuously monitored the quality of their loan portfolio and maintained an allowance for loan and lease losses sufficient to absorb probable losses inherent in [SunTrust's] loan portfolio. (Id. ¶ 87.)

2. That SunTrust's loan and lease loss amount was sufficient to absorb probable portfolio losses based on management's evaluation of the size and risk characteristics of the portfolio. (Id. ¶ 88.)

3. The loan losses were the result of a detailed analysis estimating an appropriate and adequate ALLL under applied financial accounting standards and for the year ended December 31, 2007, was $664.9 million, a 153% increase over the previous year. (Id. ¶ 89.)

4. The loan portfolio was well diversified and SunTrust was proactive in its credit monitoring and management processes to indentify problem loans. (Id. ¶ 90.)

5. SunTrust was committed to remaining well capitalized and set a Tier 1 target ratio of 7.5%, that the ratio had declined during 2007 but was expected to be restored to the targeted level by the issuance of enhanced trust preferred securities and transaction in The Coca-Cola Company stock held by SunTrust. (Id. ¶ 91.)

6.  Credit risk extensions were monitored and evaluate through initial underwriting processes and periodic reviews to monitor asset quality trends and the appropriate use of credit policies.  (Id. ¶ 92.)

7.  SunTrust believed it had funding capacity to meet the liquidity needs arising from potential events.  (Id. ¶ 93.)

These alleged misleading statements, Plaintiff claims, are the by-product of SunTrust's unreliable and flawed financial data collection and storage systems. Plaintiff alleges that SunTrust's "data integrity issues across the entire portfolio of [SunTrust's] assets 'clearly' negatively impacted SunTrust's ability to accurately forecast loan loss reserves and contributed to the Company being under reserved throughout fiscal 2007" (id. ¶ 119.), which, in turn, caused the 2007 financial reports that were incorporated into the RS/P to be misleading.

In support of its 1933 Act claims, Plaintiff relies heavily on Trapani's knowledge of the data integrity issues and what SunTrust's officers knew about them and the financial data produced.  Plaintiff alleges in the Amended Complaint that SunTrust conducted two quarterly meetings to set the ALLL: the Reserve Working Group Meeting ("RWG") and the ALLL Committee Meeting. (Id. ¶ 130.)  Trapani chaired the RWG Meeting and participated in the ALLL Committee Meeting.  (Id.)  Prior to the RWG Meeting, Trapani would meet with RWG committee members to discuss the probability of defaults and exposure from their respective business groups.  (Id. ¶ 133.)  At the RWG Meeting, the committee

discussed the probability of defaults and issued a recommended ALLL that the ALLL Committee would use in setting SunTrust's ALLL.  (Id. ¶ 135.)

After the RWG Meeting, Trapani would participate in the ALLL Committee Meeting.  The ALLL Committee considered the RWG committee's recommendation, but it ultimately decided the ALLL that SunTrust published in its SEC filings.  (Id. ¶ 136.)  In December 2007, the ALLL Committee rejected and lowered the ALLL recommended by the RWG.  (Id. ¶ 139.)

The Amended Complaint also alleges, based on information provided by Trapani, that the data SunTrust used to calculate its potential loan losses was not reliable.  Plaintiff claims that "no one at SunTrust" trusted the data because it was inconsistent and incomplete.  (Id. ¶¶ 116-17.)  Plaintiff contends that because the underlying data used in these calculations was "garbage," SunTrust's process to calculate loan losses in various asset groups and, as a result, the ALLL, was flawed, resulting in inaccurate ALLL levels throughout 2007, which were thus misleadingly represented in the 2008 RS/P.[6]  (Id. ¶ 137.)  Specifically, Plaintiff alleges that SunTrust's ALLL, "as reported in its financial statements on Form 10-Q's and Form 10-K's at the end of 2007 was materially inadequate and did not reflect the high risk of losses inherent in its real estate loan portfolio which

---

[6] The process for determining the ALLL, Plaintiff alleges, violated GAAP.

12

included determining HELOC product lines."  (Id. ¶ 163).  Plaintiff alleges that "at the end of 2007, SunTrust was required under GAAP . . . to increase its ALLL calculation for a significant portion of those bad loans," and failing to do so caused SunTrust to violate GAAP and issue "false financial statements at the end of 2007 because its ALLL reserve was understated."  (Id. ¶ 165.)

