UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| ———————————— x | |
| BELMONT HOLDINGS CORP., et al., : | Civil Action No. 1:09-cv-01185-WSD |
| Individually and on Behalf of All Others : | (**Consolidated**) |
| Similarly Situated, : | |
| : | CLASS ACTION |
| Plaintiffs, : | |
| : | PLAINTIFFS' OPPOSITION TO |
| vs. : | SUNTRUST DEFENDANTS' |
| : | MOTION FOR RECONSIDERATION |
| SUNTRUST BANKS, INC., et al., : | |
| : | |
| Defendants. : | |
| ———————————— x | |

# TABLE OF CONTENTS

**Page**

I.     Introduction ................................................................................... 1

II.    Statement of Facts and Relevant Procedure ................................... 5

III.   Argument ...................................................................................... 13

    A.   Plaintiffs and Their Counsel Have Demonstrated a Good Faith Basis for the Allegations in the FAC ................................... 13

    B.   The Controverted Trapani Declarations Should Not Be Considered ................................................................................ 15

        1.   Trapani May Have a Motive Not to Accurately Recall What He Told Plaintiffs ......................................................... 17

        2.   The Trapani Declarations Were Obtained Under Controversial Circumstances .................................................. 19

    C.   SunTrust's Attempt to Have the Court Resolve a Factual Dispute in Their Favor Is Improper .......................................... 21

        1.   SunTrust Offers No "New Evidence" ..................................... 21

        2.   SunTrust's Attempt to Dispute the Allegations in the FAC Cannot Be Resolved on Reconsideration ....................... 23

IV.    Conclusion ................................................................................... 25

656299_1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*1550 Brickell Assocs. v. QBE Ins. Co.*,
   597 F. Supp. 2d 1334 (S.D. Fla. 2009) .............................................................22

*Amazing Grace Bed & Breakfast v. Blackmun*,
   No. 09-0298-WS-N, 2011 U.S. Dist. LEXIS 14653
   (S.D. Ala. Feb. 11, 2011) ..................................................................................22

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (U.S. 2009) .............................................................................23

*Campo v. Sears Holdings Corp.*,
   371 Fed. Appx. 212 (2d Cir. 2010) ..............................................................24, 25

*In re Applied Micro Circuits Corp. Sec. Litig.*,
   No. 01-CV-0649 K (AJB), 2002 U.S. Dist. LEXIS 22403
   (S.D. Cal. Oct. 4, 2002) ...............................................................................18, 19

*In re Davis*,
   565 F.3d 810 (11th Cir. 2009) ........................................................................3, 17

*In re Dynex Capital, Sec. Litig.*,
   No. 05 Civ. 1897 (HB) (DF), 2011 U.S. Dist. LEXIS 67894
   (S.D.N.Y. Apr. 29, 2011), *upheld by*, No. 05 Civ. 1897 (HB),
   2011 U.S. Dist. LEXIS 67756 (S.D.N.Y. June 20, 2011) ...........................18, 19

*In re Immucor, Inc. Sec. Litig.*,
   No. 1:09-CV-2351-TWT, 2011 WL 3844221
   (N.D. Ga. Aug. 29, 2011) ...................................................................................21

*Kalina v. Fletcher*,
   522 U.S. 118 (1997) ...........................................................................................16

*Lewis v. Asplundh Tree Expert Co.*,
   305 Fed. Appx. 623 (11th Cir. 2008) .................................................................23

**Page**

*Lockwood v. Beasley*,
211 Fed. Appx. 873 (11th Cir. 2006)................................................................23

*Medley v. Westpoint Stevens, Inc.*,
162 F.R.D. 697 (M.D. Ala. 1995).....................................................................21

*Morse v. State*,
277 Ga. App. 67 (2005) ...................................................................................20

*Prieto v. Storer Commc'ns, Inc.*,
152 F.R.D. 654 (M.D. Fla. 1994) .....................................................................21

*Ret. Sys. v. The Boeing Co.*,
No. 09 C 7143, 2011 U.S. Dist. LEXIS 22347
(N.D. Ill. Mar. 7, 2011)....................................................................................24

*Russell v. Smith*,
68 F.3d 33 (2d Cir. 1995) .................................................................................17

*SunTrust Mortg., Inc. v. AIG United Guar. Corp.*,
No. 3:09cv529, 2011 U.S. Dist. LEXIS 33118
(E.D. Va. Mar. 29, 2011) .................................................................................12

*United States v. Hemmer*,
729 F.2d 10 (1st Cir. 1984)...............................................................................17

*United States v. Holladay*,
566 F.2d 1018 (5th Cir. 1978) ..........................................................................17

*United States v. Nobles*,
422 U.S. 225 (1975)...................................................................................15, 16

*United States v. Santiago*,
837 F.2d 1545 (11th Cir. 1988) ........................................................................17

- iii -

**Page**

*United States v. Smallwood*,
   365 F. Supp. 2d 689 (E.D. Va. 2005) ................................................20

*Williams v. Obstfeld*,
   314 F.3d 1270 (11th Cir. 2002) .......................................................22

*Wu Group v. Synopsys, Inc.*,
   No. C 04-3580 MJJ, 2005 U.S. Dist. LEXIS 42351
   (N.D. Cal. Aug. 10, 2005).................................................................19

**STATUTES, RULES AND REGULATIONS**

Federal Rule of Civil Procedure
   Rule 12 .............................................................................................23
   Rule 12(b) ........................................................................................23
   Rule 12(d) .....................................................................................5, 23

