IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BELMONT HOLDINGS CORP., | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. |
| SUNTRUST BANKS, INC., *et al.*, | ) | 1:09-CV-01185-WSD |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
SUNTRUST DEFENDANTS' MOTION
FOR RULE 11 SANCTIONS AGAINST
PLAINTIFF AND PLAINTIFF'S COUNSEL**

J. TIMOTHY MAST
Georgia Bar No. 476199
THOMAS B. BOSCH
Georgia Bar No. 068740
TROUTMAN SANDERS LLP
Suite 5200, Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216
(404) 885-3000 (voice)
(404) 885-3900 (facsimile)

*Attorneys for the SunTrust Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................... 1

FACTUAL BACKGROUND ................................................................. 3

    A.    Plaintiff's FAC and the Fabricated Trapani Allegations.................... 3

    B.    The True Facts Regarding Trapani's Personal Knowledge and Statements to Plaintiff's Investigator ................................................. 6

    C.    Plaintiff's Counsel was on Notice that Trapani Did Not Have the Knowledge  that They Attributed to Him..................................... 8

ARGUMENT ........................................................................................ 10

    A.    Standard for Rule 11 Sanctions ........................................................ 10

    B.    The FAC's Allegations Attributed to Trapani Are Objectively Frivolous............................................................................................. 13

    C.    Plaintiff's Counsel Were Aware of the Claims' Frivolity ............... 15

    D.    The Court Should Sanction Plaintiff's Counsel for Violating Rule 11............................................................................................... 17

CONCLUSION .................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Smithfield Foods, Inc*.,
   353 F.3d 912 (11th Cir. 2003) .......................................................... 11

*ATSI Communications, Inc. v. The Shaar Fund, Ltd*,
   579 F.3d 143 (2nd Cir. 2009)............................................................ 13

*Attwood v. Singletary*,
   105 F.3d 610 (11th Cir. 1997) .......................................................... 13

*Baker v. Alderman*,
   158 F.3d 516 (11th Cir. 1998) .......................................................... 12

*Jones v. Bock*,
   549 U.S. 199 (2007)......................................................................... 20

*Campo v. Sears Holding Corp*.,
   371 Fed. Appx. 212 (2d Cir. 2010).................................................... 19

*Campo v. Sears Holding Corp*.,
   635 F. Supp. 2d 323 (S.D.N.Y. 2009) ...................................... 2, 18, 19

*Donaldson v. Clark*,
   819 F.2d 1551 (11th Cir. 1987) ........................................................ 11

*In re Mid-Atlantic Toyota Antitrust Litig*.,
   525 F. Supp. 1265 (D. Md. 1981)..................................................... 20

*In re Star Gas Secs. Litig*.,
   745 F. Supp. 2d 26 (D. Conn. 2010)................................... 2, 13, 14, 18

*Jones v. Int'l Riding Helmets, Ltd*.,
   145 F.R.D. 120 (N.D. Ga. 1992)................................................. 17, 19

*Jones v. Int'l Riding Helmets, Ltd*.,
   49 F.3d 692 (11th Cir. 1995) ............................................................ 12

*Kaplan v. Daimler Chrysler, A.G.*,
331 F.3d 1251 (11th Cir. 2003) ......................................................................... 11

*Manov v. Nezhat*,
1998 U.S. Dist. LEXIS 23300 (N.D. Ga. Feb. 23, 1998) ................................... 14

*McDonald v. Emory Healthcare Eye Ctr.*,
291 Fed. Appx. 851 (11th Cir. 2010).................................................................. 13

*McGuire Oil Co. v. Mapco, Inc.*,
958 F.2d 1552 (11th Cir. 1992) ......................................................................... 19

*Peer v. Lewis*,
606 F.3d 1306 (11th Cir. 2010) ................................................................. 11, 13

*Pelletier v. Zweifel*,
921 F.2d 1465 (11th Cir. 1991) ......................................................................... 19

*Ret. Sys. v. Boeing Co.*,
2011 U.S. Dist. LEXIS 22347 (N.D. Ill., Mar. 7, 2011)................................. 2, 18

*Riccard v. Prudential Ins. Co.*,
307 F.3d 1277 (11th Cir. 2002) ......................................................................... 11

*Rivera v. Allin*,
144 F.3d 719 (11th Cir. 1998) ........................................................................... 20

*Thomas v. Evans*,
880 F.2d 1235 (11th Cir. 1989) ......................................................................... 11

*Thompson v. Relationserve Media, Inc.*,
610 F.3d 628 (11th Cir. 2010) ........................................................................... 13

*Worldwide Primates, Inc. v. McGreal*,
87 F.3d 1252 (11th Cir. 1996) ..................................................................... 12, 15

*Zocaras v. Castro*,
465 F.3d 479 (11th Cir. 2006) ........................................................................... 20

### STATUTES

15 U.S.C. § 77z-1(c)(1).......................................................................................... 13

15 U.S.C. § 77z-1(c)(2) ............................................................................. 13

15 U.S.C. § 77z-1(c)(3)(A)(ii) ................................................................... 13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11 ........................................................................... passim

