UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| BELMONT HOLDINGS CORP., et al., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SUNTRUST BANKS, INC., et al.,<br><br>Defendants. | Civil Action No. 1:09-cv-01185-WSD (**Consolidated**)<br><br><u>CLASS ACTION</u><br><br>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS FOR RULE 11 SANCTIONS AGAINST PLAINTIFFS AND PLAINTIFFS' COUNSEL |

666279_1

# TABLE OF CONTENTS

**Page**

I.   Introduction ........................................................................................1

II.   Argument ............................................................................................6

  A.   The Allegations in the FAC Are Not Objectively Frivolous ...............6

    1.   All of the Allegations Attributed to Trapani in the FAC
         Are the Result of Statements Made by Trapani to
         Plaintiffs' Investigators ...............................................................7

    2.   Plaintiffs Had – and Continue to Have – a Good Faith
         Basis for All of the Allegations Concerning Events After
         August 28, 2007 ...........................................................................9

  B.   The Trapani Declarations Submitted by Defense Counsel
       Cannot Form the Basis for Rule 11 Sanctions ...................................16

    1.   The Trapani Declarations Were Obtained Improperly and
         Are Unreliable...........................................................................16

    2.   Trapani's Declarations Do Not Warrant Rule 11
         Sanctions ...................................................................................20

  C.   Plaintiffs Should Be Awarded Their Reasonable Expenses and
       Attorney's Fees for Responding to Defendants' Meritless
       Motions for Rule 11 Sanctions.........................................................25

III.   Conclusion ........................................................................................25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Banner v. City of Flint*,
    136 F. Supp. 2d 678 (E.D. Mich. 2000), *aff'd in relevant part*,
    99 Fed. Appx. 29 (6th Cir. 2004)........................................................................18

*Campo v. Sears Holdings Corp.*,
    371 Fed. Appx. 212 (2d Cir. 2010).........................................................22, 23, 24

*Harding v. Univ. Consulting Servs. Group, L.P.*,
    48 F. Supp. 2d 765 (N.D. Ill. 1999) ...................................................................22

*In re Davis*,
    565 F.3d 810 (11th Cir. 2009) ............................................................................20

*In re Dynex Capital, Sec. Litig.*,
    No. 05 Civ. 1897 (HB) (DF), 2011 U.S. Dist. LEXIS 67894
    (S.D.N.Y. Apr. 29, 2011), *upheld by*, No. 05 Civ. 1897 (HB),
    2011 U.S. Dist. LEXIS 67756 (S.D.N.Y. June 20, 2011).....................................22

*In re JDS Uniphase Corp. Sec. Litig.*,
    No. C 02-1486 CW, 2008 WL 753758
    (N.D. Cal. Mar. 19, 2008) ..................................................................................22

*In re Star Gas Sec. Litig.*,
    745 F. Supp. 2d 26 (D. Conn. 2010)................................................................5, 15

*In re Star Gas Sec. Litig.*,
    No. 3:04cv1766 (JBA), 2005 U.S. Dist. LEXIS 5827
    (D. Conn. Apr. 8, 2005) .......................................................................................5

*Kalina v. Fletcher*,
    522 U.S. 118 (1997)...........................................................................................15

*Lee v. Mid-State Land & Timber Co., Inc.*,
    285 Fed. Appx. 601 (11th Cir. 2008).....................................................................6

*Manov v. Nezhat*,
    No. 1:96-cv-96-GET, 1998 U.S. Dist. LEXIS 23300
    (N.D. Ga. Feb. 23, 1998) ...................................................................................14

**Page**

*Morse v. State*,
　277 Ga. App. 67 (2005) ..................................................................................18

*Peer v. Lewis*,
　606 F.3d 1306 (11th Cir. 2010) ......................................................................14

*Ret. Sys. v. The Boeing Co.*,
　No. 09 C 7143, 2011 U.S. Dist. LEXIS 22347
　(N.D. Ill. Mar. 7, 2011).............................................................................22, 23

*Russell v. Smith*,
　68 F.3d 33 (2d Cir. 1995)................................................................................20

*SunTrust Mortg., Inc. v. AIG United Guar. Corp.*,
　No. 3:09cv529, 2011 U.S. Dist. LEXIS 33118
　(E.D. Va. Mar. 29, 2011) ................................................................................19

*The Wu Group v. Synopsys, Inc.*,
　No. C 04-3580 MJJ, 2005 WL 1926626
　(N.D. Cal. Aug. 10, 2005)...............................................................................21

*United States v. Hemmer*,
　729 F.2d 10 (1st Cir. 1984).............................................................................20

*United States v. Holladay*,
　566 F.2d 1018 (5th Cir. 1978) ........................................................................20

*United States v. Nobles*,
　422 U.S. 225 (1975).........................................................................................21

*United States v. Santiago*,
　837 F.2d 1545 (11th Cir. 1988) ......................................................................20

*United States v. Smallwood*,
　365 F. Supp. 2d 689 (E.D. Va. 2005) .............................................................18

*Upjohn Co. v. Aetna Cas. and Sur. Co.*,
　768 F. Supp. 1186 (W.D. Mich. 1990) ...........................................................19

*Page*

*Worldwide Primates, Inc. v. McGreal,*
    87 F.3d 1252 (11th Cir. 1996) .................................................................15

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 11 ............................................................................................. *passim*
    Rule11(b)(3).........................................................................................2
    Rule 11(c)(2).......................................................................................25

