UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

---

| | |
|---|---|
| BELMONT HOLDINGS CORP., et al., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SUNTRUST BANKS, INC., et al.,<br><br>Defendants. | Civil Action No. 1:09-cv-01185-WSD<br>**(Consolidated)**<br><br><u>CLASS ACTION</u><br><br>DECLARATION OF SCOTT A. TRAPANI, CFA |

664616_1

I, Scott A. Trapani, CFA, declare as follows under penalty of perjury:

1. I am over the age of eighteen (18) years, and have personal knowledge of the facts set forth in this Declaration. If called as a witness I could and would testify competently thereto.

2. In August 2009 and at my request, I was referred to attorney Thomas D. Mauriello, from the Mauriello Law Firm, APC. I contacted Mr. Mauriello in August 2009 concerning my legal rights and obligations under my severance agreement with SunTrust. I understood that Mr. Mauriello was acting as my counsel. Mr. Mauriello provided me with advice at that time concerning my rights and obligations under my severance agreement with SunTrust and other issues.

3. After my severance agreement expired on December 31, 2009, and after further consultation with my counsel, Mr. Mauriello, I agreed to participate in a telephonic interview with Worms & Hirsch, Inc, an investigation firm working for Plaintiffs' counsel. This interview occurred on February 2, 2010. Mr. Mauriello was present.

4. In September 2010, at plaintiffs' counsels' request and after consultation with my attorney, I participated in a second telephonic interview with Worms & Hirsch, Inc. Mr. Mauriello was present for that interview, as well.

- 1 -

664616_1

5.  On no occasion between the late summer or early fall of 2009 and the present date have I ever spoken with Plaintiffs' counsel or Plaintiffs' investigators outside the presence of my counsel, Mr. Mauriello.

6.  On September 9, 2011, I received an email from Mr. Mauriello providing a copy of the Court's September 9, 2011 Order on Defendants' Motions to Dismiss. On September 16, 2011, Mr. Mauriello and I exchanged further e-mails concerning the Order and the litigation.

7.  Three days later, on September 19, 2011, I was contacted by Tim Mast, a partner with the law firm of Troutman Sanders LLP. Mr. Mast initially asked whether I was represented by counsel. I informed Mr. Mast that I was not sure whether I was currently represented. Mr. Mast then told me that legal representation is a "pretty clear agreement," that "you either are or are not represented," and that "people usually know when they are represented," or words to that effect.

8.  The clear implication to me from what Mr. Mast was saying was that, because I did not know whether I was in fact represented at that time, I therefore was not represented. I assumed Mr. Mast was correct because he is a lawyer. At no time did Mr. Mast suggest that I should try to contact Mr. Mauriello to determine whether I was still represented or to otherwise consult with Mr. Mauriello.

9. On September 19, 2011, Mr. Mast informed me that the claims the plaintiffs made were based on statements attributed to me, which resulted in me being the "center of attention in the Plaintiffs' suit." In addition, Mr. Mast described what he called the "legal ramifications" of my involvement in the case.

10. Mr. Mast informed me that he would draft something that "clarified" statements attributed to me and which I had seen in court documents. After this call, Mr. Mast sent me a declaration to sign. I signed that declaration on September 20, 2011. At that time, based on my conversation with Mr. Mast, I believed that there would be no other declarations.

11. After Mr. Mauriello learned of defendants' counsel's contacts with me, Mr. Mauriello sent a letter to Tim Mast objecting to his contacts with me. That October 19, 2011 letter is attached hereto as Exhibit A. It accurately summarizes my initial contacts with Mr. Mast.

12. Shortly after I signed the September 20, 2011 declaration, Mr. Mast came back with a second request and presented a longer declaration to me. Mr. Mast explained to me that he "rethought certain aspects" of the first declaration and sought to have me sign a second declaration for "further clarification."

13. When discussing the second declaration with me, Mr. Mast framed the questions in a closed-ended manner. He insisted that I did not have "personal

- 3 -

knowledge" of what occurred at SunTrust after I was placed on administrative leave at the end of August, 2007. Mr. Mast also intimated to me that by signing these declarations my involvement in the case would "most likely" end, and he referenced a *Boeing* case.