Plaintiff alleged that E&Y wrongfully issued clean audit opinions for the year ended in 2007, knowing SunTrust's internal controls failures and flawed financial data and thus knowing the ALLL calculations were unreliable. (Id. ¶ 198.)  Plaintiff also alleged that E&Y wrongfully consented to inclusion of its audit report for SunTrust's financial statements in the February 27, 2008, Prospectus.  By doing so, and knowing the financial statements did not conform with GAAP, E&Y is liable for any damages caused by SunTrust's misleading financial statements in the RS/P.

On March 21, 2011, the Defendants each moved to dismiss the Amended Complaint [112, 113, 114].

## II.    DISCUSSION

### A.    Standard on Motion to Dismiss

The law governing motions to dismiss pursuant to Rule 12(b)(6) is well-settled.  Dismissal of a complaint is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).  In considering a motion to dismiss, the Court accepts the plaintiff's allegations as true, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and considers the allegations in the complaint in the light most favorable to the plaintiff.  Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007).  Ultimately, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). [7]  To state a claim to relief that is plausible, the plaintiff must plead factual content that "allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct.

---

[7] The Supreme Court explicitly rejected its earlier formulation for the Rule 12(b)(6) pleading standard: "'[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Twombly, 127 S. Ct. at 1968 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The Court decided that "this famous observation has earned its retirement."  Id. at 1969.

1937, 1949 (2009).  "Plausibility" requires more than a "sheer possibility that a

defendant has acted unlawfully," and a complaint that alleges facts that are "merely

consistent with" liability "stops short of the line between possibility and

plausibility of 'entitlement to relief.'"  Id. (citing Twombly, 550 U.S. at 557).  "To

survive a motion to dismiss, plaintiffs must do more than merely state legal

conclusions; they are required to allege some specific factual bases for those

conclusions or face dismissal of their claims."  Jackson v. BellSouth Telecomms.,

372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted

deductions of facts or legal conclusions masquerading as facts will not prevent

dismissal.") (citations omitted).[8]

B.    Statutory Provisions

Plaintiff brings claims pursuant to Sections 11, 12, and 15 of the 1933

Securities Act.  Those provisions "impose liability on certain participants in a

registered security offering when the publicly filed documents used during the

offering contain material misstatements or omissions."  In re Morgan Stanley Info.

Fund Sec. Litig., 592 F.2d 347, 358 (2d Cir. 2010).  Section 11 applies to

---

[8] Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short and
plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.
Civ. P. 8(a)(2).  In Twombly, the Supreme Court recognized the liberal minimal
standards imposed by Federal Rule 8(a)(2) but also acknowledged that "[f]actual
allegations must be enough to raise a right to relief above the speculative
level . . . ."  Twombly, 127 S. Ct. at 1965.

"registration statement[s]," Section 12 covers any "prospectus or oral communication," and Section 15 imposes liability on individuals or entities that "control[ ] any person liable" under Sections 11 or 12.  15 U.S.C. §§ 77k(a), 77*l*(a)(2), 77o.  Liability pursuant to Section 15 requires, as a preliminary matter, a demonstration of liability under either Section 11 or Section 12.  In re Morgan Stanley Info. Fund, 592 F.2d at 358.

Section 11 and 12(a)(2) are "Securities Act siblings" with "roughly parallel elements."  Id. at 359.  Section 11 prohibits materially false or misleading statements or omissions in registration statements, and requires a plaintiff to show (1) that it purchased a registered security, (2) the defendant participated in the offering in a manner sufficient to give rise to liability under Section 11, and (3) the registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  15 U.S.C. § 77k(a); see In re Morgan Stanley Info. Fund, 592 F.2d at 358-59; In re Initial Public Offering Sec. Litig., 471 F.3d 24, 43 (2d Cir. 2006).

Section 12(a)(2) prohibits materially untrue or misleading statements or omissions in any prospectus or oral communication used to solicit the sale of a registered security and requires a plaintiff to establish that (1) the defendant is a

"seller" as defined by Section 12, (2) the sale was effectuated "by means of a prospectus or oral communication," and (3) the prospectus or oral communication "include[d] an untrue statement of material fact or omit[ted] to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading."  15 U.S.C. § 77*l*(a)(2); <u>see</u> <u>In re Morgan Stanley Info. Fund</u>, 592 F.2d at 359.  Section 15 creates liability for individuals or entities that "control[ ] any person liable" under Sections 11 or 12.  15 U.S.C. § 77o.  Accordingly, a claim under Section 15 turns on whether a plaintiff demonstrates primary liability under Sections 11 and 12.  <u>In re Morgan Stanley Info. Fund</u>, 592 F.2d at 358.