Georgia Rules of Professional Conduct
   Rule 4.2 ............................................................................................20
   Rule 4.2(a)........................................................................................20

## I.    Introduction

The SunTrust Defendants' Motion for Reconsideration (the "Motion") (Dkt. No. 128) makes grave claims against plaintiffs and their counsel, accusing them of fabricating allegations in the First Amended Consolidated Complaint ("FAC" or "¶" or "¶¶") (Dkt. No. 102) that were provided by Scott A. Trapani – SunTrust's former Group Vice President of Risk Management.[1]   These accusations are baseless. Plaintiffs have a good-faith basis for each and every allegation in the FAC.  These allegations were the result of a thorough investigation, involving more than 40 witness contacts including two telephonic interviews with Trapani and his counsel.  The allegations attributed to Trapani are the result of statements made by Trapani to plaintiffs.  In many instances, these allegations are corroborated by other witnesses, documents, and admissions by defendants.  In one important instance, defense counsel has now admitted the truth of plaintiffs' allegations.

The crux of defendants' argument is that Trapani has now submitted declarations saying he did not have "personal knowledge" of facts related to SunTrust's year-end 2007 process, because he left the Company at the end of August

---

[1]    The Underwriter defendants join in the Motion, but do not offer any additional arguments.  E&Y has moved separately, and plaintiffs address that motion separately.

2007.  However, Trapani previously told plaintiffs that SunTrust had in fact under-reserved for 2007 and he knew this because he had contact with a colleague who remained at the Company.  Declaration of Desiree Monty Torres in Support of Plaintiffs' Opposition to SunTrust Defendants' Motion for Reconsideration filed concurrently herewith ("Torres Decl."), ¶44.  To support these allegations, another witness who was present at the December 2007 allowance for loan and lease losses ("ALLL") Committee meeting also stated that the Reserve Working Group's ("RWG") recommendation was rejected.  And importantly, Trapani has not recanted any statements demonstrating defendants knew SunTrust was significantly under-reserved at the end of August 2007.

Concurrent with this brief, plaintiffs have filed a sworn declaration by their investigator summarizing conversations with relevant witnesses, including Trapani. *See generally* Torres Decl.  This declaration repeatedly contradicts the factual assertions in the two Trapani declarations offered by defendants.  The undisputed allegations attributed to other witnesses who participated in plaintiffs' investigation corroborated the statements made by Trapani concerning the Company's data integrity issues and understated ALLL and Provision during the relevant time period. *See, e.g.*, FAC, ¶¶103-112.  And, specifically, Trapani's statement that the RWG ALLL recommendation in December 2007 was rejected by the Company's ALLL Committee

- 2 -

and ultimately lowered was confirmed by SunTrust's former VP of Credit Risk Management.  Torres Decl., ¶79; FAC, ¶139.[2]

Documents and admissions by defendants further corroborate the witness statements, including Trapani's.  The Company in its 2008 10-K admitted that its large and belated charge-offs were a result of conditions dating back to 2007.  FAC, ¶¶20, 82.  And, a June 2008 Federal Reserve Performance Report documents SunTrust's vast understatement of its ALLL in relation to its peers, as of December 2007.  *Id.*, ¶¶168-169.

The Trapani declarations proffered by the SunTrust defendants provide no reliable basis for reconsidering this Court's Order.  As the Eleventh Circuit recently stated, "we repeatedly have noted that 'recantations are viewed with extreme suspicion by the courts.'"  *In re Davis*, 565 F.3d 810, 825 (11th Cir. 2009).[3]  Not only are the Trapani declarations controverted by the Torres declaration, but there is good

---

[2]     In fact, SunTrust's counsel has admitted to Trapani that the RWG's ALLL recommendation was rejected by the ALLL Committee in December, 2007. According to Trapani, Mr. Mast of the Troutman Sanders LLP firm acknowledged that the ALLL Committee rejected the reserves proposed by the RWG for fourth quarter 2007, and opined that it demonstrated the committee's "independence." Torres Decl., ¶71.

[3]     Here, as elsewhere, emphasis has been added, or citations omitted, unless otherwise noted.

- 3 -

reason why Trapani would be willing to supply a declaration to SunTrust's counsel, wherein he denies having "personal knowledge" of certain facts, or even that he provided information to plaintiffs: SunTrust has engaged in a pattern of intimidation against this witness and others. That course of conduct began before Trapani left SunTrust, and continued in this litigation. The Trapani declarations appear to be the result of that course of conduct.[4] Equally disconcerting, the Trapani declarations were obtained by SunTrust's lawyers directly from Trapani even though he was represented by counsel – a fact known to SunTrust's counsel at the time. Worms Decl., ¶¶5-7, 14. It should be no surprise that Trapani felt compelled to sign the declarations.

All of this highlights why the Court cannot fairly decide defendants' Motion without a fulsome factual record. In the end, defendants are asking the Court to decide a pleading motion based on declarations of a single witness, not subject to cross-examination. The Court simply cannot decide fiercely contested questions of fact, outside the pleadings. Rather, in order to consider defendants' "evidence," the

---

[4]     In spite of all this, Trapani has repeatedly indicated that if he were compelled to testify, he would testify truthfully and in much greater detail concerning the relevant issues, including SunTrust's process for valuing and setting loan loss reserves, the extent to which SunTrust was under-reserved, and who knew it. *See* Declaration of Wolfram Worms in Support of Lead Plaintiffs' Motion to Partially Lift the Discovery Stay (Dkt. No. 103-2) ("Worms Decl."), ¶13; Torres Decl., ¶31.