Fed. R. Civ. P. Rule 11(b) ................................................................ 12, 13

Fed. R. Civ. P. 11(b)(3) ...................................................................... 2, 11

Fed. R. Civ. P. Rule 11(c) ........................................................................ 2

Fed. R. Civ. P. 11(c)(2)-(3) ..................................................................... 13

Fed. R. Civ. P. 11(c)(4) .................................................................... 19, 20

Fed. R. Civ. P. Rule 41(b) ....................................................................... 20

## PRELIMINARY STATEMENT

In its September 7, 2011 Opinion and Order (the **"September 2011 Order"**) [ECF No. 124], this Court denied the **SunTrust Defendants'**[1] Motion to Dismiss the First Amended Consolidated Complaint (the "**FAC**") [ECF No. 102] based on statements attributed in the FAC to Scott Trapani, SunTrust's former Group Vice President of Risk Management; however, the Court warned that "[i]f Trapani does not have personal knowledge of events [at SunTrust] in the second half of 2007, the Court will consider later whether these allegations support a violation of the pleading standards under the Federal Rules of Civil Procedure." (September 2011 Order at 8-9 n.5.)

The recently filed declarations of Scott Trapani (the "**Trapani Declarations**") [ECF Nos. 127-1 & 127-2][2] show unequivocally that Trapani lacks

---

[1] The SunTrust Defendants are SunTrust Banks, Inc. ("**SunTrust**"); SunTrust Capital IX; James M. Wells, III; William H. Rogers, Jr.; Raymond D. Fortin; L. Phillip Humann; Mark A. Chancy; Thomas E. Panther; Robert M. Beall, II; J. Hyatt Brown; Alston D. Correll; Jefferey C. Crowe; Thomas C. Farnsworth, Jr.; Patricia C. Frist; Blake P. Garrett, Jr.; David H. Hughes; E. Neville Isdell; M. Douglas Ivester; J. Hicks Lanier; G. Gilmer Minor, III; Larry L. Prince; Frank S. Royal; Karen Hastie Williams; and Phail Wynn, Jr.

[2] Trapani executed two declarations, both of which are attached to the Notice of Filing Declarations of Scott A. Trapani, CFA [ECF No. 127]. The September 20, 2011 declaration is referred to herein as the "**Trapani Dec. I**" and the September 26, 2011 declaration is referred to as the "**Trapani Dec. II**" (collectively, "Trapani Declarations").

any knowledge whatsoever regarding events at SunTrust after August 28, 2007. Indeed, all of the post-August allegations attributed to Trapani in the FAC are complete fabrications. Significantly, Trapani made clear to Plaintiff's investigator before the FAC was filed that Trapani did not have any knowledge of these events.

Because Plaintiff's counsel – who have been down this road before[3] – did not have a reasonable basis under Federal Rule of Civil Procedure 11(b)(3) to represent to the Court that the factual contentions in the FAC have evidentiary support, the Court should impose sanctions pursuant to Rule 11(c). Specifically, the SunTrust Defendants request that the Court strike the offending allegations from the FAC, dismiss the FAC with prejudice, and require Plaintiff and Plaintiff's counsel to pay all attorney's fees and expenses incurred by the SunTrust Defendants since October 8, 2010, the date on which the FAC was filed.

---

[3] *In re Star Gas Secs. Litig.*, 745 F. Supp. 2d 26 (D. Conn. 2010) (imposing Rule 11 sanctions on Robbins Gellar Rudman & Dowd LLP ("Robbins Geller") – Belmont's counsel here – for, among other things, misrepresenting confidential witness statements); *City of Livonia Emps.' Ret. Sys. v. Boeing Co.*, 2011 U.S. Dist. LEXIS 22347, at *10-14 (N.D. Ill., Mar. 7, 2011) (dismissing claims where confidential witness did not have personal knowledge of the facts attributed to him in amended complaint filed by Robbins Geller); *Campo v. Sears Holding Corp.*, 635 F. Supp. 2d 323, 335-36 (S.D.N.Y. 2009) (same).

# FACTUAL BACKGROUND

## A.   Plaintiff's FAC and the Fabricated Trapani Allegations.

Over a year ago, this Court granted Defendants' original Motions to Dismiss [ECF Nos. 81, 82, & 83] Plaintiff's Consolidated Complaint.  (Sept. 10, 2010 Order (the "**Dismissal Order**") [ECF No. 101].)  In the Dismissal Order, the Court held, among other things, that:

> Plaintiff's Complaint fails to provide the minimum factual content, required by Twombly and Iqbal, to permit the court to draw a reasonable inference that SunTrust omitted specific material facts known at the time of the Offering or that the statements upon which Plaintiff relies were either untrue or misleading when they were made.