Georgia Rules of Professional Conduct
    Rule 4.2 ...............................................................................................18
    Rule 4.2(a)......................................................................................18, 19

666279_1

## I.    Introduction

SunTrust Defendants' Motion for Rule 11 Sanctions Against Plaintiffs and Plaintiffs' Counsel (the "Motion" or "Defs.' Mot.") (Dkt. No. 139) is baseless and should be denied.[1]   In a brief strikingly similar to their pending Motion for Reconsideration, defendants and their counsel make serious allegations of misconduct against plaintiffs and their counsel, accusing them of "fabricating" the allegations in the First Amended Complaint ("FAC") (Dkt. No. 78), and rhetorically claiming that the entire FAC is "objectively frivolous" based upon the single fact that one of the witnesses relied upon in the FAC, Scott A. Trapani, was placed on administrative leave at SunTrust as of the end of August 2007 – a fact known and considered by the Court at the time it denied defendants' motion to dismiss.  As demonstrated herein, defendants' contentions are without merit.

The specific allegations at issue in the FAC concern Trapani's ability to state (and counsel's ability to rely on those statements) what happened at the Company between August and December, 2007.  Relying heavily on a footnote from the Court's

---

[1]    The Underwriter defendants have joined the Motion (Dkt. No. 144), but do not offer any additional arguments.  Plaintiffs also hereby oppose Defendant Ernst & Young LLP's Motion for PSLRA and Rule 11 Sanctions Against Plaintiffs and Plaintiffs' Counsel ("E&Y Motion") (Dkt. No. 140-1)which "incorporates and adopts by reference the facts and arguments from that Motion."  E&Y Motion at 3.

September 7, 2011 Order on Motion to Dismiss (Dkt. No. 124), defendants contend that, because plaintiffs knew Trapani was no longer physically present at the Company after August, they necessarily knew he had no "personal knowledge" of events that transpired at the Company after that date. As a result, according to defendants, plaintiffs should not have attributed any factual allegations to Trapani after August – regardless of whether he actually told plaintiffs those facts, and regardless of whether plaintiffs corroborated those facts from other sources.

Defendants are wrong. Rule 11 requires "factual contentions" to "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). As plaintiffs previously pointed out in response to defendants' Reconsideration Motions, plaintiffs not only had substantial "evidentiary support" for their contentions, but in one important instance, counsel for SunTrust has admitted the truth of the allegation. *See generally* Declaration of Desiree Monty Torres in Support of Plaintiffs' Opposition to SunTrust Defendants' Motion for Reconsideration ("Torres Decl."), Dkt. No. 135-1. Defendants' Rule 11 motion completely ignores this evidence, never once addressing it.

Instead, defendants continue to rely exclusively on the two declarations obtained by SunTrust's outside counsel, apparently in violation of applicable ethical

- 2 -

rules – the Declaration of Scott A. Trapani, CFA dated September 20, 2011 ("Trapani I") (Dkt. No. 127-1) and September 26, 2011 ("Trapani II") (Dkt. No. 127-2).  While it is true that the declarations appear to contradict in certain important respects what he told plaintiffs and their investigator, none of this changes the fact that Trapani did, in fact, tell those things to plaintiffs and their investigator.

Based on an extremely thorough investigation by plaintiffs – an investigation which defendants do not even address, let alone attempt to impeach – plaintiffs had a reasonable and good faith basis for all of the allegations in the FAC.  *See, e.g.*, Torres Decl., ¶10 ("I contacted or interviewed more than 40 former SunTrust employees.").

As set forth in Plaintiffs' Opposition to SunTrust Defendants' Motion for Reconsideration ("Recon. Oppo.") (Dkt. No. 135) and the Torres Decl., Trapani provided detailed, reliable information concerning the Company's data integrity issues and understated allowance for loan and lease losses ("ALLL") and Provision during the relevant time period.  *See, e.g.*, Recon. Oppo. at 6-7, 9-11.  Only some of this information comes from Trapani, and much of that was specifically corroborated by other witnesses.  *Id*.  Indeed, Trapani's statement that the Reserve Working Group ("RWG") ALLL recommendation in December 2007 was rejected by the Company's ALLL Committee and ultimately lowered, was confirmed by SunTrust's former VP of Credit Risk Management, (Torres Decl., ¶76; FAC, ¶139), and now has been

- 3 -

confirmed by SunTrust's own outside counsel, who told Trapani the ALLL Committee rejected the reserves proposed by the RWG for the fourth quarter of fiscal year 2007, claiming it demonstrated the committee's "independence." Torres Decl., ¶71. *See also* the November 16, 2011 Declaration by Scott A. Trapani, CFA ("Trapani III"), filed concurrently herewith, ¶¶15, 21.

Documents and admissions by defendants, none of which are contested by defendants, further corroborate the FAC's allegations. The Company in its 2008 10-K admitted that its large and belated charge-offs were a result of conditions dating back to 2007. FAC, ¶¶20, 82. A June 2008 Federal Reserve Performance Report further documents SunTrust's vast understatement of its ALLL in relation to its peers, as of December 2007. *Id.*, ¶¶168-169.