14. On September 26, 2011 I signed the second declaration prepared by Mr. Mast. After I signed the second declaration, Mr. Mast contacted me again and requested a one-on-one meeting to go over certain documents. During that meeting, Mr. Mast presented me with the SunTrust ALLL loan loss package. Mr. Mast selected documents for the second quarter of 2007 and began reviewing every document in the package with me. In particular, Mr. Mast focused on the Sarbanes Oxley statements in the package and questioned me about my signature on the documents. Mr. Mast told me "this could be a problem for you." It seemed to me that he was trying to intimidate me or persuade me not to say what I believed to be the true state of affairs at SunTrust when I signed those 2007 Sarbanes-Oxley documents.

15. During this same meeting with Mr. Mast, he informed me that SunTrust increased reserves by $300 million during the fourth quarter 2007. Mr. Mast also acknowledged that the ALLL Committee rejected the reserves proposed by the Reserve Working Group for fourth quarter 2007, and told me he thought it demonstrated the ALLL Committee's "independence."

16. I have been provided a copy of a November 3, 2011 declaration from Mr. Mast in which he purports to summarize our discussions. I have reviewed Mr. Mast's declaration and do not believe it accurately reflects our discussions.

17. For example, in ¶¶3-4 of Mr. Mast's declaration he states that I told him I was not represented by counsel. However, as stated above, I informed Mr. Mast that I was not sure whether I was currently represented. During this initial conversation, he persuaded me that I was not represented, and so I agreed to talk to him without counsel present.

18. In ¶4 of his November 3, 2010 declaration, Mr. Mast states that I told him that I did not select my counsel, Mr. Mauriello, and that I said I did not know that lawyer. This is not true. As stated above, I was referred to Mr. Mauriello and I personally contacted him initially to obtain advice concerning my severance agreement with SunTrust. I had numerous contacts with him thereafter, including as recently as three days prior to Mr. Mast first contacting me on September 19, 2011.

19. Mr. Mast also states in ¶4 that I said in September 2011 that I had not had any contact with my counsel in "probably 13 or 14 months." Again, this is not true. I had communicated with Mr. Mauriello on multiple occasions in September 2011, prior to Mr. Mast's contacting me.

20. In ¶8 of Mr. Mast's declaration, <u>none</u> of the statements attributed to me as direct quotes are accurate. I did not make any such statements to Mr. Mast.

21. Finally, in ¶10 of the Mast declaration Mr. Mast denies telling me the ALLL Committee rejected the recommendation of the Reserve Working Group in December, 2007. But he did tell me that during our discussions in September, 2011.

22. Nothing in this Declaration is intended to waive or does waive the attorney client privilege between me and my counsel.

I declare under penalty of perjury under the laws of the State of Georgia that the foregoing is true and correct. Executed this 16 day of November, 2011, at <u>ATLANTA</u>, <u>GEORGIA</u>.

_____
SCOTT A. TRAPANI

# EXHIBIT A

# MAURIELLO LAW FIRM, APC
*A Professional Law Corporation*

THOMAS D. MAURIELLO*
*ALSO ADMITTED IN NJ & PA

1181 Puerta Del Sol, Ste. 120
San Clemente, CA 92673
Tel: (949) 542-3555
Fax: (949) 606-9690
e-mail: tomm@maurlaw.com
www.maurlaw.com

*San Francisco Office*
350 Sansome St., Ste. 400
San Francisco, CA 94104
Tel: (415) 677-1238
Fax: (949) 606-9690

October 19, 2011

<u>VIA FACSIMILE AT (404) 885-3100</u>
<u>AND FEDERAL EXPRESS</u>
J. Timothy Mast, Esq.
Troutman Sanders LLP
Suite 5200, Bank of America Plaza
600 Peachtree Street, NE
Atlanta, GA  30308-2216

Re:   <u>Scott Trapani/Suntrust Securities Litigation</u>

Dear Mr. Mast:

Thank you for your call on Monday. I returned your call on Monday and left a voicemail message but have not heard back from you. I had intended to contact you after hearing of your recent contacts with Scott Trapani but until Monday I had been in arbitration and court for most of the previous two weeks.