    C.    <u>Pleading Standard</u>

Generally, a plaintiff asserting claims under Sections 11 and 12 does not need to plead scienter or otherwise comply with Rule 9(b) because "[f]raud is not an element or a requisite to a claim under Section 11 or Section 12(a)(2)." <u>Rombach v. Chang</u>, 355 F.3d 164, 171 (2d Cir. 2004).  Securities issuers are subject to "virtually absolute" liability, while all other potential defendants may be held liable for "mere negligence."  <u>In re Morgan Stanley Info. Fund</u>, 592 F.3d at 359 (citing <u>Herman & MacLean v. Huddleston</u>, 459 U.S. 375, 381-82 (1983)).  Where the asserted claims, however, "are premised on allegations of fraud," and

"the gravamen of the complaint is purely fraud," the heightened pleading

requirements of Rule 9(b) apply.  <u>Rombach</u>, 355 F.3d at 172.

In its September 10th Order, the Court considered whether Plaintiff's

Original Complaint needed to comply with the heightened pleading standards of

Rule 9(b).  The Court ruled that Plaintiff did not need to comply with Rule 9(b)

because the "gravamen" of the Original Complaint sounded in negligence and

because the Plaintiff "expressly stated that it does not allege fraud claims." (Sept.

10th Order at 11-12.)  The Court noted, however, that if, in an amended complaint,

"Plaintiff elects to allege that Defendants knowingly or recklessly caused material

misstatements to be published, Plaintiff may be required to meet the heightened

pleading standards of Rule 9(b)."[9]  (<u>Id.</u> at 15.)

The parties dispute whether the heightened pleading requirements of Rule

9(b) apply to the allegations in the Amended Complaint.  Whether Rule 9(b)

applies to Plaintiff's claims depends on whether Plaintiff's claims sound in fraud.

A review of Plaintiff's Amended Complaint demonstrates that Plaintiff's claims

are grounded in allegations of fraud.  For example, Plaintiff alleges:

---

[9] The Order stated that "Plaintiff appears to be attempting to have it both ways, that
is, disavowing a claim for fraud to avoid the need to meet the heightened pleading
standard, at the same time suggesting that SunTrust's stated opinion was false
because SunTrust knew or should have known that it was undercapitalized."  (Sept.
10th Order at 15-16.)

- Defendants Wells, Fortin, Chancy, Panther, SunTrust and SunTrust Capital *either knew the statements contained in the Registration Statement were materially false and misleading or recklessly disregarded information* that rendered the statements contained in the Registration Statement materially false and misleading. (Id. ¶ 232 (emphasis added).)

- E&Y, by issuing a clean audit opinion over the effectiveness of SunTrust's internal controls for the year ended 2007, *either knew its opinion was false or at least recklessly disregarded that its opinion was false*. (Id. ¶ 197 (emphasis added).)

Plaintiff also has removed its prior allegations of negligence, (see, e.g., Redline Am. Compl. ¶¶ 11, 98, 159, 207, 210, 216), and has eliminated from the Amended Complaint its several statements disavowing that it was alleging fraud in the Complaint originally filed. (Id. ¶¶ 227, 237, 245.) The Amended Complaint now specifically alleges that the Defendants knowingly and recklessly made misleading statements in the registration statement and prospectus. (Id. ¶¶ 197, 202, 232, 239.) Plaintiff admits in its responsive brief that "[t]he FAC alleges defendants misled the public, rather than simply making bad business decisions." (Pl.'s Br. [117] at 25 n.8.)

The Court concludes that the "gravamen" of the Amended Complaint goes well beyond simple negligence and sounds in fraud, and thus Plaintiff is required to meet the heightened pleading requirements of Rule 9(b). Rombach, 355 F.3d at 171 (while a plaintiff need allege no more than negligence to proceed under

Section 11 and Section 12(a)(2), claims that do rely upon averments of fraud are subject to the test of Rule 9(b)"); In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1404-05 (9th Cir. 1996) ("the particularity requirements of Rule 9(b) apply to claims brought under Section 11 when . . . they are grounded in fraud").  Plaintiff is obligated to plead with particularity false and misleading material statements allegedly made by Defendants.