Court "must" convert defendants' motion to one for summary judgment, and afford the parties the opportunity to develop their case through discovery. Fed. R. Civ. P. 12(d). For these reasons, the Court should deny SunTrust's motion and the case should proceed to discovery as previously ordered.

## II.     Statement of Facts and Relevant Procedure

Prior to the filing of the Consolidated Complaint (Dkt. No. 78), lead counsel began an investigation to uncover evidence supporting its claims and on behalf of the putative class. Plaintiffs' counsel retained Worms & Hirsch, Inc. to assist with that investigation. Torres Decl., ¶4. Through their investigator, counsel contacted more than 40 potential witnesses, most of whom were former employees of SunTrust. *Id*., ¶10. Not all of these witnesses would or could provide information relevant to plaintiffs' claims. However, many of them did.

Trapani was first contacted in late July 2009, prior to the filing of the Consolidated Complaint. *Id*., ¶13. At that time, he contacted SunTrust's in-house counsel, Ray Fortin, and advised Fortin that he intended to cooperate with plaintiffs' investigation. Fortin warned Trapani against doing so. After consulting with his own counsel, Trapani declined to be interviewed at that time because of his severance agreement with the Company. According to Trapani, Fortin contacted him at least three different times to warn him against providing information to plaintiffs. *Id*., ¶14.

- 5 -

Plaintiffs filed the Consolidated Complaint on November 30, 2009, but continued their investigation. Because the terms of his severance agreement ended on December 31, 2009, on February 2, 2010 plaintiffs were able to interview Trapani, with his counsel present. Torres Decl., ¶¶16-17. In that interview, Trapani provided information concerning the setting of reserves, the "provision," and the "ALLL." Among other things, Trapani advised plaintiffs that:

- SunTrust was unable to accurately assess the likelihood of assets defaulting and the losses that would be incurred if the assets did "go bad" (*i.e.*, the probability of default). *Id.*, ¶28;

- During his employment with SunTrust, the data in the enterprise data warehouse ("EDW") was unreliable. *Id.*, ¶30;

- SunTrust was "carrying" reserves of approximately 80 to 85 basis points in the third quarter 2007 timeframe and was significantly under reserved at these levels. *Id.*, ¶26; and

- Freeman, Panther, and Chancy were all aware that SunTrust was underfunding reserves as of at least August 2007. *Id.*

Plaintiffs spoke to numerous other witnesses as well, many of whom were at the Company both before and after August 2007. Numerous witnesses corroborated Trapani's statements and provided additional detail concerning the Company-wide data integrity and process issues. Those witnesses include: SunTrust's former VP of Credit Risk Management, SunTrust's former Senior VP of Enterprise Delivery Services, and SunTrust's former First VP of Credit Risk Management. FAC, ¶¶103-

112.   Other witnesses corroborated Trapani's statements concerning the ALLL and reserve-setting process.  These witnesses include: SunTrust's former VP of Credit Risk Management.  Torres Decl., ¶79; FAC, ¶139; and (after the FAC was filed) a former Business Analyst in the Risk Management group.  Torres Decl., ¶44.

On September 10, 2010, the Court dismissed the Consolidated Complaint, and permitted plaintiffs leave to file an amended complaint.  As directed, on October 8, 2010, plaintiffs filed the FAC in which they supplemented their allegations and included information provided by two additional witnesses, including Trapani.  At the same time, and after a supplemental interview of Trapani that took place on September 24, 2010, plaintiffs filed a motion to lift the Private Securities Litigation Reform Act discovery stay for the limited purpose of taking Trapani's deposition.  That motion was opposed by defendants and denied by the Court on February 17, 2011.

The FAC alleges that Trapani was employed with SunTrust "through" 2007, and that he was aware of and/or participated in meetings, conversations, and reports that occurred at SunTrust "throughout" 2007.  Ignoring the allegations supported by other witnesses, defendants moved to dismiss the complaint and argued that Trapani was placed on administrative leave on August 28, 2007, and therefore could not have personal knowledge of events that transpired at the Company after that date.  *See, e.g.*,

- 7 -

Memorandum in Support of SunTrust Defendants' Motion to Dismiss FAC (Dkt. No. 112-1) ("SunTrust Mem.") at 5.

On September 7, 2011, the Court entered an Order denying those motions in substantial part. In a footnote, the Court determined it "must assume Trapani had personal knowledge of the matters upon which allegations attributed to him are based including the facts alleged about SunTrust's conduct at the end of 2007."[5] September 7, 2011 Order at 9. Seizing upon this language in the September 7, 2011 Order, counsel for the SunTrust defendants filed a motion for reconsideration of the Court's September 7, 2011 Order, and attached two declarations purportedly signed by Trapani. These declarations appear, in part, to contradict allegations in the FAC – including certain allegations relied upon by the Court.

For instance, ¶143 of the FAC alleges,

---

[5]     Although it is implicit in certain allegations, plaintiffs did not allege Trapani had "personal knowledge" of all of the facts attributed to him. Certain allegations are based on conversations he had with people who were still at the Company after he left. *See, e.g.*, FAC, ¶139 ("the RWG's recommendation for its ALLL in December 2007 . . . was rejected by the ALLL Committee and ultimately lowered"). Torres Decl., ¶¶44, 79. Certain other allegations are Trapani's opinion about the Company based on his knowledge and conversations. *See, e.g.*, FAC, ¶139 ("SunTrust needed to be carrying an ALLL in the range of 1.75 to 2% (as a percentage of total loans) at the end of 2007 to be adequately reserved for probable and identified losses."). Torres Decl., ¶54; *see also* September 7, 2011 Order at 22.