(Dismissal Order at 16-17.)  The Court further held that Plaintiff's claims were based on statements of opinion, which are actionable only if Plaintiff adequately alleged that Defendants "did not actually hold the opinion [they] expressed in [their] financial statements at the time they became effective."  (*Id.* at 14.)  Specifically, Plaintiff failed to plead that the SunTrust Defendants did not believe the year-end 2007 opinions and judgments with respect to the allowance for loan and lease loss reserves (the "**ALLL**") and provision for loan losses (the "**Provision**").  (*Id.* at 15.)

In an effort to overcome the Court's Dismissal Order, Plaintiff filed its FAC on October 8, 2010, relying exclusively on additional allegations attributed to

Trapani to claim that SunTrust's December 31, 2007 ALLL and Provision were understated intentionally in SunTrust's 2007 Form 10-K (the "**2007 10-K"**), which was incorporated into the February 2008 Registration Statement and Prospectus (the "**RS/P**") issued in connection with the February 2008 public offering of SunTrust Capital IX Trust Preferred Securities (the "**Offering**").  For example, Plaintiff alleged in the FAC that "[Trapani] confirmed that SunTrust was under-reserved **throughout 2007** … [and] according to [Trapani] the RWG's recommendation for the ALLL **in December 2007** . . . was rejected by the ALLL Committee and ultimately lowered."  (FAC ¶ 139.)  According to the Plaintiff, Trapani also "confirmed that SunTrust was under-reserved . . . **in late 2007** . . . ." (FAC ¶ 141.)

Plaintiff also relied exclusively on Trapani, and purported conversations he had with Defendants Wells, Fortin, Chancy, and Panther "throughout 2007," to allege that these Defendants did not believe that the ALLL and Provision for year-end 2007, as reported in the 2007 10-K, were adequate.  For example, Plaintiff alleged that "[Trapani] had several discussions **throughout 2007** with defendants Fortin, Panther, Chancy and Wells about being substantially and materially under-reserved . . . ."  (FAC ¶ 143.)  Further, the FAC alleged that "[a]ccording to [Trapani] . . . SunTrust's ALLL as reported **in its year-end 2007 financial**

**statements** [was] understated by $1-$1.3 billion. … [Trapani] had several

discussions **throughout 2007** with defendants Fortin, Panther, Chancy and Wells

about being under-reserved by over a billion dollars."  (FAC ¶ 175.)

Recognizing Plaintiff's "heavy reliance" on allegations attributed to Trapani,

the Court, in its September 2011 Order, based its denial of Defendants' Motions to

Dismiss the FAC [ECF Nos. 112, 113, & 114] on its acceptance of Plaintiff's

allegations that Trapani had "personal knowledge" of the statements attributed to

him throughout 2007, including at year-end 2007.[4]  Specifically, among other

things, the Court noted that:

> The Amended Complaint represents directly and implicitly that
> Trapani performed his Group Vice President function **through
> calendar year 2007** and allegations in the Amended Complaint assert
> facts provided by Trapani regarding conduct at SunTrust **through the
> entirety of 2007**.  That is, the Complaint alleges that Trapani had
> personal knowledge of SunTrust's operations and financial affairs **to
> the end of 2007**. . . . **If Trapani does not have personal knowledge
> of events in the second half of 2007, the Court will consider later
> whether these allegations support a violation of the pleading
> standards under the Federal Rules of Civil Procedure**.

---

[4] Indeed, even with the allegations falsely attributed to Trapani, this Court held that
Plaintiff's "scant" allegations and the inferences drawn from them were "barely"
sufficient to state plausible claims under Sections 11 and 12.  (September 2011
Order [ECF No. 101] at 27-28.)  Without those allegations, the FAC would have
failed to state plausible claims.

(Sept. 7, 2011 Order at 8-9, n. 5 (emphasis added)).  The reality is that Trapani does not have personal knowledge of any events at SunTrust after August 2007, there was no basis for these allegations, and Plaintiff knew its allegations lacked evidentiary support before it filed the FAC.

**B.**   **The True Facts Regarding Trapani's Personal Knowledge and Statements to Plaintiff's Investigator.**

The last day that Trapani performed his job duties for SunTrust was August 28, 2007, and he does not have **any** knowledge of SunTrust's ALLL, Provision, or any other aspect of SunTrust's operations or financial condition after that date. (Trapani Dec. I at ¶¶ 3-5; Trapani Dec. II at ¶ 6.)  Trapani has no knowledge from any source regarding events at SunTrust at the end of 2007 or at the time of the Offering, and Plaintiff's allegations to the contrary are complete fabrications. (Trapani Dec. I at ¶ 3; Trapani Dec. II at ¶ 4.)  Plaintiff also mischaracterized other statements that Trapani purportedly made to Plaintiff's investigator, including allegations upon which the Court relied regarding the purported impact of SunTrust's alleged data integrity issues on the ALLL and Provision processes. (Trapani Dec. II at ¶ 5.)  Attached hereto as <u>Exhibit A</u> is a chart of Plaintiff's fabricated, exaggerated, and misleading allegations.  A few of the most glaring examples are set forth below.