Indeed, if there has been any impeachable evidence offered in this case, it has been proferred by the SunTrust defendants – and knowingly relied upon by all defendants. In response to the Mast Declaration (Dkt. No. 141-1) filed with the SunTrust Defendants' Reply to Their Motion for Reconsideration, plaintiffs again contacted the attorney for Mr. Trapani. Mr. Trapani has now provided a declaration detailing his discussions with Mr. Mast. As the Trapani III declaration makes clear, it is defendants who have run roughshod over applicable ethical rules, tainting their

evidence and calling into question their own conduct. Trapani III, ¶¶7-8 and Ex. A. This by itself should be dispositive of defendants' motions.

Like the factual basis for their motion, defendants' legal analysis and rhetoric appears to be unmoored from any acceptable standard. In their lust to attack counsel for misconduct in this litigation, they repeatedly and falsely claim (***no less than eight separate times***) that the court in *In re Star Gas Sec. Litig.*, 745 F. Supp. 2d 26 (D. Conn. 2010) imposed Rule 11 sanctions on plaintiffs' counsel firm here, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"). Defs.' Mot. at 2, 13, 14, and 18.[2] ***This accusation is totally false***. Neither Robbins Geller nor any of its predecessor firms ever served as lead-counsel in the *Star Gas* action, let alone were subject to sanctions – something defendants could have easily ascertained. *See In re Star Gas Sec. Litig.*, No. 3:04cv1766 (JBA), 2005 U.S. Dist. LEXIS 5827 (D. Conn. Apr. 8, 2005) (appointing Goodkind Labaton Rudoff & Sucharow LLP and Schiffrin & Barroway, LLP as co-lead counsel).

At bottom, defendants' claim that the allegations in the FAC are "objectively frivolous" is specious. Plaintiffs and their attorneys plead factual allegations that have

---

[2]     *See also* SunTrust Defendants' Reply in Support of Motion for Reconsideration ("Reconsideration Reply") (Dkt. No. 141) at 6; E&Y Motion at 1, 7, 9.

extensive evidentiary support, were well grounded in the law, and satisfy Fed. R. Civ. P. 11.  Defendants' motion should be denied.

## II.    Argument

The Eleventh Circuit uses a two step inquiry to determine whether sanctions are appropriate: (1) whether the claims are objectively frivolous, and (2) whether the person who signed the pleadings should have known that the claims were frivolous. *Lee v. Mid-State Land & Timber Co., Inc.*, 285 Fed. Appx. 601, 608 (11th Cir. 2008). Neither of these elements are present here.

### A.    The Allegations in the FAC Are Not Objectively Frivolous

Defendants' Motion is based exclusively on the false assertion that, because Trapani was placed on administrative leave on August 28, 2007, "he does not have ***any*** knowledge of SunTrust's ALLL, Provision, or any other aspect of SunTrust's operations or financial condition after that date" and "all of the post-August allegations attributed to Trapani in the FAC are complete fabrications." Defs.' Mot. at 2, 6 (emphasis in original).[3]  These grave accusations are factually and legally baseless.

---

[3]     Here, as elsewhere, emphasis has been added, or citations omitted, unless otherwise noted.

### 1. All of the Allegations Attributed to Trapani in the FAC Are the Result of Statements Made by Trapani to Plaintiffs' Investigators

All of the allegations in the FAC are supported by the facts unearthed during an extensive investigation by plaintiffs' investigators and counsel, which included numerous interviews with confidential witnesses, including Trapani. Plaintiffs have submitted two declarations by their investigators with this Court, summarizing their discussions with Trapani and setting forth the basis for the allegations in the FAC. *See generally* Plaintiffs' Recon. Oppo. at 6-7, 9-11; Declaration of Wolfram Worms in Support of Lead Plaintiffs' Motion to Partially Lift the Discovery Stay ("Worms Decl.") (Dkt. No. 103-2) and Torres Decl. These submissions demonstrate plaintiffs have a good-faith basis for alleging that SunTrust understated its ALLL and Provision during the relevant period, and defendants were or should have been aware of it.

For instance, Trapani told plaintiffs that he had discussions with individual defendants regarding "the burgeoning losses in the warehouse HELOC book," (Torres Decl., ¶49), that the losses were a significant problem for the Company in 2007, and "'[e]veryone was aware'" of it. *Id.*, ¶51. SunTrust had reserved for losses in that book based on historical levels, and by early 2007 the probable and actual losses were "way above historical levels." *Id.* Trapani also stated the issue of the Company being underfunded for reserves was a "topic of discussion" for the last year of Trapani's

employment, including in discussions with Freeman, Fadil, Panther, Chancy, and Wells. *Id*., ¶58.

Trapani also told plaintiffs that, based upon this knowledge of the Company and his conversations with individuals employed by SunTrust throughout 2007, in December 2007 the RWG recommendation for the ALLL was rejected and reduced by the ALLL committee, and as a result the Company was underserved at the end of 2007. Torres Decl., ¶44 (Trapani spoke with a business analyst in the Risk Management group, who was still at the Company.); *id*., ¶54 (Trapani estimated that the ALLL for year-end 2007 was understated by more than 75 basis points.); *id*, ¶¶80-84 (Trapani's friend at SunTrust spoke with Trapani almost daily after Trapani was placed on administrative leave.); *id*, ¶74 (Trapani represented multiple times that the EDW data was unreliable, there was a lack of available and reliable data which spanned the entire Company, and data integrity issues negatively impacted the ability to accurately forecast reserves and contributed to the Company being under-reserved.).[4]

---

[4]     Although it is implicit in certain allegations, plaintiffs did not allege Trapani had "personal knowledge" of all of the facts attributed to him. September 7, 2011 Order at 9. Certain allegations are based on conversations he had with people who were still at the Company after he left. *See, e.g.*, FAC, ¶139 ("the RWG's

Trapani's statements to plaintiffs support each of the allegations attributed to him in the FAC.  *See, e.g.*, FAC, ¶¶103-112, 139 ("the RWG's recommendation for its ALLL in December 2007 . . . was rejected by the ALLL Committee and ultimately lowered"); *id*., ¶139 ("SunTrust needed to be carrying an ALLL in the range of 1.75 to 2% (as a percentage of total loans) at the end of 2007 to be adequately reserved for probable and identified losses."); *id*, ¶¶121-123, 179 (explaining the data problems with the HELOC book and how it affected SunTrust's reported reserves).