As you know from your discussions with Mr. Trapani, I represent him in connection with his status as a third party witness in the above-referenced case and I have represented him in that capacity for several years.

I was very concerned to learn of your recent *ex parte* contacts with Mr. Trapani as he has related them to me. I understand that you had several meetings with Mr. Trapani last month and this month, as well as numerous telephone conversations with him. The end result of that process was that you drafted two declarations for his signature and filed these declarations with the Court. All of this was done without my knowledge.

As an initial matter, as Mr. Trapani advised you directly in a recent email, he is represented by me. Please refrain from contacting Mr. Trapani in the future. If you wish to contact him in the future, please direct any contacts through me.

Further, my initial surprise and alarm upon hearing of your communications were borne out after I researched the applicable ethical rules. My research confirmed that because Mr. Trapani was represented by counsel when you contacted him, your contacts with him were inappropriate and unethical. Rule 4.2 of the ABA Model Rules of Professional Conduct provides: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

J. Timothy Mast, Esq.
Re:  Scott Trapani/Suntrust Securities Litigation
October 19, 2011
Page 2

Rule 4.2 of the Georgia Rules of Professional Conduct is substantially identical to Model Rule 4.2. Comment No. 3 to Georgia Rule 4.2 specifically addresses represented persons who are not parties to an action (like Mr. Trapani): "This Rule applies to communications with any person, whether or not a party to a formal adjudicative proceeding, contract or negotiation, who is represented by counsel concerning the matter to which the communication relates."

These rules were designed to prevent overreaching by counsel and uncounselled disclosure of information relating to the representation. Comment No. 1 to ABA Model Rule 4.2 provides: "This Rule contributes to the represented by a lawyer in a matter against possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship and the uncounselled disclosure of information relating to the representation."     Comment No. 7 to Georgia Rule 4.2 further addresses the policy behind the Rule:

> The anti-contact rule serves important public interests which preserve the proper functioning of the judicial system and the administration of justice by a) protecting against misuse of the imbalance of legal skill between a lawyer and layperson; b) safe-guarding the client-attorney relationship from interference by adverse counsel; c) ensuring that all valid claims and defenses are raised in response to inquiry from adverse counsel; d) reducing the likelihood that clients will disclose privileged or other information that might harm their interests; and e) maintaining the lawyers ability to monitor the case and effectively represent the client.

Georgia Rule 4.2 also provides more specificity regarding penalties for violation of the Rule: "The maximum penalty for a violation of this Rule is disbarment."

It also appears that your conduct violated ABA Model Rule 4.4(a), which provides: "<u>In representing a client, a lawyer shall not</u> use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or <u>use methods of obtaining evidence that violate the legal rights of such a person.</u>"

My analysis leads me to conclude that you violated ABA Model Rules 4.2 and 4.4(a) and Georgia Rule 4.2. You interfered with the attorney client relationship of a represented party by discussing with Mr. Trapani the nature of my representation and advice to him. You also harmed the represented party, and again interfered with the legal relationship, by obtaining disclosures from him that did not benefit from legal counsel.

I expect that you may assert that your communications with Mr. Trapani were not improper because Mr. Trapani consented to speak with you or because in response to your repeated leading questioning he indicated that he was not represented by counsel. If so, be advised that consent is no defense or excuse to communicating with a represented party. Comment 3 to Model Rule 4.2 provides: "The Rule applies even though the represented person initiates or consents to the communication. A lawyer must immediately terminate communication with a person if, after commencing communication, the lawyer learns that the person is one with whom communication is not permitted by this Rule." (Even absent this Rule, consent would have to be informed in order to be effective, anyway.)