Rule 9(b) of the Federal Rules of Civil Procedure sets forth specific requirements for alleging fraud.  Rule 9(b) requires: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); see also United States v. Lab Corp. of Am., Inc., 290 F.3d 1301, 1310 (11th Cir. 2002).  In short, Plaintiff must set forth the "who, what, when, where, and how" of the Defendant's allegedly fraudulent behavior. See In re World Access, Inc. Sec. Litig., 119 F. Supp. 2d 1348, 1353 (N.D. Ga. 2000).  Rule 9(b) "ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of."  Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1277 (11th Cir. 2006).

D.     <u>Section 11 and 12 Claims</u>

A claim under Section 11 has three elements: 1) a defendant is a signer of a registration statement or a director of the issuer or an underwriter for the offering; 2) the plaintiff purchased the registered securities; and 3) any part of the registration statement for the offering contained an untrue statement of a material fact or omitted to state a material fact necessary to make the statements not misleading. <u>Coronel v. Quanta Capital Holdings Ltd.</u>, No. 07 Civ. 1405, 2009 U.S. Dist. LEXIS 6633, at *34 (S.D.N.Y. Jan. 23, 2009) (citing <u>In re Initial Public Offering Sec. Litig.</u>, 471 F.3d 24, 43 (2d Cir. 2006)). Plaintiff claims SunTrust made false and misleading claims in the RS/P regarding the magnitude and escalating loan losses and its determined ALLL, the reliability of the data and data systems upon which loan losses and ALLL were determined, and the viability of its capitalization in light of its misstated loan losses and ALLL.

1.     *Subjective Falsity*

The parties dispute whether Plaintiff must allege that SunTrust's statements regarding the ALLL and the Provision were "subjectively" false, that is, whether SunTrust believed the year-end 2007 opinions and judgments with respect to its ALLL and Provision that were stated in the RS/P. SunTrust argues that Plaintiff must, but failed to, plead subjective falsity. Plaintiff argues that Section 11

imposes strict liability on issuers of securities for false or misleading statements, that it need not plead subjective falsity and even if required to prove subjective falsity, that Trapani's statements show senior SunTrust executives knew the data upon which the loan losses and ALLL were based were materially deficient and unreliable, and thus SunTrust knew it had understated its loan losses and misrepresented its ALLL.

Whether SunTrust had adequate reserves for its predicted loan losses is an inherently subjective determination and opinion reached by management which, by its nature, seeks to address and account for events, facts and circumstances that are expected to occur in the future.  As statements of opinions based on forecasted future occurrences, they "are actionable only if they are both objectively and subjectively false."  Washtenaw Cnty. Emp. Ret. Sys. v. Wells Real Estate Inv. Trust, Inc., 2008 U.S. Dist. LEXIS 53652, at *23 (N.D. Ga. Mar. 31, 2008) (citing Va. Bankshares v. Sandberg, 501 U.S. 1083, 1095 (1991)); Rubke v. Capitol Bancorp Ltd., 551 F.3d 1156, 1162 (9th Cir. 2009) ("Because these fairness determinations are alleged to be misleading opinions, not statements of fact, they can give rise to a claim under section 11 only if the complaint alleges with particularity that the statements were both objectively and subjectively false or misleading."); Fait v. Regions Fin. Corp., 712 F. Supp. 2d 117, 120 (S.D.N.Y.

2010) (adequate reserves for predicted loan loss is not a matter of objective fact but are statements of opinions of value of loans that would prove to be uncollectible in the future and complaint must allege defendants did not truly hold opinions when they were made public); In re CIT Grp. Inc. Sec. Litig., 349 F. Supp. 2d 685, 689 (S.D.N.Y. 2004) ("[S]tatements about defendants' belief in the adequacy of loan loss reserves could be actionable if it is alleged that defendants did not actually believe the loan loss reserves were adequate, or if defendants had no reasonable factual basis for their belief."); Podany v. Robertson Stephens, Inc., 318 F. Supp. 2d 146, 154 (S.D.N.Y. 2004) ("[P]roving the falsity of [a statement of opinion] is the same as proving scienter, since [a statement of opinion] cannot be false at all unless the speaker is knowingly misstating his truly held opinion.").