Indeed, the former GVP had several discussions throughout 2007 with defendants Fortin, Panther, Chancy and Wells about being substantially and materially under-reserved. Defendants Fortin, Panther, Chancy and Wells all knew that SunTrust's reserve models were flawed as a result of the data integrity issues at the Company and because of the mounting losses in the HELOC book.

In the first Trapani declaration dated September 20, 2011(Dkt. No. 122-1) ("Trapani Decl. I"), ¶3, Trapani declares,

Although I met Jim Wells on a few occasions, I do not recall any specific discussions with him, and do not believe that I ever discussed the ALLL, reserve or process with him. I never told plaintiffs' investigator that I had discussions with Mr. Wells regarding the ALLL.

Contrary to his declaration, Trapani *did* tell plaintiffs that he had discussions with Jim Wells, and that those discussions included "the burgeoning losses in the warehouse HELOC book." Torres Decl., ¶49. Trapani also told plaintiffs it was a significant problem for the Company in 2007, and "everyone was aware" of it. *Id*., ¶51. The problem was that SunTrust had reserved for losses in that book based on historical levels, and by early 2007 the probable and actual losses were "way above historical levels." *Id*. As a result, Trapani told plaintiffs, the issue of the Company being underfunded for reserves was a "topic of discussion" for the last year of Trapani's employment, including in discussions with Freeman, Fadil, Panther, Chancy, *and Wells*. *Id*., ¶58. *See also* FAC, ¶¶121-123, 179 (explaining the data problems with the HELOC book and how it affected SunTrust's reported reserves).

Numerous other statements in the Trapani declarations are squarely contradicted by plaintiffs.  For example:

- "Although Coughlin Stoia hired and paid an attorney in 2009 to consult with me regarding my severance agreement with SunTrust, I did not select that lawyer and am not currently represented."  Supplemental Declaration of Scott A. Trapani (Dkt. No. 127-2) ("Trapani Decl. II"), ¶2.  *But see* Torres Decl., ¶¶12, 72 (participated in conference calls with Trapani **and his counsel** on September 24, 2010 and October 11, 2011).

- "I have no knowledge **from any source** regarding SunTrust's ALLL, reserves, provision, or any other aspect of SunTrust's operation or financial affairs after August 28, 2007."  Trapani Decl. II, ¶4.  *But see* Torres Decl., ¶44 (Trapani spoke with a business analyst in the Risk Management group, who was still at the Company, who told him in December 2007 the RWG recommendation for the ALLL was rejected and reduced by the ALLL committee); *Id.*, ¶54 (Trapani estimated that the ALLL for year-end 2007 was understated by more than 75 basis points); *Id.*, ¶¶80-84 (Trapani's friend, who worked at SunTrust, spoke with Trapani almost daily after Trapani was placed on administrative leave).

- "I never told plaintiff's investigators that "flawed data" made it impossible to accurately determine the appropriate reserves."  Trapani Decl. II, ¶5.  *But see* Torres Decl., ¶74 (Trapani represented more than once that during his employment with SunTrust, the EDW data was unreliable, there was a lack of available and reliable data which spanned the entire Company, and that data integrity issues negatively impacted the ability to accurately forecast reserves and contributed to the Company being under-reserved).

- "I never told plaintiffs' investigator that SunTrust was inadequately reserved as of December 31, 2007.  I have no knowledge from any source regarding SunTrust's ALLL, reserves, provision, or any other aspect of SunTrust's operations or financial affairs as of December 31, 2007, or at any other time after August 28, 2007."  Trapani Decl. II, ¶6.

- 10 -

*But see* Torres Decl., ¶54 (Trapani estimated that the ALLL for 2007 was understated by more than 75 basis points); *Id*., ¶44 (Trapani spoke with a business analyst in the Risk Management group who was still at the Company, who told him that at the December 2007 ALLL Committee meeting, the RWG recommendation for the ALLL was rejected and reduced); *Id*., ¶¶80-84 (Trapani's friend, who worked at SunTrust, spoke with Trapani almost daily after Trapani was placed on administrative leave).

- "I never told plaintiffs' investigator that I discussed the level of SunTrust's ALLL, reserves or provision, or any other aspect of SunTrust's operations or financial affairs as [of] December 31, 2007 with Jim Wells, Ray Fortin, Mark Chancy, or Tom Panther." Trapani Decl. II, ¶7.[6] *But see* Torres Decl., ¶58 (The issue of the Company being underfunded for reserves was a "topic of discussion" for the last year of Trapani's employment, and "everybody was aware."); *Id*., ¶44 (Trapani spoke with a business analyst in the Risk Management group who was still at the Company, who told him that at the December 2007 ALLL committee meeting, the RWG recommendation for the ALLL was rejected and reduced by the ALLL committee); *Id*., ¶79 (SunTrust's former VP of Credit Risk Management confirmed the RWG's ALLL recommendation in December 2007 was rejected by the Company's ALLL Committee); *Id*., ¶40 (the members of the ALLL Committee included defendants Chancy and Panther).

Not only are these statements and others contradicted, the Trapani declarations are inherently unreliable because they were obtained in a controversial manner.

---

[6]     There is no such allegation in the FAC.  Such a conversation would have had to have taken place, if at all, after December 31, 2007.