### *Plaintiff's False Allegations Regarding Trapani's Year-End 2007 Knowledge.*

| Plaintiff's FAC Allegations | Trapani Declarations |
|---|---|
| "[Trapani] confirmed that SunTrust was under-reserved **throughout 2007**. … In fact, according to [Trapani], the RWG's recommendation for its ALLL **in December 2007** … was rejected by the ALLL Committee and ultimately lowered." FAC ¶ 139 (emphasis added)<br><br>"[Trapani] stated that SunTrust needed to be carrying an ALLL in the range of 1.75 to 2% (as a percentage of total loans) **at the end of 2007** to be adequately reserved for probable and identified losses." FAC ¶ 139 (emphasis added)<br><br>"[Trapani] confirmed that SunTrust was under-reserved at the probable SFAS No. 5 level and specified SFAS No. 114 level **in late 2007**, despite representations in the Company's 2007 10-K … " FAC ¶ 141(emphasis added)<br><br>"[Trapani] was employed by the Company from 2005 through 2007." FAC ¶ 115 | "**I never told plaintiff's investigator that SunTrust was inadequately reserved as of December 31, 2007.**" Dec. II at ¶ 6 (emphasis added)<br><br>"I had **no involvement in the ALLL process after August 28, 2007** and was not involved in any way in the analysis of SunTrust's loan portfolio or in setting the ALLL estimate for the fourth quarter and year-end of 2007." Dec. I at ¶ 5 (emphasis added)<br><br>"**I have no knowledge from any source** regarding SunTrust's ALLL, reserves, provision, or any other aspect of SunTrust's operations or financial affairs **as of December 31, 2007, or at any other time after August 28, 2007.**" Dec. II at ¶ 6 (emphasis added)<br><br>"**The last day I performed my job at SunTrust was August 28, 2007.**" Dec. I at ¶ 3 (emphasis added)<br><br>"Although my severance agreement provided that my employment with Sun Trust did not technically end until December 31, 2007, **I made clear to plaintiff's investigators that I was not at SunTrust and did not perform my job function after August 28, 2007.**" Dec. II at ¶ 4 (emphasis added) |

### *Plaintiff's False Allegations Regarding Trapani's Conversations with Defendants Fortin, Panther, Chancy, and Wells.*

| Plaintiff's FAC Allegations | Trapani Declarations |
|---|---|
| "**According to [Trapani]**, the Company's ALLL should have been at least 75 basis points higher than the amount reported **at the end of 2007**. This resulted in SunTrust's ALLL as reported in its **year-end 2007** financial statements being understated by $1-$1.3 billion….***Indeed, [Trapani] had several discussions throughout 2007 with defendants Fortin, Panther, Chancy and Wells about being under-reserved by over a billion dollars.***" FAC ¶ 175 (emphasis added; last emphasis in original) | "During the time that I worked at SunTrust, **I never had any discussions regarding the ALLL reserve or process with Ray Fortin and never told plaintiff's investigator that I did.** Although I met Jim Wells on a few occasions, I do not recall any specific discussions with him, and do not believe that I ever discussed the ALLL reserve or process with him. **I never told plaintiffs' investigator that I had discussions with Mr. Wells regarding the ALLL**…." Dec. 1 at ¶ 3 (emphasis added).<br><br>"**I never told plaintiff's investigator that I discussed the level of SunTrust's ALLL, reserves** |

| Plaintiff's FAC Allegations | Trapani Declarations |
|---|---|
| | or provision, or any other aspect of SunTrust's operations or financial affairs as December 31, 2007 with Jim Wells, Ray Fortin, Mark Chancy, or Tom Panther." Dec. II at ¶ 7 (emphasis added). |

*Plaintiff's False Allegations Regarding SunTrust's Alleged "Data Integrity Issues."*

| Plaintiff's FAC Allegations | Trapani Declarations |
|---|---|
| "As confirmed by [Trapani], the data integrity issues across the entire portfolio of assets 'clearly' negatively impacted SunTrust's ability to accurately forecast loan loss reserves and **contributed to the Company being under-reserved throughout fiscal 2007**." FAC ¶ 119 (emphasis added)<br><br>"The Company's data was also incomplete, and would omit several key variables **that were essential to [Trapani's] evaluation of loan loss reserves**." FAC ¶ 117 (emphasis added) | "I never told plaintiff's investigators that 'flawed data' made it impossible to accurately determine the appropriate reserves. **… I was comfortable that the source data was reliable and provided the essential information necessary to estimate the reserves**." Dec. II at ¶ 5 (emphasis added)<br><br>"And, **I have no knowledge from any source regarding the underlying data or data sources utilized in setting the ALLL, reserves or provision** (or in exercising any judgments or in analyzing in any other aspects of Sun Trust's operations or financial affairs) **as of December 31, 2007, or at any other time after August 28, 2007**." Dec. II at ¶ 5 (emphasis added)<br><br>"I never told plaintiff's investigator that SunTrust was inadequately reserved **as of December 31, 2007**." Dec. II at ¶ 6 (emphasis added) |