> **2.    Plaintiffs Had – and Continue to Have – a Good Faith Basis for All of the Allegations Concerning Events After August 28, 2007**

The detailed information Trapani provided to plaintiffs about SunTrust was well within his experience and expertise.  Even though Trapani was not physically at SunTrust after August 2007, he confirmed that SunTrust could not (and did not) remedy the issues it faced prior to his departure from the Company or adequately increase its reserve before the year-end.  *Id*., ¶114 (alleging in August 2007, the

recommendation for its ALLL in December 2007 . . . was rejected by the ALLL Committee and ultimately lowered").  Torres Decl., ¶¶44, 76.  Certain other allegations are Trapani's opinion about the Company based on his knowledge of the Company as well as conversations.  *See, e.g*., FAC, ¶139 ("SunTrust needed to be carrying an ALLL in the range of 1.75 to 2% (as a percentage of total loans) at the end of 2007 to be adequately reserved for probable and identified losses.").  Torres Decl., ¶154; *see also* September 7, 2011 Order at 22.

666279_1

Company laid off many of the employees charged with remedying the problems with the Company's informational systems and data integrity); *id*., ¶¶20, 80-82, 168, 170, 178 (recognizing that the macro-economic trends Trapani observed that resulted in SunTrust understating reserves became worse in 3Q and 4Q 2007); Torres Decl., ¶¶54, 75-79 (Trapani's opinion that SunTrust's ALLL should have been at least 75 basis points higher at year-end 2007 was based on what he observed through 3Q 2007, and his knowledge that there would have had to have been a significant and rapid trend reversal or an obvious and significant increase for the reserves to be adequate, neither of which occurred).

In addition, numerous other witnesses that participated in plaintiffs' investigation corroborated Trapani's statements and provided additional detail concerning many of the allegations in the FAC. Some witnesses provided information concerning the Company-wide data integrity and process issues. These witnesses include: SunTrust's former VP of Credit Risk Management, SunTrust's former Senior VP of Enterprise Delivery Systems, and SunTrust's former First VP of Credit Risk Management. *See, e.g*., FAC, ¶¶103-112. Other witnesses corroborated Trapani's statements concerning the ALLL and reserve-setting process. These witnesses include: SunTrust's former VP of Credit Risk Management. Torres Decl., ¶76; FAC, ¶139; and (after the FAC was filed) a former Business Analyst in the Risk

- 10 -

Management group.  Torres Decl., ¶44.  Notably, SunTrust's former VP of Credit Risk Management confirmed Trapani's statement that the RWG's ALLL recommendation in December 2007 was rejected by the Company's ALLL Committee and ultimately lowered.  *Id*., ¶139.[5]  Defendants do not question the accuracy of any of these allegations, nor do they question the credibility of any of these witnesses.

In fact, defendants do not dispute ***any*** of the allegations based upon statements attributed to Trapani and others, up through the end of August, 2007.  Thus, two months into 3Q 2007, defendants ***knew*** the state of affairs at SunTrust was:

- SunTrust could not accurately determine the appropriate level of reserves due to a failure of company-wide systems, "data integrity" issues throughout the processes, and quantitative models that failed to capture a "total trend reversal" that began in late 2006 and continued through 2007.  As a result, SunTrust was substantially under-reserved.  Torres Decl., ¶¶48, 74-75.

- Trapani repeatedly attended meetings and participated in conversations where these issues were discussed in detail.  While not specific to when all of these meetings and conversations took place, at different times they included all of SunTrust's top executives, including the CEO.  Trapani

---

[5]  SunTrust's counsel admitted to Trapani that the RWG's ALLL recommendation was rejected by the ALLL Committee in December 2007.  According to Trapani, Mr. Mast of the Troutman Sanders LLP firm acknowledged that the ALLL Committee rejected the reserves proposed by the RWG for 4Q 2007, and opined that it demonstrated the committee's "independence."  Torres Decl., ¶71; Trapani Decl. III., ¶¶15, 21.

made clear these were significant issues within SunTrust during this time, and "everyone knew" about them. *Id*., ¶¶49, 58-59.

- Trapani described specific quarterly meetings in which these issues were discussed, including who attended those meetings. He personally participated in the RWG and ALLL Committee meetings during Q1 and Q2. He was aware of much of the information that would go into the Q3 meetings, including the current state of reserves and business and market trends. *Id*., ¶¶40-43, 50, 53-54.