J. Timothy Mast, Esq.
Re:   Scott Trapani/Suntrust Securities Litigation
October 19, 2011
Page 3

   Further, the information available to you, the circumstances of the case, and your initial discussions with Mr. Trapani all made it apparent that he was represented by counsel. Based on Mr. Trapani's description of your discussions with him, it appears that your initial questioning of him as to whether he was represented was designed to lead him to the conclusion that he was not, so that you could speak with him outside the presence of counsel. After you asked Mr. Trapani if he was represented, Mr. Trapani said several times that he did not know, and he mentioned my legal assistance in connection with this case. At that point, the proper and ethical thing to do would have been to refer him to consult with counsel. If a person states that he has been represented in the same matter and that he does not know whether he is still represented, then clearly he *may* still be represented.

   Instead of recommending that Mr. Trapani consult with counsel on the issue of representation, you indicated that "usually someone knows whether or not he is represented" and "it's black and white," or words to that effect. Your comments were misleading, at best. This kind of tactic is ethically prohibited. Comment 8 to Model Rule 4.2 provides: "The prohibition on communications with a represented person only applies in circumstances where the lawyer knows that the person is in fact represented in the matter to be discussed. This means that the lawyer has actual knowledge of the fact of the representation; but such actual knowledge may be inferred from the circumstances. See Rule 1.0(f). Thus, the lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious." Plaintiff's motion seeking to take Mr. Trapani's deposition filed in the fall of 2010 disclosed that Mr. Trapani had been represented by counsel in connection with this case. Mr. Trapani told you that he had been represented by me in connection with this case. After Defendants' motion to dismiss was denied last month, it became almost a certainty that Mr. Trapani would be deposed and more than likely would have counsel at deposition. Based on all these circumstances, your decision to speak with Mr. Trapani without counsel was "closing your eyes to the obvious."

   Mr. Trapani's lack of clarity over whether he remained represented is understandable, given the sporadic nature of Mr. Trapani's ongoing involvement in this case and of my representation over the past several years, the fact that he is not a party, and the fact that his deposition, though anticipated, had not yet been scheduled. Mr. Trapani is not a lawyer. Although he is sophisticated in matters of finance and accounting, as you could readily tell from speaking with him this does translate into sophistication in legal matters. Your comments, coming from a sophisticated lawyer at large, reputable law firm, succeeded in leading Mr. Trapani to conclude that the issue must indeed be "black and white" and that he was not represented.

   Mr. Trapani also has indicated that during your discussions with him you impliedly threatened him and you also indicated that if he provided declarations that this case might be concluded without his deposition or further involvement. These facts further underscore the need for counsel to prevent abuse or mistreatment of a witness.

   Since my engagement several years ago, Mr. Trapani has spoken to Plaintiffs' counsel and investigator on several occasions. On each such occasion, I was present during those discussions. Plaintiffs thus respected Mr. Trapani's rights and did not obtain information from Mr. Trapani by interfering with his right to counsel or violating the applicable attorney ethical rules. The same cannot be said of Defendants. Your filings indicate that Defendants take issue with some of the substance of Plaintiffs' allegations based on their discussions with Mr. Trapani, just as they may take issue with some of the

J. Timothy Mast, Esq.
Re:     Scott Trapani/Suntrust Securities Litigation
October 19, 2011
Page 4

substance of the information that you attribute to Mr. Trapani in the declarations you drafted for him and convinced him to sign. That is for the parties to litigate and for the Court or jury to decide. Mr. Trapani has no stake in this case and has no "dog in the fight." But he has a right to be treated fairly and ethically, which you have violated.

In sum, it is clear to me that these declarations are ethically tainted, improper, and unreliable. While I cannot demand that you withdraw the declarations, my suggestion is that the parties agree to take Mr. Trapani's deposition, once and for all, rather than having the Court rely on these declarations. If the goal is to arrive at the facts, the prospect of both sides being able to question him under oath on the record is far preferable to having the parties unilaterally assert parsed and in some respects incomplete and misleading presentations of Mr. Trapani's comments, whether they be in declarations drafted by Defendants' counsel, or in allegations of a complaint drafted by Plaintiffs' counsel.

Finally, nothing in this letter is intended to waive or does waive the attorney client privilege.

Very truly yours,

Thomas D. Mauriello

cc:     Mr. Scott Trapani
        Andrew Brown, Esq.
        Jack Reise, Esq.