Plaintiff argues that the Court of Appeals for the Second Circuit recently held that a plaintiff is not required to show subjective falsity in a case like the one here. Plaintiff contends that in Litwin v. Blackstone Grp., LP, 634 F.3d 706 (2d Cir. 2011), the Court held that Section 11 "imposes strict liability on issuers of securities for false or misleading statements or omissions, while permitting other defendants to show, as an affirmative defense, that they not only did believe the statements to be true, but also that the belief was a reasonable one, formed after a reasonable investigation." (Pl.'s Br. [117] at 18.)

In Litwin, a group of investors brought a class action against The Blackstone Group, for violating the Securities Act by issuing false statements in a registration statement and prospectus in connection with an initial public offering.  Id. at 708-10.  The plaintiffs alleged, among other things, that two of the defendant's divisions were experiencing financial problems and that defendant "knew of, and reasonably expected, these problems to subject it to a claw-back of performance fees and reduced performance fees, thereby materially affecting its future revenues."  Id. at 710.  The district court dismissed the action, concluding that the alleged misstatements and omissions were not material.  Id. at 713.

The Second Circuit vacated the district court's decision, holding that the complaint alleged sufficient omissions and that the omissions were reasonably likely to be material.  Id. at 718.  The Court in Litwin did not address the subjective falsity requirement and did not consider whether the alleged misleading statements were statements of opinion.  Contrary to Plaintiff's contentions, Litwin does not stand for the principle that a plaintiff does not have to show subjective falsity.  Indeed, in Litwin the issue was not whether defendants should have anticipated consumer performance under loans but a failure to disclose the existence of claw-back obligations—a known fact that was not made public.

2.    *Plaintiff's Allegations*

Having concluded that Plaintiff must allege subjective falsity, the Court next considers whether the Amended Complaint alleges that the Defendants did not truly believe the opinions and judgments reflected in the 2007 10-K and RS/P. Plaintiff does not specifically allege that SunTrust did not "actually believe" the ALLL and Provision disclosed in the RS/P. Rather, to support that the ALLL and Provision were actionable, Plaintiff alleges various statements attributed to Trapani to show that Defendants knew that SunTrust was under-reserved throughout 2007, and at the time of the Offering, and thus that the ALLL and Provision that were stated could not have been believed to be true.

Specifically, Plaintiff alleges, based on statements attributable to Trapani:

> "[E]veryone at [SunTrust] was aware" that SunTrust was under-reserved throughout 2007. Indeed, [Trapani] had several discussions throughout 2007 with Defendants Fortin, Panther, Chancy and Wells about being substantially and materially under-reserved. Defendants Fortin, Panther, Chancy and Wells all knew that SunTrust's reserve models were flawed as a result of the data integrity issues at [SunTrust] and because of the resulting losses in the HELOC book. (Am. Compl. ¶ 143; see also id. ¶ 10.)

> Everyone at [SunTrust] was aware that [SunTrust] under-reserved throughout 2007, including SunTrust's Chief Risk Officer Tom Freeman. Indeed [Trapani] had several discussions throughout 2007 with defendants Fortin, Panther, Chancy and Wells about being under-reserved by over a billion dollars," (id. ¶ 175.)

25

The Amended Complaint also alleges that SunTrust had difficulties collecting accurate data for use in determining its ALLL and loan loss Provision:

- Trapani had conversations with Defendants Chancy and Wells regarding SunTrust's inability to accurately track its "probabilities of default," (id. ¶ 192);

- Defendants Fortin, Panther, Chancy, and Wells knew that SunTrust's models were flawed as a result of inaccurate data, (id. ¶ 143);

- The ALLL Committee rejected the Reverse Working Group ALLL recommendation and disclosed an ALLL lower than the Reverse Working Group recommended, (id. ¶ 137);

- Trapani discussed with Defendants Panther, Chancy, and Wells, that SunTrust could not track losses from HELOC loans, (id. ¶ 128); and

- SunTrust's data collection efforts were a "work in progress" between 2005 and September 2007 and there was not a lot of confidence in the data, (id. ¶ 103.).

Here, Plaintiff alleges that SunTrust's ALLL and Provision were misleading. Plaintiff specifically alleges that senior SunTrust executives responsible for the disclosures in the RS/P knew that SunTrust's loan losses were, throughout 2007, underestimated. Plaintiff seeks the Court to infer that SunTrust was aware when the ALLL and Provision disclosures were made in the RS/P, that they were not believable.