SunTrust's outside counsel contacted the witness directly, even though filings with the Court indicated that Trapani was represented by counsel in this matter.[7]

According to Trapani, in that initial contact by SunTrust's counsel, Trapani indicated he was unsure whether he was still represented. Torres Decl., ¶64. SunTrust's counsel did not stop his questioning, but instead conveyed to Trapani that he likely was not represented in this matter – for if Trapani were in fact represented, he would know it. *Id*. So Trapani discussed this matter without his own counsel present, or even being aware that the conversations were taking place.

The history of this case suggests SunTrust's in-house counsel was not reluctant to attempt to dissuade Trapani from providing information helpful to plaintiffs. Previously, he contacted Trapani on at least 3 occasions for that very purpose. At one point, he threatened to attempt to hurt him professionally.[8] Torres Decl., ¶14. Indeed,

---

[7]    *See* Worms Decl., ¶14 ("After this Court's decision on Defendants Motion to Dismiss, I sent ***Trapani's counsel*** a copy of the Opinion and Order and requested another conversation with Trapani. A supplemental interview with Trapani ***and his counsel*** occurred on September 24, 2010.").

[8]    *See also SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, No. 3:09cv529, 2011 U.S. Dist. LEXIS 33118, at *89 (E.D. Va. Mar. 29, 2011) (sanctions motion against SunTrust granted on account of the willful spoliation of evidence by a SunTrust employee and "the ensuing willful blindness to the truth of [SunTrust]'s in-house counsel" – including defendant Fortin).

this was the reason Trapani obtained counsel in the first place.  This latest contact by SunTrust's outside counsel may have had similar overtones.  *Id.*, ¶¶69-70.

## III.   Argument

### A.   Plaintiffs and Their Counsel Have Demonstrated a Good Faith Basis for the Allegations in the FAC

All of the allegations in the FAC were made with a good faith basis and supported by an extensive investigation that included numerous interviews performed by plaintiffs' investigator and counsel.  Plaintiffs' investigators have submitted two declarations with this Court summarizing their discussions with Trapani.  *See generally* Worms Decl. and Torres Decl.

As demonstrated in the Torres declaration, Trapani provided detailed information that was well within his experience and expertise.  This information, including the dysfunctional state of SunTrust's internal controls and the extent to which the Company understated its ALLL and Provision during the relevant period, was corroborated by numerous other witnesses that participated in plaintiffs' investigation.  *See, e.g.*, FAC, ¶¶103-112.  And notably, SunTrust's former VP of Credit Risk Management confirmed Trapani's statement that the RWG's ALLL

recommendation in December 2007 was rejected by the Company's ALLL Committee and ultimately lowered.  *Id.*, ¶139.[9]

Even defendants do not dispute the allegations based upon statements attributed to Trapani and others, up through the end of August, 2007.  Thus, two months into the 3Q 2007, defendants knew the undisputed state of affairs at SunTrust was:

- SunTrust could not accurately determine the appropriate level of reserves due to a failure of company-wide systems, "data integrity" issues throughout the processes, and quantitative models that failed to capture a "total trend reversal" that began in late 2006 and continued through 2007.  As a result, SunTrust was substantially under-reserved.  Torres Decl., ¶¶48, 74-75.

- Trapani repeatedly attended meetings and participated in conversations where these issues were discussed in detail.  While not specific to when these meetings and conversations took place, at different times they included all of SunTrust's top executives, including the CEO.  Trapani made clear these were significant issues within SunTrust during this time, and "everyone knew" about them.  *Id.*, ¶¶49, 58.

- Trapani described specific quarterly meetings in which these issues were discussed, including who attended those meetings.  He personally participated in the RWG and ALLL Committee meetings during the Q1 and Q2.  He was aware of much of the information that would go into the Q3 meetings, including the current state of reserves and business and market trends.  *Id.*, ¶¶40-43, 50, 53-54.

---

[9]     Another former SunTrust executive responsible for preparing certain reports for the ALLL Committee recently confirmed that the reserve recommended by the RWG in December 2007 was rejected and ultimately lowered by the ALLL Committee. Torres Decl., ¶¶80-84.  So too has SunTrust's counsel.  *Id.*, ¶71.

- 14 -

Even though Trapani was not physically at SunTrust after August 2007, he and defendants knew it was not possible that SunTrust could remedy the issues it faced before the year-end.  For instance,

- In August 2007, the Company laid off many of the employees charged with remedying the problems with the Company's informational systems and data integrity.  FAC, ¶114.

- The macro-economic trends that Trapani observed that resulted in SunTrust understating reserves became worse in the 3Q and 4Q 2007. *Id*., ¶¶20, 80-82, 168, 170, 178.

- Trapani learned from a colleague concerning the Q4 2007 ALLL Committee meeting, which at least two of the individual defendants attended.  This was corroborated by a second witness who attended the meeting.  Torres Decl., ¶¶44, 79.

- Trapani reviewed SunTrust's public filings, and believed for year-end 2007 SunTrust's ALLL should have been at least 75 basis points higher than defendants reported. *Id*., ¶54.  Trapani's opinion was based on what he observed through 3Q 2007, and his knowledge that there would have had to have been a significant and rapid trend reversal or an obvious and significant increase for the reserves to be adequate. *Id*., ¶¶75-77.  Neither of those events happened.