## C.   <u>Plaintiff's Counsel was on Notice that Trapani Did Not Have the Knowledge that They Attributed to Him.</u>

Even assuming for the sake of argument that Plaintiff's counsel were not aware when they filed the FAC that Trapani left SunTrust in August 2007, and that they did not intentionally mislead the Court by including in the FAC false allegations of Trapani's personal knowledge in the second half of 2007 and at year end 2007, they unquestionably have been on notice of the falsity of those

allegations for the past year.[5]  In October 2010, the SunTrust Defendants informed

Plaintiff and the Court that:

> Trapani was placed on administrative leave in late August 2007, and
> he never returned to work.  On October 29, 2007, Trapani executed
> his severance agreement, which formally terminated his employment
> with SunTrust (effective as of December 31, 2007).  Consequently,
> from late August 2007 forward, at least six months prior to the
> Offering at issue in this case, Trapani had absolutely no involvement
> in the ALLL process, and he has no knowledge of the activity in the
> portfolio, the underlying data utilized, or the processes and judgments
> exercised in establishing the ALLL for the fourth quarter and year-end
> of 2007, as reflected in SunTrust 2007 Form 10-K.[6]

Despite direct knowledge that Trapani was no longer at SunTrust after late August

of 2007, Plaintiff's counsel conducted no additional investigation and did not

follow-up with Trapani or SunTrust to determine whether the allegations in the

FAC had any evidentiary basis.  To the contrary, they continued to press these

same allegations, stated in increasingly strident terms, in filings with the Court in

response to the Defendants' Motions to Dismiss the FAC.  (*See* Pl.'s Consol.

---

[5] Since this Motion was served on Plaintiff's counsel, Plaintiff has admitted that it
has known since February 2, 2010 – eight months before it filed the FAC – that
Trapani was placed on administrative leave on August 28, 2007, and had no
personal knowledge regarding the ALLL or Provision after that date, including at
the end of 2007 or at the time of the Offering.[5]  Pl. Br. in Opp. to Mot. for Recon.
[ECF No. 135], at 8 n.5; Declaration of Desiree Monty Torres, dated October 17,
2011 [ECF 135-1], at ¶ 18.

[6] SunTrust Defendants' Memorandum in Opposition to Plaintiff's Motion to
Partially Lift the Discovery Stay [ECF No. 107] at 1 n.1; *see also* SunTrust
Memorandum in Support of Mot. to Dismiss FAC [ECF No. 112] at 5 n.6.

Opp'n to Mot. to Dismiss [ECF No. 117] at 2-3, 9-12, 23-24, 26-28, 31, 33.)  A

chart of these misrepresentations is attached hereto as <u>Exhibit B</u>, with

representative examples provided below:

| Plaintiff's Statement to the Court | Trapani Declarations |
|---|---|
| "**Trapani confirms** that defendants were aware SunTrust was under-reserved **throughout 2007 and at the time of the Offering**." Pl. Opp'n at 23 (emphasis added) | "**I never told plaintiff's investigator that SunTrust was inadequately reserved as of December 31, 2007**." Dec. II at ¶ 6 (emphasis added) |
| "**With Trapani's allegations now confirming** that defendants knew or should have known the … reserves [should have been] drastically increased **by the time of the Offering, the FAC has remedied the pleading deficiencies cited by the Court.**" Pl. Opp'n at 4-5 (emphasis added) | "I have **no knowledge from any source** regarding SunTrust's ALLL, reserves, provision, or any other aspect of SunTrust's operations or financial affairs **as of December 31, 2007, or at any other time after August 28, 2007**." Dec. II at ¶ 6 (emphasis added) |
| "**The FAC cures this pleading defect. … According to Trapani**, the Company's ALLL should have been at least 75 basis points (.75%) higher than the amount reported **at the end of 2007**. ¶¶ 138, 175." Pl. Opp'n at 32-33 (emphasis added) | "**I never told plaintiff's investigator** that I discussed the level of SunTrust's ALLL, reserves or provision, or any other aspect of SunTrust's operations or financial affairs **as December 31, 2007 with Jim Wells, Ray Fortin, Mark Chancy, or Tom Panther**." Dec. II at ¶ 7 (emphasis added) |
|  | "I have **no knowledge from any source** regarding what opinions or beliefs Wells, Fortin, Chancy, Panther, or any other SunTrust Defendant, held regarding the appropriate level of SunTrust's ALLL, reserves or provision, or any other aspect of SunTrust's operations or financial affairs **as of December 31, 2007, or at any other time after August 28, 2007**." Dec. II at ¶ 8 (emphasis added) |

## ARGUMENT

### A.    Standard for Rule 11 Sanctions.

Federal Rule of Civil Procedure 11 requires that an attorney presenting a

pleading or other paper to the Court certify to the best of his or her knowledge,

after a reasonable inquiry, that the factual contentions contained therein "have

evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). "The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010); *see also Thomas v. Evans*, 880 F.2d 1235, 1239 (11th Cir. 1989).