Moreover, Trapani described in detail those negative trends, and offered significant detail demonstrating that defendants were aware of those trends as of the time he was placed on administrative leave. *See, e.g., id*., ¶21 (Loan Loss Reserve Committee meetings reviewed a report that "included current reserve data, as well as trend analyses."); *id*., ¶23 ("by the time he departed from SunTrust . . . the losses in the mortgage portfolio resembled a 'hockey stick' and had begun a significant upward trend"); *id*., ¶¶47-51 (discussing the early 2007 trend reversal in the HELOC book and defendants' knowledge thereof); *id*., ¶58 ("The issue of the Company being underfunded for reserves was a 'topic of discussion' for the last year of Trapani's employment, including discussions with Freeman, Fadil, Panther, Chancy and Wells. 'Freeman knew, Chancy knew, Tom Panther knew, and Fadil knew because the models were a fraud as a result of the data issues.'"). This too is undisputed.

Thus, the undisputed evidence is that the Company was substantially under-reserved as of September 2007, the trend was getting worse, ***and all of the defendants***

***knew or should have known it***.   Moreover, plaintiffs' investigator confirms that Trapani told plaintiffs that after he was placed on leave, he continued to talk to at least one person at the company who had knowledge of these issues.   Torres Decl., ¶75 ("Trapani represented that he learned of certain decisions made by the ALLL committee regarding lowering the reserves recommended by the Reserve Working Group in December 2007 from an individual who still worked at SunTrust as a Business Analyst."); *see also id*., ¶77 (Trapani continued to talk with a personal friend who was still at the Company).[6]   This information concerning the December 2007 ALLL Committee meeting was corroborated by another witness, who was present at the meeting.   *Id*., ¶76.   This witness also confirmed that the trends Trapani observed before the end of August 2007 were still affecting the Company in December.   *Id*. (the number of non-accrual assets went "through the roof," principally the "scratch and dent" loans and HELOCs).

---

[6]    Plaintiffs were unable to talk to this witness prior to filing the FAC because he was still employed at the Company at that time.   Since then, plaintiffs have spoken with him and he confirmed that he continued to talk to Trapani "frequently" after Trapani was placed on administrative leave.   This witness also confirmed Trapani's statement concerning the December 2007 ALLL Committee meeting, among other things.   *See* Torres Decl., ¶¶77-82.   He may also have been intimidated by SunTrust. *Id*., ¶82.

Last, plaintiffs' investigator confirms that Trapani did, in fact, estimate for plaintiffs SunTrust's overstatement of reserves as of year end 2007.  Torres Decl., ¶¶54, 72(c) ("SunTrust was under-reserved at the reserve to total loans ratio by at least 75 basis points.  SunTrust needed to be carrying reserves in the range of 1.75 to 2 percent at the end of 2007 to be adequately reserved for probable and identified losses.").

These facts demonstrate that plaintiffs had a good-faith basis for each of the allegations in the FAC, and do not come close to meeting the standard of "objective falsity" needed to impose sanctions under Rule 11.

Nor do the cases relied upon by defendants suggest otherwise.  In *Peer v. Lewis*, 606 F.3d 1306, 1312 (11th Cir. 2010), the court found that Rule 11 sanctions were appropriate only where there were "no facts" to support the claim, "nor was there any chance that discovery would uncover evidentiary support" because the plaintiff already had the evidence that the claim was baseless.  *Id*.  Here, plaintiffs not only have a factual basis for their allegations, but discovery will surely uncover additional support.  *See also Manov v. Nezhat*, No. 1:96-cv-96-GET, 1998 U.S. Dist. LEXIS 23300, at *36-*38 (N.D. Ga. Feb. 23, 1998) (finding claims frivolous only where plaintiff "did not talk to a single person – and apparently did not even have any second hand knowledge" to support allegations, in contrast to plaintiffs here, who interviewed

- 14 -

more than 40 witnesses and had supporting evidence for all of the allegations in the FAC); *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (finding claims frivolous where plaintiff "never conducted any independent inquiry into whether Worldwide had been damaged," did not "obtain or examine any data to support" his client's claim, and "had no idea how he intended to prove the elements of his claim").

Even in *Star Gas*, 745 F. Supp. 2d 26, which defendants falsely and recklessly cite as having imposed sanctions on Robbins Geller, does not support their argument. In *Star Gas*, the court held that "[h]ad a reasonable inquiry been undertaken that produced statements from CWs that provided a basis for Plaintiffs' allegations, they would not be frivolous, . . ." and that where the claims "did not totally lack evidentiary basis," Rule 11 was inapplicable.  *Id*. at 37-38.   Here, as demonstrated above, plaintiffs have more than demonstrated that their investigation constituted at the very least a "reasonable inquiry."  *Id.*[7]

---

[7]    That those who interview witnesses may ultimately have to testify about what was said if a witness does recant, moreover, provides a powerful reason for counsel to avoid personally making contact with informants and witnesses.  "Indeed, tradition, as well as the ethics of our profession, generally instruct counsel to avoid the risks associated with participating as both advocate and witness in the same proceeding." *Kalina v. Fletcher*, 522 U.S. 118, 130 (1997).

### B.     The Trapani Declarations Submitted by Defense Counsel Cannot Form the Basis for Rule 11 Sanctions

Ignoring the Torres declaration, defendants rely solely upon the two Trapani declarations solicited and drafted by defense counsel as the basis for their contention that the allegations attributed to Trapani in the FAC are "complete fabrications." Defs.' Mot. at 6-10. Not only are the Trapani declarations squarely contradicted in all material respects by the Torres declaration, they are also misleading, appear to have been obtained improperly, and are unreliable.[8]   As such, the Court should not rely upon them as the basis for sanctions under Rule 11.