The inferences Plaintiff argues should be made regarding SunTrust's belief about the truthfulness of the ALLL and Provision disclosed in the RS/P have to be

evaluated in light of the other facts alleged in the Complaint about the trending of SunTrust's loan losses and the industry as a whole.  The Amended Complaint alleges that as of the end of 2006, SunTrust's loan loss allowance represented 196.4% as a percentage of the total non-performing loans outstanding yet by the end of 2007 that percentage had decreased to only 87.8%.  This dramatic reduction trend continued in 2008—the year the RS/P was published—with the total non-performing loan loss percentage degrading to 61.7% by the end of 2008.  Plaintiff also alleges facts showing that SunTrust's ALLL to total loans ratio was out of line with that in the industry.  Plaintiff thus argues, based on the facts and inferences that arise from the Amended Complaint's allegations, that the Defendants had to have known the ALLL and Provision were not accurate when this information was publicly reported.

While the allegations made and the inferences suggested by Plaintiff are scant, at this stage of the litigation the Court is required to read the allegations and all inferences that arise from them in the light most favorable to the Plaintiff, including the allegation that Trapani has personal knowledge of the database and alleged data integrity issues at SunTrust throughout 2007.  Thus, the specific facts alleged provide a sufficient basis to allege that SunTrust Banks, Inc. and SunTrust Capital IX did not truly believe the ALLL and Provisions that were disclosed, and

the Court thus concludes that Plaintiff has sufficiently alleged plausible claims under Sections 11 and 12 of the Securities Act.  Plausibility is, of course, the pleading standard the Court must apply at this stage in the litigation.  All that is required is for Plaintiff to nudge its claim across the line from conceivable to plausible.  Twombly, 550 U.S. at 570.  Plaintiff's factual allegations suggesting that Defendants Chancy, Wells, Fortin, and Panther did not believe the ALLL and Provision that were disclosed are sufficient, albeit barely, to state plausible claims under Sections 11 and 12.[10]

---

[10] The Court acknowledges that a variety of courts have held that an opinion regarding loan loss reserves in a registration statement does not give rise to liability under Sections 11 and 12 of the Securities Act of 1933.  The most recent expression of this holding was the Second Circuit's in Fait v. Regions Fin. Corp., No. 10-2311-cv, 2011 WL 3667784 (2d Cir. Aug. 23, 2011).  The issue in the case before this Court is different.  Here Plaintiff alleges facts to show that the opinion issued was not believed by Defendants to be true.  If the facts develop that Defendants did believe the statement to be true, Plaintiff likely will not have asserted cognizable claims.  Based on this factual posture, the Court believes that efficient management of this case requires that discovery first be focused on this belief issue because all of the statements alleged by Plaintiff to be misleading hinge on whether the opinions expressed were believed to be true.  Plaintiff has made specific allegations regarding the ALLL and Provision against only Defendants Chancy, Wells, Fortin and Panther.  The Amended Complaint does not allege that any other SunTrust officer or director was involved in setting of the ALLL and Provision or failed to believe the ALLL and Provision that were disclosed.  Discovery is thus initially limited to the subjective beliefs about the ALLL and Provisions of Chancy, Wells, Fortin, and Panther.

E.    The Underwriter Defendants' Motion to Dismiss

"The Securities Act of 1933 and the 1934 Act 'constitute interrelated components of the federal regulatory scheme governing transactions in securities.'" Herman & MacLean v. Huddleston, 459 U.S. 375, 380 (1982) (quoting Ernst & Ernst v. Hochfelder, 425 U.S 185, 206 (1976)). One private right of action was "contained under § 11 of the 1933 Act." Id. Section 11 of the 1933 Act "allows purchasers of a registered security to sue certain enumerated parties in a registered offering when false or misleading information is included in a registered statement." Id. at 381. If a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his prima facie case. Id. at 382. "Liability against the issuer . . . is virtually absolute, even for innocent misstatements." Id. Although limited in scope, Section 11 places a relatively minimal burden on a plaintiff. Id.; see also 15 U.S.C. § 77k(a).

Like Section 11 claims, claims under Section 12(a)(2) do not require allegations of scienter, reliance, or other elements of fraud. Rombach v. Chang, 355 F.3d 164, 169 n.4 (2d Cir. 2004). These sections impose a sort of strict liability requiring a plaintiff only to "show that the security was issued under, and was the direct subject of, the prospectus and registration statement being

challenged." <u>APA Excelsior III L.P. v. Premiere Techs.</u>, 476 F.3d 1261, 1271 (11th Cir. 2007); <u>Wagner v. First Horizon Pharm. Corp.</u>, 404 F.3d 1273, 1277 (11th Cir. 2007); <u>In re Initial Pub. Offering Sec. Litig.</u>, 358 F. Supp. 2d 189, 206 (S.D.N.Y. 2004).