## B.    The Controverted Trapani Declarations Should Not Be Considered

Emphasizing that the work-product doctrine "is an intensely practical one, grounded in the realities of litigation in our adversary system," the Supreme Court concluded in *United States v. Nobles*, 422 U.S. 225, 238 (1975), that "[o]ne of those realities is that attorneys often must rely on the assistance of investigators and other

- 15 -

agents in the compilation of materials in preparation for trial." *Id*.  The Supreme Court observed, moreover, that when testimony conflicts with what a critical witness actually said to the investigator, "if this statement appeared in the [investigator's] contemporaneously recorded report, it would tend strongly to corroborate the investigator's version of the interview and to diminish substantially the reliability" of the interviewed witness' trial testimony.  *Nobles*, 422 U.S. at 232.

Defendants argue that plaintiffs' ***counsel's*** failure to personally ***meet*** with the witness somehow reflects poorly on counsel's investigation.  But those who interview witnesses may ultimately have to testify about what was said if a witness does recant – providing a good reason for counsel to avoid relying on personal contact with a witness.  "Indeed, tradition, as well as the ethics of our profession, generally instruct counsel to avoid the risks associated with participating as both advocate and witness in the same proceeding." *Kalina v. Fletcher*, 522 U.S. 118, 130 (1997).

To the extent Trapani has recanted statements made to plaintiffs' investigator, that does not render reliance on his statements in the FAC unfounded, or this Court's Order upholding the FAC unwarranted.  Cases in which witnesses later recant for a host of possible reasons are not uncommon, and Eleventh Circuit precedent is clear:

- 16 -

"[W]e repeatedly have noted that 'recantations are viewed with extreme suspicion by the courts.'"   *Davis*, 565 F.3d at 825.[10]   Courts have also recognized that inconsistencies between grand jury and trial testimony do not warrant an inference of the use of perjured testimony.[11]   Any conflict between what Trapani told plaintiffs' investigator, and what he later said to SunTrust's counsel, presents a question of fact that cannot be resolved against plaintiffs at this stage.

### 1.   Trapani May Have a Motive Not to Accurately Recall What He Told Plaintiffs

While Trapani appears to be distancing himself from certain statements made to plaintiffs, Trapani may have a strong motive to do so.   *See* Torres Decl., ¶31 (describing Trapani's ongoing employment in the financial industry, and the fact that his current employer and SunTrust have an existing business relationship).   By claiming that plaintiffs deliberately manufactured allegations so as to ensure the legal sufficiency of the FAC, defendants ignore the extremely plausible counter-narrative

---

[10]   *See also United States v. Santiago,* 837 F.2d 1545, 1550 (11th Cir. 1988) (same); *accord, e.g., Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995) ("Courts characteristically treat witness recantations 'with the utmost suspicion.'").

[11]   *United States v. Hemmer*, 729 F.2d 10, 17 (1st Cir. 1984) ("Presentation of a witness who recants or contradicts his prior testimony is not to be confused with eliciting perjury. It was for the jury to decide whether or not to credit the witness.") (quoting *United States v. Holladay*, 566 F.2d 1018, 1019 (5th Cir. 1978)).

that Trapani felt pressured by SunTrust's counsel to change his statements, or may simply have "'honestly not remembered the exact substance of conversations [he] had [over a] year[] ago.'" *In re Dynex Capital, Sec. Litig.*, No. 05 Civ. 1897 (HB) (DF), 2011 U.S. Dist. LEXIS 67894, at *15-*16 (S.D.N.Y. Apr. 29, 2011), *upheld by*, No. 05 Civ. 1897 (HB), 2011 U.S. Dist. LEXIS 67756 (S.D.N.Y. June 20, 2011).

The *Dynex* court found these explanations to be "plausible scenarios" when five of nine confidential witnesses, relied upon by the court in denying defendants' motion to dismiss, subsequently provided declarations under penalty of perjury asserting that they did not make the statements attributed to them in the operative complaint – including a sixth witness who later declared that he had no recollection at all of making the statements. *Id*. at *5. Without making any findings of fact, the *Dynex* court held that it was entirely reasonable that the witnesses may have sought to disavow having made incriminating statements against the company after being confronted by its corporate counsel. *Id*. at *15-*16; *see also In re Applied Micro Circuits Corp. Sec. Litig.*, No. 01-CV-0649 K (AJB), 2002 U.S. Dist. LEXIS 22403, at *31 (S.D. Cal. Oct. 4, 2002) ("Plaintiff provides a plausible explanation as to why sources are now contradicting themselves" where, as here, "the change occurred after having been contacted by Defendants' attorneys.").

The *Dynex* court held that even an evidentiary hearing to resolve credibility issues was improper and would be "ill-advised" during this stage of the proceedings. 2011 U.S. Dist. LEXIS 67894, at *18-*19.  Indeed, the task of determining the truth or falsity of the substance of the allegations contained in the FAC and attributed to Trapani falls within the province of the jury.  *Id*. at *19; *Applied Micro*, 2002 U.S. Dist. LEXIS 22403, at *31 ("This boils down to an issue of credibility to be determined by a trier of fact . . . .").[12]

### 2.   The Trapani Declarations Were Obtained Under Controversial Circumstances

According to Trapani, SunTrust's outside counsel of record contacted Trapani on or about September 18, 2011.  Torres Decl., ¶63.  Prior to this contact, SunTrust's counsel was made aware that Trapani was represented ***in this matter***.  *See* Worms Decl., ¶¶5-7, 14.  Despite this knowledge, counsel contacted Trapani directly regarding this litigation.  Torres Decl., ¶63.  Counsel asked Trapani if he was represented, to which Trapani responded that he was unsure.  *Id*., ¶64.  Counsel then

---

[12]   *See also Wu Group v. Synopsys, Inc.*, No. C 04-3580 MJJ, 2005 U.S. Dist. LEXIS 42351, at *40 (N.D. Cal. Aug. 10, 2005) (where defendants presented "declarations from the witnesses upon whose statements Plaintiffs rely, rais[ing] serious questions about the accuracy of the statements and opinions Plaintiffs attribute to [them] in their Complaint," the court held "whether the statements were made is essentially a credibility question").

told Trapani that legal representation is a "pretty clear agreement," that "you either are or are not represented," and that "people usually know when they are represented." *Id*.

SunTrust's counsel was prohibited from contacting Trapani, whom he knew to be represented in this matter.[13]   Despite this knowledge, he not only contacted Trapani, he used his superior knowledge as an attorney to convince Trapani to speak with him without his lawyer.  *See* Rule 4.2., cmt. 7 (noting "anti-contact" rule protects "against misuse of the imbalance of legal skill between a lawyer and layperson").  *See also United States v. Smallwood*, 365 F. Supp. 2d 689, 695 (E.D. Va. 2005) (ethical rule violated where attorneys and their investigators communicated with represented third-party witness, explaining "a violation of Rule 4.2 occurs ***even where the represented party consents to the communication***").  Under these circumstances, the Court should not rely upon the Trapani declarations.

---

[13]   Rule 4.2(a) of the Georgia Rules of Professional Conduct states, "[a] lawyer who is representing a client in a matter shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by constitutional law or statute."  *Morse v. State*, 277 Ga. App. 67, 68 (2005).

- 20 -

### C.   SunTrust's Attempt to Have the Court Resolve a Factual Dispute in Their Favor Is Improper

A motion for reconsideration is rarely permitted. "A party may move for reconsideration only when one of the following has occurred: 'an intervening change in controlling law, the availability of new evidence, [or] the need to correct clear error or prevent manifest injustice.'" *In re Immucor, Inc. Sec. Litig.*, No. 1:09-CV-2351-TWT, 2011 WL 3844221, at *1 (N.D. Ga. Aug. 29, 2011). SunTrust does not point to an intervening change in controlling law or any newly discovered evidence that was previously unavailable. *Medley v. Westpoint Stevens, Inc.*, 162 F.R.D. 697, 669 (M.D. Ala. 1995) ("Overwhelmingly, courts hold that where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion.").

### 1.   SunTrust Offers No "New Evidence"

SunTrust's contention that their "newly discovered evidence" justifies reconsideration is wrong. SunTrust knew as early as October 8, 2010 that the allegations in the FAC were supported by Scott Trapani, yet SunTrust "chose to do no[thing]" and "instead waited until the Court ruled on the motion[s]." *Prieto v. Storer Commc'ns, Inc.*, 152 F.R.D. 654, 655 (M.D. Fla. 1994) (denying reconsideration); *see, e.g.*, Lead Plaintiffs' Motion to Partially Lift the Discovery Stay

- 21 -

(Dkt. No. 103).  Here, Trapani's availability as a witness was known to SunTrust five months before defendants' motions to dismiss were filed and a year before the Court entered its Order.  Because statements by Trapani should have been obtained long *before* the Court issued its Order, they can in no way be "newly-considered evidence" supporting reconsideration.  *See Williams v. Obstfeld*, 314 F.3d 1270, 1275 n.6 (11th Cir. 2002) (declarations filed in support of reconsideration did not "constitute[] new evidence" where "the information in [plaintiff's] declarations was not unobtainable" prior to the order on which plaintiff sought reconsideration).[14]

Nor can the SunTrust defendants argue the Court's Order works a "manifest injustice" against them.  *1550 Brickell Assocs. v. QBE Ins. Co.*, 597 F. Supp. 2d 1334, 1338 (S.D. Fla. 2009) (refusing to consider evidence on reconsideration that was not previously unavailable, noting "the result of the Order is not manifestly unjust [to QBE] because it arose from QBE's actions").  Indeed, "allowing parties to withhold arguments and evidence until after losing is equally destructive of judicial economy and fairness in either context."  *Amazing Grace Bed & Breakfast v. Blackmun*, No. 09-0298-WS-N, 2011 U.S. Dist. LEXIS 14653, at *2 n.1 (S.D. Ala. Feb. 11, 2011).

--------

[14]    Plaintiffs themselves attempted to obtain testimony from Trapani in 2010, and defendants *opposed* that request (Dkt. Nos. 106, 107, 108).

656299_1

## 2.      SunTrust's Attempt to Dispute the Allegations in the FAC Cannot Be Resolved on Reconsideration

The Company's current motion raises issues of fact that cannot be resolved by a motion attacking the pleadings.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1947 (U.S. 2009) ("Evaluating the sufficiency of a complaint is not a 'fact-based' question of law . . . .").  SunTrust may not rely on declarations or affidavits in support of a Rule 12(b) motion because they fall outside the scope of the pleadings.  *See Lewis v. Asplundh Tree Expert Co.*, 305 Fed. Appx. 623, 627 (11th Cir. 2008) ("[T]he district court must 'limit[] its consideration to the pleadings and exhibits attached thereto' when deciding a Rule 12(b)(6) motion to dismiss.").

Even if the Court were to consider SunTrust's factual submissions, their Rule 12 motion "***must***" be converted into a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *Lockwood v. Beasley*, 211 Fed. Appx. 873, 876-77 (11th Cir. 2006) ("[w]henever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion").

- 23 -

Defendants rely heavily on the holdings of *Campo v. Sears Holdings Corp.*, 371 Fed. Appx. 212, 215 n.4 (2d Cir. 2010) and *City of Livonia Emps.' Ret. Sys. v. The Boeing Co.*, No. 09 C 7143, 2011 U.S. Dist. LEXIS 22347, at *8-*14 (N.D. Ill. Mar. 7, 2011). But those cases are not applicable here. In *Campo* and *City of Livonia*, both courts held that – after document and deposition discovery – an inference of scienter was precluded by the fact that confidential witnesses had been deposed and clarified or disavowed distinct portions of the information in the complaint that relied upon their testimony. *Campo*, 371 Fed. Appx. at 217; *City of Livonia*, 2011 U.S. Dist. LEXIS 22347, at *5-*6.

In *City of Livonia*, there was a single witness who provided the key information, uncorroborated by any other source. In contrast, the facts at issue here – whether Trapani told plaintiffs' counsel what was happening at the Company after August 2007 – has been corroborated by others. And, here, unlike SunTrust's cited authority, plaintiffs have not had an opportunity to depose Trapani or any other witness to challenge his contradictory statements or the circumstances surrounding those declarations. After all, the Trapani declarations are squarely contradicted, and they were created and signed under problematic circumstances.

Unlike the courts in *Campo* and *City of Livonia*, here the Court is being asked to weigh evidence and judge the credibility of witnesses without the benefit of cross-

- 24 -

examination.  In *Campo*, plaintiffs did not dispute the new evidence, and the Second Circuit noted that the district court "made no credibility determinations, nor did it weigh competing testimony."  371 Fed. Appx. at 216 n.4.  Here, plaintiffs have provided persuasive evidence that Trapani ***did*** provide the information used in the FAC, and other witnesses corroborate his information – including the dysfunctional state of SunTrust's internal controls and the extent to which the Company understated its ALLL and Provision during the relevant period.  Moreover, the evidence shows that Trapani has a strong motive to distance himself from the damning allegations. *See* Torres Decl., ¶31.  This case is nothing like *Campo*.

## IV.    Conclusion

For the foregoing reasons, plaintiffs respectfully request this Court deny SunTrust's motion for reconsideration.

DATED:  October 17, 2011              Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
ANDREW J. BROWN
LUCAS F. OLTS
ERIC I. NIEHAUS
CHRISTOPHER D. STEWART

                        s/ Andrew J. Brown
                        ANDREW J. BROWN

- 25 -

656299_1

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN C. HERMAN
Georgia Bar No. 348370
Monarch Centre, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA  30326
Telephone:  404/504-6500
404/504-6501 (fax)

LAW OFFICES OF BERNARD M.
  GROSS, P.C.
DEBORAH R. GROSS
Wanamaker Bldg., Suite 450
100 Penn Square East
Philadelphia, PA  19107
Telephone:  215/561-3600
215/561-3000 (fax)

Lead Counsel for Plaintiffs

656299_1

## <u>CERTIFICATE OF COMPLIANCE OF LOCAL RULE 7.1D</u>

I hereby certify that the foregoing brief has been prepared in a Times New Roman 14 point font, one of the font and point selections approved by the Court in Local Rule 5.1C.

s/ Andrew J. Brown
_____
ANDREW J. BROWN

656299_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 17, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 17, 2011.

s/ Andrew J. Brown
ANDREW J. BROWN

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:       andrewb@rgrdlaw.com

## Mailing Information for a Case 1:09-cv-01185-WSD

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **David Andrew Bain**
  dbain@bain-law.com

- **Thomas B. Bosch**
  tom.bosch@troutmansanders.com,kelley.wade@troutmansanders.com

- **Thomas C. Bright**
  tbright@gbcslaw.com

- **Andrew J. Brown**
  andrewb@rgrdlaw.com

- **Ann Marie Byrd**
  ann.byrd@dlapiper.com,jennifer.burr@dlapiper.com

- **Solomon B. Cera**
  scera@gbcslaw.com,keg@gbcslaw.com

- **John A. Chandler**
  jchandler@kslaw.com,madams@kslaw.com

- **John J. Clarke , Jr**
  john.clarke@dlapiper.com

- **Mark Edwin Grantham**
  Mark.Grantham@dlapiper.com,john.clarke@dlapiper.com,betty.richards@dlapiper.com

- **Deborah R. Gross**
  debbie@bernardmgross.com

- **Cheri A. Grosvenor**
  cgrosvenor@kslaw.com

- **John C. Herman**
  jherman@rgrdlaw.com,hectorm@rgrdlaw.com,garmstrong@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Robert Ware Killorin**
  rkillorin@chitwoodlaw.com

- **J. Timothy Mast**
  tim.mast@troutmansanders.com,kelley.wade@troutmansanders.com

- **Paul Monnin**
  paul.monnin@dlapiper.com,jennifer.burr@dlapiper.com,kimberly.layton@dlapiper.com,jennifer.edgar@dlapiper.com,betty.richards@dlapiper.com

- **Eric I. Niehaus**
  ericn@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jack Reise**
  jreise@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Darren J. Robbins**
  darrenr@rgrdlaw.com

- **Christopher D. Stewart**
  cstewart@rgrdlaw.com

- **David Ashcraft Terry**
  dterry@huffpowellbailey.com,mhart@huffpowellbailey.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Matthew P. Montgomery**
Robbins Geller Rudman & Dowd, LLP - SD
655 W. Broadway
Suite 1900
San Diego, CA 92101

**Casey M. Preston**
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103-6365