In the Eleventh Circuit, district courts have the discretion to award sanctions pursuant to Rule 11 in three circumstances: "(1) **when the party files a pleading that has no reasonable factual basis**; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003) (emphasis added). To determine whether Rule 11 has been violated, courts apply an objective inquiry as to "whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified." *Kaplan v. Daimler Chrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (citing *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002)); *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987). The court's inquiry focuses only on the merits of the objectionable paper "gleaned from

facts and law known or available to the attorney at the time of filing." *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694-95 (11th Cir. 1995).

The application of the "reasonableness under the circumstances" standard requires a two-step inquiry: (1) whether the party's claims are objectively frivolous and (2) if so, whether the person who signed the objectionable papers would have been aware of the claims' frivolity had he or she made a reasonable inquiry:

> In this circuit, a court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous – **in view of the facts** or law – and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry.  If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound.  The reasonableness of the inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the violative document; or whether he depended on forwarding counsel or another member of the bar.

*Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (emphasis added); *see also, e.g.*, *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

Once the court decides that a party, after having notice and an opportunity to respond, has violated Rule 11(b), the court "may impose an appropriate sanction" upon that party and/or its counsel either on its own initiative or pursuant to a

motion by the non-offending party after the passage of the 21-day safe harbor.

*McDonald v. Emory Healthcare Eye Ctr*., 291 Fed. Appx. 851, 852 (11th Cir.

2010) (citing *Attwood v. Singletary*, 105 F.3d 610, 613 (11th Cir. 1997)); Fed. R.

Civ. P. 11(c)(2)-(3).[7]

## B.     The FAC's Allegations Attributed to Trapani Are Objectively Frivolous.

The first prong of the Rule 11 violation inquiry requires the Court to

determine if the Plaintiff's claims are objectively frivolous.  An attorney files

objectively frivolous claims when his or her claims lack evidentiary support.  *Peer*

*v. Lewis*, 606 F.3d 1306, 1312 (11th Cir. 2010) (finding claim was objectively

frivolous because it lacked factual support); *In re Star Gas Secs. Litig*., 745 F.

Supp. 2d 26, 35-37 (D. Conn. 2010) (finding securities fraud claims brought by

---

[7] If the Court should grant the SunTrust Defendants' Motion for Reconsideration and dismiss the FAC, then the Private Securities Litigation Reform Act ("**PSLRA**") requires that the Court engage in a Rule 11 analysis of the FAC.  15 U.S.C. § 77z-1(c)(1); *see Thompson v. Relationserve Media, Inc*., 610 F.3d 628, 637 (11th Cir. 2010).  The PSLRA mandates the imposition of a Rule 11 sanction if the Court concludes upon final adjudication of the action that a party or attorney has violated Rule 11(b).  15 U.S.C. § 77z-1(c)(2); *see Thompson*, 610 F.3d at 636 ("If the court finds a party or attorney violated any requirement of Rule 11(b), the court 'shall' impose sanctions in accordance with Rule 11."); *ATSI Communications, Inc. v. The Shaar Fund, Ltd*, 579 F.3d 143 (2nd Cir. 2009) (affirming award of Rule 11 sanctions under PSLRA's mandatory inquiry).  If a complaint substantially fails to comply with Rule 11(b), the presumptive sanction under the PSLRA is the assessment of attorney's fees and expenses against the plaintiff.  15 U.S.C. § 77z-1(c)(3)(A)(ii); *Thompson*, 610 F.3d at 636.

Robbins Geller were frivolous when plaintiff's confidential witness statements did not support their allegations); *Manov v. Nezhat*, 1998 U.S. Dist. LEXIS 23300, at *26, *48 (N.D. Ga. Feb. 23, 1998) (finding state RICO and fraud claims objectively frivolous when there was no evidence to support them).

In *Star Gas*, the court held that Robbins Geller violated Rule 11 because they misapplied and exaggerated information purportedly provided by cooperating witnesses.  745 F. Supp. 2d at 35-37.  The consolidated amended complaint alleged that the defendant gas company violated federal securities laws by, among other things, misrepresenting customer attrition rates in its public filings.  *Id*. at 29. Plaintiff's counsel relied on cooperating witness statements regarding the company's net customer attrition rates.  *Id.*  Upon reviewing the claims asserted, the Court held that Plaintiff's counsel violated Rule 11 because there were simply no cooperating witness statements that supported the plaintiff's allegations and arguments.  *Id*. at 35-37.

Similarly, the FAC's allegations that directly state or imply that Trapani had any knowledge after August 2007 regarding the ALLL, Provision, any other aspect of SunTrust's operations or financial performance, or any of the SunTrust Defendants' opinions regarding any of these matters are objectively frivolous because they rely upon false allegations attributed to Trapani.  *See supra* at 6-10;

-14-

Exhibit A.  In sum, Trapani was not at SunTrust during this time period and made clear to Plaintiff's investigator that he did not work at SunTrust after August 2007. Consequently, the core allegations in the FAC – and, indeed, the only allegations that purport to allege any actual facts regarding the ALLL, Provision, and the SunTrust Defendants' opinions at the end of 2007 – are objectively baseless and frivolous.  No reasonable attorney under these circumstances could believe his actions were factually and legally justified.

## C.    Plaintiff's Counsel Were Aware of the Claims' Frivolity.

The second prong of the Rule 11 violation inquiry requires the Court to determine if Plaintiff's counsel should have been aware that their claims were frivolous, or whether they would have been aware had they made a reasonable inquiry.  *Worldwide Primates*, 87 F.3d at 1254.  Here, Plaintiff's counsel should have been aware of the frivolity of their claims because, during the course of their investigation, Trapani made clear to Plaintiff's investigators that he did not have personal knowledge of events during the latter half of 2007 and at the time of the offering.  Indeed:

- Trapani made it clear to Plaintiff's investigators that he did not work at SunTrust or perform any job function there after August 28, 2007 (Trapani Dec. I at ¶ 3; Trapani Dec. II at ¶ 4);

- Trapani never told Plaintiff's investigators that "flawed data" made it impossible for SunTrust to accurately establish appropriate loan loss reserves (Trapani Dec. II at ¶ 5);

- Trapani never told Plaintiff's investigators that SunTrust's loan loss reserves were inadequate as of December 31, 2007 (Trapani Dec. II at ¶ 6);

- Trapani never told Plaintiff's investigators that he discussed SunTrust's ALLL, reserves or Provision, or any other facet of SunTrust's operations or financial affairs as of December 31, 2007 with Defendants Wells, Fortin, Chancy, or Panther (Trapani Dec. I at ¶ 3; Trapani Dec. II at ¶ 7).

Even if Plaintiff's counsel, faced with these facts, possibly could have believed that the FAC's Trapani allegations had a reasonable basis in fact, a reasonable further investigation would have revealed that the allegations were baseless. Trapani specifically requested that he have an opportunity to review for accuracy, prior to their filing, any statements attributed to him, and Plaintiff's investigators assured him that he would be given such an opportunity. (Trapani Dec. II at ¶ 3.) But Trapani never was provided the opportunity to review the FAC or any of the Plaintiff's other filings regarding him (*id.*), and, as a result, the FAC and Plaintiff's briefs are replete with false and misleading allegations regarding statements purportedly made by Trapani and allegedly based on Trapani's personal knowledge.

Finally, in October 2010, the SunTrust Defendants expressly notified Plaintiff's counsel of the falsity of the Trapani allegations by informing them that

Trapani did not perform any work function at SunTrust after August 2007 and that he lacked personal knowledge after that date regarding any of the key allegations attributed to him.  (*See, e.g*., SunTrust Defendants' Mem. Opp'n to Pl.'s Mot. to Partially Lift the Discovery Stay [ECF No. 107] at 1 n.1; SunTrust Defs.' Mot. to Dismiss FAC [ECF No. 112] at 5 n.6); *see also Jones v. Int'l Riding Helmets, Ltd*., 145 F.R.D. 120, 123 (N.D. Ga. 1992) (imposing sanctions on plaintiff's counsel where they had been informed repeatedly by defense counsel that events purportedly giving rise to liability predated defendant's corporate existence). Nevertheless, Plaintiff's counsel persisted in their reliance on the false Trapani allegations in seeking to avoid dismissal of the FAC.  *See* Exhibit B.

At every step in the process, Plaintiff's counsel either knew that their Trapani allegations were false or had ready access to resources and information that quickly and unequivocally would have demonstrated that the allegations were false and frivolous.  But Plaintiff's counsel chose to ignore and misrepresent the facts that they had gathered, and turn a blind eye to the additional information available to them.

### D.     The Court Should Sanction Plaintiff's Counsel for Violating Rule 11.

Plaintiff's counsel find themselves in the familiar position of having to answer to a court for fabricated and exaggerated confidential witness allegations

asserted in support of securities fraud claims.  In *Star Gas*, Robbins Geller was

sanctioned for violating Rule 11 by misusing or exaggerating the statements made

to them by cooperating witnesses.  745 F. Supp. 2d at 35-37.

Likewise, in *City of Livonia Employees Retirement System v. Boeing Co*.,

Robbins Geller filed a second amended complaint that added details about only

one confidential witness and the basis for his knowledge, and the court found that

the addition of these allegations permitted the amended complaint to survive a

motion to dismiss.  2011 U.S. Dist. LEXIS 22347, at *5, *10 (N.D. Ill., Mar. 7,

2011).  The confidential source later provided a declaration to defendants' counsel

in which he stated that he did not have personal knowledge of the facts that the

amended complaint attributed to him.  *Id*. at *10.  The court dismissed the

amended complaint and stated that "[m]aterial facts concerning the confidential

source's position and personal knowledge were misrepresented by plaintiffs."  *Id*.

at *12-14.

And *Boeing* and *Star Gas* are not the only times that Plaintiff's counsel,

Robbins Geller, has made unreliable confidential witness allegations in a complaint

submitted to a federal court.  In *Campo v. Sears Holding Corp.,* 635 F. Supp. 2d

323, 335 (S.D.N.Y. 2009), the predecessor to the Robbins Geller firm, Coughlin

Stoia Geller Rudman & Robbins LLP, who filed the original complaint in this case,

engaged in the same sort of conduct.  In *Campo*, the court relied on information

provided by confidential witnesses when it denied the defendants' motions to

dismiss.  After the confidential witnesses were deposed, and upon reconsideration,

the court dismissed the claims, noting that "plaintiffs rely in large part on the

supposed personal knowledge of three confidential witnesses.  These individuals

do not, however, support plaintiffs' allegation."  *Id.* at 335-36; *see Campo v. Sears*

*Holding Corp.*, 371 Fed. Appx. 212, 216 (2d Cir. 2010) (affirming dismissal and

citing Rule 11's requirements when concluding that the district court properly used

confidential witness deposition testimony to test plaintiff's claims).

      Thus, the Court should impose Rule 11 sanctions on Plaintiff's counsel that

will be sufficient to deter their recurrent misuse of confidential witness allegations

in pleadings.  *See* Fed. R. Civ. P. 11(c)(4) (indicating that sanctions should be

sufficient to deter repetition of the misconduct).  Indeed, where, as here, Plaintiff's

counsel failed to conduct a reasonable investigation of the allegations at issue, the

imposition of sanctions is mandatory.  *See McGuire Oil Co. v. Mapco, Inc.*, 958

F.2d 1552, 1563 (11th Cir. 1992) ("If an attorney did not make a 'reasonable

inquiry,' then the court must impose sanctions despite the attorney's good faith

belief that the claims were sound.") (quoting *Pelletier v. Zweifel*, 921 F.2d 1465,

1514 n.88 (11th Cir. 1991)); *Jones*, 145 F.R.D. at 124 ("Plaintiffs' counsel failed to

-19-

conduct . . . a reasonable inquiry, rendering Rule 11 sanctions not only appropriate, but mandatory.").

The SunTrust Defendants submit that appropriate sanctions in these circumstances include (a) striking the portions of the FAC that are falsely attributed to Trapani;[8] (b) dismising the FAC with prejudice;[9] and (c) ordering Plaintiff and Plaintiff's counsel to pay the SunTrust Defendants' legal fees and expenses incurred since the October 8, 2010 filing of the FAC.[10]

## CONCLUSION

For the foregoing reasons, the SunTrust Defendants respectfully request that the Court grant the SunTrust Defendants' Motion for Rule 11 Sanctions Against Plaintiff and Plaintiff's Counsel and impose the sanctions requested by the motion and other sanctions that the Court deems appropriate.

---

[8] *In re Mid-Atlantic Toyota Antitrust Litig.*, 525 F. Supp. 1265, 1282 (D. Md. 1981) (striking portions of FAC that were untrue).

[9] *Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998) (finding district court did not abuse its discretion by dismissing a case when plaintiff had lied), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *Zocaras v. Castro*, 465 F.3d 479, 484 (11th Cir. 2006) (noting Rule 41(b) provides for involuntary dismissal of a case with prejudice for violating the Rules of Civil Procedure).

[10] Fed. R. Civ. P. 11(c)(4) (Rule 11 sanctions may include, "if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the [Rule 11] violation").

Respectfully submitted, this 3rd day of November, 2011.

/s/ Thomas B. Bosch
J. TIMOTHY MAST
Georgia Bar No. 476199
Email: tim.mast@troutmansanders.com
THOMAS B. BOSCH
Georgia Bar No. 068740
Email: tom.bosch@troutmansanders.com

TROUTMAN SANDERS LLP
600 Peachtree Street, Suite 5200
Atlanta, GA 30308
Tel: (404) 885-3591
Facsimile: (404) 962-2727

*Attorneys for the SunTrust Defendants*

## <u>CERTIFICATE OF COMPLIANCE OF LOCAL RULE 7.1D</u>

I hereby certify that the foregoing brief has been prepared in a Times New Roman 14 point font, one of the font and point selections approved by the Court in Local Rule 5.1B.

*/s/ Thomas B. Bosch*
T HOMAS B. BOSCH
Georgia Bar No. 068740

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing **Memorandum in Support of SunTrust Defendants' Motion for Rule 11 Sanctions Against Plaintiff and Plaintiff's Counsel** was electronically filed with the Clerk of Court using the CM/ECF system, which serves notification of such filing to all CM/ECF participants.

This 3rd day of November, 2011.

*/s/ Thomas B. Bosch*
THOMAS B. BOSCH
Georgia Bar No. 068740