### 1.     The Trapani Declarations Were Obtained Improperly and Are Unreliable

The Trapani declarations are inherently unreliable because they were obtained in an improper manner.  Specifically, despite being put on notice through the filings with the Court that Trapani was represented by counsel in this matter, SunTrust's outside counsel, improperly contacted Trapani directly to elicit testimony.[9]

---

[8]     *See, e.g.*, Torres Decl., ¶¶72-75 (responding to specific denials in the Trapani declarations).

[9]     *See* Worms Decl., ¶14 ("After this Court's decision on Defendants' Motion to Dismiss, I sent ***Trapani's counsel*** a copy of the Opinion and Order and requested another conversation with Trapani.  A supplemental interview with Trapani ***and his counsel*** occurred on September 24, 2010.").  The declaration submitted by Mr. Mast,

According to Trapani, in that initial contact by Mr. Mast, Trapani indicated he was unsure whether he was still represented by Thomas D. Mauriello.  Trapani Decl. III, ¶7.  Mr. Mast did not stop his questioning, but instead conveyed to Trapani that he likely was ***not*** represented in this matter – for if Trapani were in fact represented, he would know it.  *Id*.  The clear implication to Trapani from what Mr. Mast was saying was that, "because I did not know whether I was in fact represented at that time, I therefore was not represented." *Id*., ¶8.  Moreover, "[a]t no time did Mr. Mast suggest that [Trapani] should try to contact Mr. Mauriello to determine whether [he] was still represented or to otherwise consult with Mr. Mauriello." *Id*.  So, Trapani discussed this matter without his own counsel present, or even being aware that the conversations were taking place.[10]

purportedly justifying his conduct, does not explain how or why he contacted Mr. Trapani in the first place – when the last information he had on the issue demonstrated that Mr. Trapani was, in fact, represented.

[10]    After Mr. Mauriello learned of Mr. Mast's contacts with his client, he sent a letter to Mr. Mast objecting to his contacts with Trapani.  Trapani Decl. III, ¶11.  That October 19, 2011 letter – which accurately summarizes Mr. Mast's improper initial contacts with Trapani – is attached as Exhibit A to Trapani's November 16, 2011 declaration.

SunTrust's counsel was prohibited from contacting Trapani, whom he knew to be represented in this matter.[11]   Despite this knowledge, he not only contacted Trapani, he used his superior knowledge as an attorney to convince Trapani to speak with him without his lawyer.  *See* Trapani Decl. III, ¶8.  By preparing and obtaining the declarations from Trapani, SunTrust's counsel acted improperly.  *See* Rule 4.2., cmt. 7 (noting "anti-contact" rule protects "against misuse of the imbalance of legal skill between a lawyer and layperson").  *See also United States v. Smallwood*, 365 F. Supp. 2d 689, 695 (E.D. Va. 2005) (ethical rule violated where attorneys and their investigators communicated with represented third-party witness, explaining "a violation of Rule 4.2 occurs ***even where the represented party consents to the communication***").  Under these circumstances, the Court should not rely upon the improperly-obtained Trapani declarations.

This Court would be well within its discretion to strike the testimony obtained in violation of applicable rules of professional conduct.  *See Banner v. City of Flint*,

---

[11]    Rule 4.2(a) of the Georgia Rules of Professional Conduct states, "[a] lawyer who is representing a client in a manner shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by constitutional law or statute."  *Morse v. State*, 277 Ga. App. 67, 68 (2005).

136 F. Supp. 2d 678, 688 (E.D. Mich. 2000) (striking use of deposition testimony obtained in violation of state professional code, explaining "suppression of tainted evidence is within the court's supervisory authority to apply rules of professional conduct"), *aff'd in relevant part*, 99 Fed. Appx. 29, 39 (6th Cir. 2004) (striking testimony obtained unethically was an "appropriate exercise[] of the district court's authority"); *Upjohn Co. v. Aetna Cas. and Sur. Co.*, 768 F. Supp. 1186, 1214 (W.D. Mich. 1990) (affirming Magistrate judge's decision that "information obtained by the misleading investigations could not be used at trial"). As such, if the Court finds the declarations from Trapani were obtained in violation of the Georgia Rules of Professional Conduct, it should strike them from the record. *See* Rule 4.2(a).

The history of this case already suggests SunTrust's in-house counsel, defendant Fortin, attempted to dissuade Trapani from providing information helpful to plaintiffs. Previously, he contacted Trapani on at least three occasions for that very purpose. At one point, he threatened to attempt to hurt him professionally.[12] Torres

---

[12]    *See also SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, No. 3:09cv529, 2011 U.S. Dist. LEXIS 33118, at *89 (E.D. Va. Mar. 29, 2011) (sanctions motion against SunTrust granted on account of the willful spoliation of evidence by a SunTrust employee and "the ensuing willful blindness to the truth of [SunTrust]'s in-house counsel" – including defendant Fortin).

- 19 -

Decl., ¶14.  Indeed, this was the reason Trapani obtained counsel in the first place. This latest contact by SunTrust's outside counsel may have had similar overtones.  *Id*., ¶¶69-70.  Accordingly, any inconsistency between what Trapani told plaintiffs' investigator and what he later said to SunTrust's counsel should be viewed with extreme skepticism.

### 2. Trapani's Declarations Do Not Warrant Rule 11 Sanctions

Even if the Court were to consider the Trapani declarations, the fact that they contradict what Trapani told plaintiffs' investigators cannot form the basis for Rule 11 sanctions.  The Eleventh Circuit has repeatedly held that witness "'recantations are viewed with extreme suspicion by the courts.'"  *In re Davis*, 565 F.3d 810, 825 (11th Cir. 2009).[13]  Courts have also recognized that inconsistencies between grand jury and trial testimony do not warrant an inference of the use of perjured testimony.[14]

---

[13]     *See also United States v. Santiago*, 837 F.2d 1545, 1550 (11th Cir. 1988) (same); *accord*, *e.g.*, *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995) ("Courts characteristically treat witness recantations 'with the utmost suspicion.'").

[14]     *United States v. Hemmer*, 729 F.2d 10, 17 (1st Cir. 1984) ( "'Presentation of a witness who recants or contradicts his prior testimony is not to be confused with eliciting perjury.  It was for a jury to decide whether or not to credit the witness.'") (quoting *United States v. Holladay*, 566 F.2d 1018, 1019 (5th Cir. 1978)).

- 20 -

It was reasonable for plaintiffs to rely on their investigator for many of the allegations in the FAC.  Emphasizing that the work-product doctrine "is an intensely practical one, grounded in the realities of litigation in our adversary system," the Supreme Court concluded in *United States v. Nobles*, 422 U.S. 225, 238 (1975), that "[o]ne of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial." *Id.*  The Supreme Court observed, moreover, that when testimony conflicts with what a critical witness actually said to the investigator, "if this statement appeared in the [investigator's] contemporaneously recorded report, it would tend strongly to corroborate the investigator's version of the interview and to diminish substantially the reliability" of the interviewed witness' trial testimony.  *Nobles*, 422 U.S. at 232. Thus, to the extent Trapani has recanted statements made to plaintiffs' investigator, that does not render reliance on his statements in the FAC unfounded.

To the contrary, it is well established that Rule 11 sanctions are ***inappropriate*** where a pleading relies upon a confidential witness who subsequently disavows statements attributed to them.  *See, e.g.*, *The Wu Group v. Synopsys, Inc.*, No. C 04-3580 MJJ, 2005 WL 1926626, at *12-*13 (N.D. Cal. Aug. 10, 2005) (finding Rule 11 sanctions inappropriate where defendants submitted declarations from confidential witnesses disavowing statements attributed to them, holding, "whether the statements

- 21 -

were made is essentially a credibility question"); *In re JDS Uniphase Corp. Sec. Litig.*, No. C 02-1486 CW, 2008 WL 753758, at *3-*4 (N.D. Cal. Mar. 19, 2008) (rejecting a motion for sanctions based on the allegation that certain witnesses disavowed statements attributed to them); *Harding v. Univ. Consulting Servs. Group, L.P.,* 48 F. Supp. 2d 765, 768-70 (N.D. Ill. 1999) (same); *In re Dynex Capital, Sec. Litig.*, No. 05 Civ. 1897 (HB) (DF), 2011 U.S. Dist. LEXIS 67894, at *15-*16 (S.D.N.Y. Apr. 29, 2011) ("Given the squarely contradictory nature of the declarations, Defendants' written submissions, standing alone, are insufficient to demonstrate that Class Counsel has perpetrated a fraud on the Court."), *upheld by*, No. 05 Civ. 1897 (HB), 2011 U.S. Dist. LEXIS 67756 (S.D.N.Y. June 20, 2011).

Like their reconsideration motion, defendants continue to rely heavily on the holdings of *Campo v. Sears Holdings Corp.*, 371 Fed. Appx. 212, 215 n.4 (2d Cir. 2010) and *City of Livonia Emps.' Ret. Sys. v. The Boeing Co.*, No. 09 C 7143, 2011 U.S. Dist. LEXIS 22347, at *8-*14 (N.D. Ill. Mar. 7, 2011).[15] But those cases are distinguishable here, as neither of them address the applicable "reasonableness under

---

[15]     The plaintiffs in *City of Livonia* have since filed a motion for relief from the March 7, 2011 judgment and the matter is still pending.

the circumstances" standard on a motion for Rule 11 sanctions and are otherwise distinguishable by the facts in this case.

In *Campo* and *City of Livonia*, both courts held that – after document and deposition discovery – an inference of scienter was precluded by the fact that confidential witnesses had been deposed and clarified or disavowed distinct portions of the information in the complaint that relied upon their statements. *Campo*, 371 Fed. Appx. at 217; *City of Livonia*, 2011 U.S. Dist. LEXIS 22347, at *5-*6.

In *City of Livonia*, there was a single witness who provided the key information, uncorroborated by any other source. According to the court in that case, this lone witness ***never*** worked for the Company, and thus his ability to know what was attributed to him was in doubt. In contrast, the facts at issue here, what Trapani told plaintiffs' counsel was happening at the Company – both before and after August 2007 – has been corroborated by other witnesses, documents, and defendants' own counsel. Further, plaintiffs here had (and still have) no reason to believe that "the information described by the investigator was unreliable." *City of Livonia*, 2011 U.S. Dist. LEXIS 22347, at *13. And, here, unlike SunTrust's cited authority, plaintiffs have not had an opportunity to depose Trapani or any other witness to challenge his

- 23 -

contradictory statements or the circumstances surrounding those declarations.[16]  After all, the Trapani declarations are squarely contradicted, and they were created and signed under problematic circumstances.

Unlike the courts in *Campo* and *City of Livonia*, here the Court is being asked to weigh evidence and judge the credibility of witnesses without the benefit of cross-examination.  In *Campo*, plaintiffs did not dispute the new evidence, and the Second Circuit noted that the district court "made no credibility determinations, nor did it weigh competing testimony."  371 Fed. Appx. at 216 n.4.  Here, plaintiffs have provided persuasive evidence that Trapani *did* provide the information used in the FAC, and other witnesses corroborated this information – none of whom are questioned by defendants.  Moreover, the evidence shows that Trapani now has a motive to distance himself from the damning allegations.  *See* Torres Decl., ¶31.  Any conflict between what Trapani told plaintiffs' investigator, and what he later said to SunTrust's counsel, simply cannot form the basis for Rule 11 sanctions.

---

[16]   Underscoring the absurdity of defendants' position, on September 24, 2010, plaintiffs filed a motion to lift the Private Securities Litigation Reform Act discovery stay for the limited purpose of taking Trapani's deposition, to obtain his testimony ***before*** the Court ruled on defendants' motions to dismiss the FAC.  That motion was opposed by defendants and denied by the Court on February 17, 2011.

### C.   Plaintiffs Should Be Awarded Their Reasonable Expenses and Attorney's Fees for Responding to Defendants' Meritless Motions for Rule 11 Sanctions

As defendants correctly note, "'[t]he purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts.'"  Defs.' Mot. at 11.  Defendants ignore their own authority by filing the instant baseless motions without first considering the declarations submitted by plaintiffs' investigators, without checking their own cited legal authorities, and without a determination by the Court indicating that plaintiffs' pleadings had no reasonable factual basis.  Under Rule 11(c)(2), plaintiffs therefore respectfully request their reasonable expenses, including attorney's fees, incurred for responding to these meritless motions for Rule 11 sanctions.

## III.   Conclusion

For the foregoing reasons, defendants' motion should be denied in all respects.

DATED:  November 21, 2011                    Respectfully submitted,

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            ANDREW J. BROWN
                                            LUCAS F. OLTS
                                            ERIC I. NIEHAUS
                                            CHRISTOPHER D. STEWART

                                                s/ ANDREW J. BROWN
                                            ─────────────────────────
                                                ANDREW J. BROWN

- 25 -

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
JOHN C. HERMAN
Georgia Bar No. 348370
Monarch Centre, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA  30326
Telephone:  404/504-6500
404/504-6501 (fax)

LAW OFFICES OF BERNARD M.
   GROSS, P.C.
DEBORAH R. GROSS
Wanamaker Bldg., Suite 450
100 Penn Square East
Philadelphia, PA  19107
Telephone:  215/561-3600
215/561-3000 (fax)

Lead Counsel for Plaintiffs

## **CERTIFICATE OF COMPLIANCE OF LOCAL RULE 7.1D**

I hereby certify that the foregoing brief has been prepared in a Times New Roman 14 point font, one of the font and point selections approved by the Court in Local Rule 5.1C.

s/ Andrew J. Brown
_____
ANDREW J. BROWN

666279_1

CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 21, 2011.

s/ Andrew J. Brown
ANDREW J. BROWN

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:        andrewb@rgrdlaw.com

## Mailing Information for a Case 1:09-cv-01185-WSD

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **David Andrew Bain**
  dbain@bain-law.com

- **Thomas B. Bosch**
  tom.bosch@troutmansanders.com,kelley.wade@troutmansanders.com

- **Thomas C. Bright**
  tbright@gbcslaw.com

- **Andrew J. Brown**
  andrewb@rgrdlaw.com

- **Ann Marie Byrd**
  ann.byrd@dlapiper.com,jennifer.burr@dlapiper.com

- **Solomon B. Cera**
  scera@gbcslaw.com,keg@gbcslaw.com

- **John A. Chandler**
  jchandler@kslaw.com,madams@kslaw.com

- **John J. Clarke , Jr**
  john.clarke@dlapiper.com

- **Mark Edwin Grantham**
  Mark.Grantham@dlapiper.com,john.clarke@dlapiper.com,betty.richards@dlapiper.com

- **Deborah R. Gross**
  debbie@bernardmgross.com

- **Cheri A. Grosvenor**
  cgrosvenor@kslaw.com

- **John C. Herman**
  jherman@rgrdlaw.com,hectorm@rgrdlaw.com,garmstrong@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Robert Ware Killorin**
  rkillorin@chitwoodlaw.com

- **J. Timothy Mast**
  tim.mast@troutmansanders.com,kelley.wade@troutmansanders.com

- **Paul Monnin**
  paul.monnin@dlapiper.com,jennifer.burr@dlapiper.com,kimberly.layton@dlapiper.com,jennifer.edgar@dlapiper.com,betty.richards@dlapiper.com

- **Eric I. Niehaus**
  ericn@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jack Reise**
  jreise@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Darren J. Robbins**
  darrenr@rgrdlaw.com

- **Christopher D. Stewart**
  cstewart@rgrdlaw.com

- **David Ashcraft Terry**
  dterry@huffpowellbailey.com,mhart@huffpowellbailey.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Matthew P. Montgomery**
Robbins Geller Rudman & Dowd, LLP - SD
655 W. Broadway
Suite 1900
San Diego, CA 92101

**Casey M. Preston**
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103-6365