The Court finds here that Plaintiff has sufficiently alleged a claim against the SunTrust entity Defendants and individual SunTrust Defendants Chancy, Wells, Fortin and Panther under Sections 11 and 12(a)(2) and by extension against the remaining individual defendants, 15 U.S.C. § 77k(a)(1)-(3). In doing so, it also has sufficiently alleged claims against the Underwriter Defendants. The Underwriter Defendants, by simply adopting the arguments offered by SunTrust in moving to dismiss the Amended Complaint, essentially concede that, if a cause of action for a violation of Sections 11and 12(a)(2) is sufficiently asserted against the SunTrust entity Defendants and individual Defendants Chancy, Wells, Fortin and Panther, such claims also are sufficiently alleged against the Underwriter Defendants. 15 U.S.C. § 77k(a)(5). The Court finds the Underwriter Defendants' Motion to Dismiss the Amended Complaint is required to be denied.

F.    <u>E&Y's Motion to Dismiss</u>

Plaintiff alleges that E&Y falsely represented in SunTrust's 2007 10-K that: (1) SunTrust's presented its financial results in accordance with GAAP; (2) E&Y

performed the audits and reviews of SunTrust's 2007 financial statements in accordance with Generally Accepted Auditing Standards ("GAAS"); and (3) SunTrust maintained, in all material respects, effective internal controls over its financial reporting.  (Am. Compl. ¶¶ 95-96, 196.)  Plaintiff contends that because E&Y consented to the incorporation of its allegedly false audit report in SunTrust's RS/P, E&Y is strictly liable under Section 11 of the Securities Act.  (Pl.'s Br. [117] at 37.)  Plaintiff's claims against E&Y are based on whether the ALLL and Provision were believed by SunTrust entity Defendants and individual SunTrust Defendants Chancy, Wells, Fortin, and Panther to be true.  Thus, the Amended Complaint alleges sufficient facts to state this claim against the SunTrust Defendants and this claim is permitted to proceed against E&Y.  15 U.S.C. § 77k(a)(4).[11]

## III.    CONCLUSION

For the foregoing reasons, the pending Motions to Dismiss are granted in part and denied in part as follows:

---

[11] To the extent Plaintiff attempted to assert claims under GAAP or GAAS, or for inadequate internal controls, related to representations other than those concerning the ALLL, loan losses, and Provision, those claims are dismissed on the grounds they do not meet the pleading requirements of <u>Twombly</u> and <u>Iqbal</u>.

**IT IS HEREBY ORDERED** that Defendants SunTrust Bank, Inc; SunTrust Capital IX; James M. Wells, III; William H. Rogers, Jr.; Raymond D. Fortin; L. Phillip Humann; Mark A. Chancy; Thomas E. Panther; Robert M. Beall, II; J. Hyatt Brown; Alston D. Correll; Jefferey C. Crowe; Thomas C. Farnsworth, Jr.; Patricia C. Frist; Blake P. Garrett, Jr.; David H. Hughes; E. Neville Isdell; M. Douglas Ivester; J. Hicks Lanier; G. Gilmer Minor, III; Larry L. Prince; Frank S. Royal; Karen Hastie Williams; and Phail Wynn, Jr.'s Motion to Dismiss [112] is **DENIED**.

**IT IS HEREBY FURTHER ORDERED** that Defendants Morgan Stanley & Co. Incorporated; Citigroup Global Markets Inc.; Merrill Lynch; Pierce, Fenner & Smith Incorporated; UBS Securities LLC; Banc of America Securities LLC; and SunTrust Robinson Humphrey, Inc.'s Motion to Dismiss [113] is **DENIED**.

**IT IS HEREBY FURTHER ORDERED** that Defendant Ernst & Young LLP's Motion to Dismiss [114] is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** to the extent Plaintiff makes any claims under GAAP or GAAS, or for inadequate internal controls, that are related to representations other than those concerning the ALLL, loan losses, and Provision. The Motion is otherwise **DENIED**.

**SO ORDERED** this 7th day of September, 2011.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE