# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **BELMONT HOLDINGS CORP., et al., Individually and on Behalf of All Others Similarly Situated,** | |
| **Plaintiff,** | |
| **v.** | **1:09-cv-1185-WSD** |
| | **(Consolidated)** |
| **SUNTRUST BANKS, Inc., et al.,** | |
| **Defendants.** | |

## OPINION AND ORDER

This matter is before the Court on the SunTrust Defendants'[1] Motion for Reconsideration [128], Defendant Ernst & Young LLP's ("E&Y") Motion for Reconsideration [129], SunTrust Defendants' Motion for Rule 11 Sanctions Against Plaintiff and Plaintiff's Counsel [139], and E&Y's Motion for Private Securities Litigation Reform Act ("PSLRA") and Rule 11 Sanctions Against Plaintiff and Plaintiff's Counsel [140].

---

[1] The "SunTrust Defendants" include: Defendants SunTrust Banks, Inc.; SunTrust Capital IX; James M. Wells, III; William H. Rogers, Jr.; Raymond D. Fortin; L. Phillip Humann; Mark A. Chancy; Thomas E. Panther; Robert M. Beall, II; J. Hyatt Brown; Alston D. Correll; Jefferey C. Crowe; Thomas C. Farnsworth, Jr.; Patricia C. Frist; Blake P. Garrett, Jr.; David H. Hughes; E. Neville Isdell; M. Douglas Ivester; J. Hicks Lanier; G. Gilmer Minor, III; Larry L. Prince; Frank S. Royal; Karen Hastie Williams; and Phail Wynn, Jr.

## I.   BACKGROUND[2]

Plaintiff Belmont Holdings Corporation ("Belmont" or "Plaintiff") brings this purported class action under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "1933 Securities Act"), 15 U.S.C. §§ 77k, 77*l*, and 77o, relating to the issuance of Defendant SunTrust Capital IX's 7.785% Trust Preferred Securities (the "Securities").  SunTrust Banks, Inc. ("SunTrust") initially offered the Securities to the public in February 2008 (the "Offering").  SunTrust issued the Securities pursuant to an October 18, 2006, Registration Statement, as amended by a February 27, 2008, Prospectus Supplement (collectively, the "RS/P"), which incorporated by reference SunTrust's Form 10-K for the year ended December 31, 2007 (the "2007 10-K").[3]

On November 30, 2009, Plaintiff filed its consolidated complaint in this action (the "Complaint").  Plaintiff alleged that, at the time of the Offering in 2008, the U.S. housing market was already "wildly out of control and bleeding into all the financial markets."  (Compl. ¶ 13).  Plaintiff further alleged that, to raise capital, SunTrust issued the Securities, but "negligently incorporated [into the RS/P] false and misleading information about [its] capital and reserves, and its

---

[2] The factual background and procedural history regarding this action is more fully recounted in the Court's September 7, 2011, Order (the "September 7th Order").
[3] The Prospectus Supplement also incorporated Forms 8-K dated February 16, 2007 (Form 8-K/A filed on January 7, 2008) and February 12, 2008.

ability to manage and control risk," and thus misled investors about the nature of SunTrust's exposure to high-risk housing market loans.  (Id. ¶¶ 13, 16, 72).  The original Complaint noted that after the Offering, SunTrust sought help from the government and accepted almost $5 billion from the Troubled Asset Relief Program ("TARP").

The Complaint alleged that the 2007 10-K, which the RS/P incorporated, underestimated SunTrust's allowance for loan and lease loss reserves ("ALLL") and provision for loan loss ("Provision").  SunTrust stated in the 2007 10-K that:

> We continuously monitor the quality of our loan portfolio and maintain an allowance for loan and lease losses ("ALLL") sufficient to absorb all probable losses inherent in our loan portfolio.  We are committed to the timely recognition of problem loans and maintaining an appropriate and adequate ALLL.  At year-end 2007, the ALLL was $1,282.5 million, which represented 1.05% of period-end loans.  This compares with an ALLL of $1,044.5 million, or 0.86% of loans as of December 31, 2006.

(Id. ¶ 99).

> The Company's allowance for loan and lease losses is the amount considered adequate to absorb probable losses within the portfolio based on management's evaluation of the size and current risk characteristics of the loan portfolio.

(Id. ¶ 100).

> The provision for loan losses is the result of a detailed analysis estimating an appropriate and adequate ALLL.

(Id. ¶ 101).

> Performance of residential construction related loans has deteriorated; however, we have been proactive in our credit monitoring and management processes to provide "early warning" alerts for problem loans in the portfolio.

(Id. ¶ 102).

> Management believes the Company has the funding capacity to meet the liquidity needs arising from potential events.

(Id. ¶ 106).

On January 29, 2009, each Defendant moved to dismiss the original Complaint for failure to state a claim. On September 10, 2010, the Court issued an Order granting the Defendants' motions to dismiss. The Court, however, allowed Plaintiff to file an amended complaint.

On October 8, 2010, Plaintiff filed its First Amended Consolidated Complaint (the "Amended Complaint"). Plaintiff's Amended Complaint alleges that Defendants: (1) failed to adequately reserve for SunTrust's mortgage-related exposure (losses); (2) failed to accurately increase SunTrust's ALLL or the Provision as prudent accounting required; (3) failed to disclose information concerning SunTrust's capital and mortgage-related assets; and (4) failed to disclose material weaknesses in SunTrust's internal controls. (Am. Compl. ¶ 98).

Plaintiff's Amended Complaint centers on allegations similar to those asserted in the Original Complaint,[4] but adds a number of clarifying allegations to support that the RS/P was misleading because it did not adequately disclose SunTrust's ALLL and that SunTrust's loan loss reserves were insufficient to cover SunTrust's loan losses.  Plaintiff's Amended Complaint also relies upon a central claim that SunTrust knew its financial data, upon which ALLL and loan losses were determined, was flawed and that SunTrust knowingly relied upon flawed data to determine its ALLL, loan loss, and loan loss reserves.  Plaintiff claims that SunTrust knew its reliance on flawed data would result in misleading financial information being included in the RS/P.  Plaintiff's support for these claims rests on information provided by SunTrust's former Group Vice President of Risk Management, Scott Trapani.

In Plaintiff's Amended Complaint, Plaintiff generally alleges that, through the end of 2007: (1) Trapani told the SunTrust Defendants that the ALLL and Provision were inadequate before the Offering; (2) Trapani had conversations and meetings with several of the SunTrust Defendants regarding the insufficiency of

---

[4] Plaintiff deleted large portions of the original Complaint, including allegations regarding (1) SunTrust's alleged wrongdoing related to its investment in Structured Investment Vehicles; (2) SunTrust's employment of Level 3 fair value accounting; and (3) the global economic collapse that occurred months after the Offering.  (See e.g., Redline Compl. [102.1] ¶¶ 6, 82, 147, 148, 153, 171, 172, 176, 227, 233, 237, 240).

ALLL and the Provision; (3) SunTrust's loan loss reserves were insufficient to cover its losses; (4) SunTrust's internal controls were dysfunctional; and (5) SunTrust knew or recklessly ignored several problems with its data used to calculate its exposure to potential loan losses.  (Id. ¶¶ 10, 13, 102, 127-29, 139, 143).  Plaintiff contends that based on these circumstances, SunTrust knew that it was unable "to track mortgage delinquencies from internal data due to [SunTrust's] data integrity issues" and that senior SunTrust officers "knew that SunTrust's loan loss reserve models were flawed as a result of the data integrity issues."  (Id. ¶ 10).

Plaintiff's Amended Complaint alleges further that, knowing its financial data was flawed, the SunTrust Defendants made a variety of false and misleading statements in its SEC filings, including:

1. With respect to ALLL, the 2007 Form 10-K falsely and misleadingly stated that SunTrust continuously monitored the quality of their loan portfolio and maintained an allowance for loan and lease losses sufficient to absorb probable losses inherent in SunTrust's loan portfolio. (Id. ¶ 87).

2. That SunTrust's loan and lease loss amount was sufficient to absorb probable portfolio losses based on management's evaluation of the size and risk characteristics of the portfolio.  (Id. ¶ 88).

3. The loan losses were the result of a detailed analysis estimating an appropriate and adequate ALLL under applied financial accounting standards and for the year ended December 31, 2007, it was $664.9 million, a 153% increase over the previous year.  (Id. ¶ 89).

4.  The loan portfolio was well diversified and SunTrust was proactive in its credit monitoring and management processes to indentify problem loans. (<u>Id.</u> ¶ 90).

5.  SunTrust was committed to remaining well capitalized and set a Tier 1 target ratio of 7.5%, that the ratio had declined during 2007, but was expected to be restored to the targeted level by the issuance of enhanced trust preferred securities and transaction in The Coca-Cola Company stock held by SunTrust.  (<u>Id.</u> ¶ 91).

6.  Credit risk extensions were monitored and evaluated through initial underwriting processes and periodic reviews to monitor asset quality trends and the appropriate use of credit policies.  (<u>Id.</u> ¶ 92).

7.  SunTrust believed it had funding capacity to meet the liquidity needs arising from potential events.  (<u>Id.</u> ¶ 93).

These alleged misleading statements, Plaintiff claims, are the by-product of SunTrust's unreliable and flawed financial data collection and storage systems. Plaintiff alleges that SunTrust's "data integrity issues across the entire portfolio of [SunTrust's] assets 'clearly' negatively impacted SunTrust's ability to accurately forecast loan loss reserves and contributed to the Company being under reserved throughout fiscal 2007" (<u>id.</u> ¶ 119), which, in turn, caused the end-of-year 2007 financial reports that were incorporated into the RS/P to be misleading.

In support of its 1933 Securities Act claims, Plaintiff relies on Trapani's knowledge of the data integrity issues and Trapani's personal knowledge of what SunTrust's officers knew about those data integrity issues and the financial data produced.

Plaintiff alleges in its Amended Complaint that SunTrust conducted two quarterly meetings to set the ALLL: the Reserve Working Group Meeting ("RWG") and the ALLL Committee Meeting.  (Id. ¶ 130).  Trapani chaired the RWG Meeting and participated in the ALLL Committee Meeting.  (Id.).  Prior to the RWG Meeting, Trapani would meet with RWG committee members to discuss the probability of defaults and exposure from their respective business groups.  (Id. ¶ 133).  At the RWG Meeting, the committee discussed the probability of defaults and issued a recommended ALLL that the ALLL Committee would use in setting SunTrust's ALLL.  (Id. ¶ 135).

After the RWG Meeting, Trapani would participate in the ALLL Committee Meeting.  The ALLL Committee considered the RWG committee's recommendation, but it ultimately decided the ALLL that SunTrust published in its SEC filings.  (Id. ¶ 136).  In December 2007, the ALLL Committee rejected and lowered the ALLL recommended by the RWG.  (Id. ¶ 139).

Plaintiff's Amended Complaint also alleges, based principally on information provided by Trapani, that the data SunTrust used to calculate its potential loan losses was not reliable.  Plaintiff claims that "no one at SunTrust" trusted the data because it was inconsistent and incomplete.  (Id. ¶¶ 116-17).  Plaintiff contends that because the underlying data used in these calculations was

"garbage," SunTrust's process to calculate loan losses in various asset groups and, as a result, the ALLL, was flawed, resulting in inaccurate ALLL levels throughout 2007, which were thus misleadingly represented in the December 2007 10-K and February 2008 RS/P.[5]  (Id. ¶ 137).  Specifically, Plaintiff alleges that SunTrust's ALLL, "as reported in its financial statements on Form 10-Q's and Form 10-K's at the end of 2007 was materially inadequate and did not reflect the high risk of losses inherent in its real estate loan portfolio which included determining HELOC product lines."  (Id. ¶ 163).  Plaintiff alleges that "at the end of 2007, SunTrust was required under GAAP . . . to increase its ALLL calculation for a significant portion of those bad loans," and failing to do so caused SunTrust to violate GAAP and issue "false financial statements at the end of 2007 because its ALLL reserve was understated."  (Id. ¶ 165).

Plaintiff also alleges that E&Y wrongfully issued clean audit opinions at the end of 2007, knowing of SunTrust's internal control failures and flawed financial data and thus knowing the ALLL calculations were unreliable.  (Id. ¶ 198).  Plaintiff also alleges that E&Y wrongfully consented to inclusion of its audit report for SunTrust's financial statements in the February 27, 2008, Prospectus.  By doing so, and knowing the financial statements did not conform with GAAP, Plaintiff

---

[5] The process for determining the ALLL, Plaintiff alleges, violated Generally Accepted Accounting Principles ("GAAP").

claims E&Y is liable for any damages caused by SunTrust's misleading financial statements in the RS/P.

On March 21, 2011, the Defendants each moved to dismiss Plaintiff's Amended Complaint [112, 113, 114].[6]

On September 7, 2011, the Court denied the SunTrust Defendants' Motion to Dismiss [112], denied the Underwriter Defendants'[7] Motion to Dismiss [113], and granted in part and denied in part E&Y's Motion to Dismiss [114].[8]

In its September 7th Order, the Court found that Plaintiff must sufficiently allege subjective falsity in its claims because statements of opinions or belief "are actionable only if they are both objectively and subjectively false." Washtenaw Cnty. Emp. Ret. Sys. v. Wells Real Estate Inv. Trust, Inc., Civil Action No. 1:07-

---

[6] Plaintiff moved to depose Trapani when he refused to provide additional information without a court order.  On February 17, 2011, the Court denied Plaintiff's request to lift the discovery stay imposed by the PSLRA on the grounds that the PSLRA requires a stay of discovery pending a motion to dismiss unless the Court finds the "particularized discovery is [1] necessary to preserve evidence [2] or to prevent undue prejudice," neither of which was present.  (Order of Feb. 17, 2011, at 5-6, 12-13).

[7] The "Underwriter Defendants" include: Defendants Morgan Stanley & Co. Incorporated, Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, UBS Securities LLC, Banc of America Securities LLC, and SunTrust Robinson Humphrey, Inc.

[8] E&Y's Motion to Dismiss was granted to the extent Plaintiff made any claims under GAAP or Generally Accepted Auditing Standards ("GAAS"), or for inadequate internal controls, that are related to representations other than those concerning SunTrust's ALLL, loan losses, and Provision.

CV-862-CAP, 2008 WL 2302679, at *8 (N.D. Ga. Mar. 31, 2008) (citing Va. Bankshares v. Sandberg, 501 U.S. 1083, 1095 (1991)); Rubke v. Capitol Bancorp Ltd., 551 F.3d 1156, 1162 (9th Cir. 2009) ("Because these fairness determinations are alleged to be misleading opinions, not statements of fact, they can give rise to a claim under section 11 only if the complaint alleges with particularity that the statements were both objectively and subjectively false or misleading."); Fait v. Regions Fin. Corp., 712 F. Supp. 2d 117, 120 (S.D.N.Y. 2010) (adequate reserves for predicted loan loss is not a matter of objective fact but are statements of opinions of value of loans that would prove to be uncollectible in the future and complaint must allege defendants did not truly hold opinions when they were made public); In re CIT Grp. Inc. Sec. Litig., 349 F. Supp. 2d 685, 689 (S.D.N.Y. 2004) ("[S]tatements about defendants' belief in the adequacy of loan loss reserves could be actionable if it is alleged that defendants did not actually believe the loan loss reserves were adequate, or if defendants had no reasonable factual basis for their belief."); Podany v. Robertson Stephens, Inc., 318 F. Supp. 2d 146, 154 (S.D.N.Y. 2004) ("[P]roving the falsity of [a statement of opinion] is the same as proving scienter, since [a statement of opinion] cannot be false at all unless the speaker is knowingly misstating his truly held opinion."); (September 7th Order at 22-23); see also Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1247 (11th Cir. 2008)

("Because scienter is an essential element of a securities fraud claim, [a plaintiff's] allegations must create a *strong inference*—again, one that is 'cogent and compelling'—that the individual defendants knew about the alleged fraud (or were severely reckless in not knowing about it) when they made the purportedly false or misleading statements.").

The Court also found that:

> the "gravamen" of the Amended Complaint goes well beyond simple negligence and sounds in fraud, and thus Plaintiff is required to meet the heightened pleading requirements of Rule 9(b). Rombach, 355 F.3d at 171 (while a plaintiff need allege no more than negligence to proceed under Section 11 and Section 12(a)(2), claims that do rely upon averments of fraud are subject to the test of Rule 9(b)"); In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1404-05 (9th Cir. 1996) ("the particularity requirements of Rule 9(b) apply to claims brought under Section 11 when . . . they are grounded in fraud"). Plaintiff is obligated to plead with particularity false and misleading material statements allegedly made by Defendants.

(September 7th Order at 17-20).

The Court noted that Plaintiff's Amended Complaint alleged subjective falsity against the SunTrust Defendants based on its claim that Trapani's statements show senior SunTrust executives knew the data upon which the loan losses and ALLL were based were materially deficient and unreliable, and thus SunTrust knew it had understated its loan losses and misrepresented its ALLL in the December 2007 10-K and February 2008 RS/P. (Id. at 12). The Court noted

that Plaintiff's Amended Complaint specifically alleges, based on statements

attributable to Trapani, that:

> "[E]veryone at [SunTrust] was aware" that SunTrust was under-reserved throughout 2007.  Indeed, [Trapani] had several discussions throughout 2007 with Defendants Fortin, Panther, Chancy and Wells about being substantially and materially under-reserved.  Defendants Fortin, Panther, Chancy and Wells all knew that SunTrust's reserve models were flawed as a result of the data integrity issues at [SunTrust] and because of the resulting losses in the HELOC book. (Am. Compl. ¶ 143; see also id. ¶ 10).

> Everyone at [SunTrust] was aware that [SunTrust] under-reserved throughout 2007, including SunTrust's Chief Risk Officer Tom Freeman.  Indeed [Trapani] had several discussions throughout 2007 with defendants Fortin, Panther, Chancy and Wells about being under-reserved by over a billion dollars," (id. ¶ 175).

(September 7th Order at 25).

The Court further acknowledged that Plaintiff's Amended Complaint

alleges, again based on statements attributable to Trapani, that SunTrust had

difficulties collecting accurate data for use in determining its ALLL and loan loss

Provision and that:

- Trapani had conversations with Defendants Chancy and Wells regarding SunTrust's inability to accurately track its "probabilities of default," (Am. Compl. ¶ 192);

- Defendants Fortin, Panther, Chancy, and Wells knew that SunTrust's models were flawed as a result of inaccurate data, (id. ¶ 143);

13

- The ALLL Committee rejected the Reserve Working Group ALLL recommendation and disclosed an ALLL lower than the Reserve Working Group recommended, (id. ¶ 139);

- Trapani discussed with Defendants Panther, Chancy, and Wells, that SunTrust could not track losses from HELOC loans, (id. ¶ 128); and

- SunTrust's data collection efforts were a "work in progress" between 2005 and September 2007 and there was not a lot of confidence in the data, (id. ¶ 103).

(September 7th Order at 26).

In light of the allegations in Plaintiff's Amended Complaint, the Court found in its September 7th Order that Plaintiff had sufficiently pled subjective falsity with the particularity required by Federal Rule of Civil Procedure 9(b)[9] for its claims against the SunTrust Defendants to survive at the motion to dismiss stage because:

> . . . the Court is required to read the allegations and all inferences that arise from them in the light most favorable to the Plaintiff, including the allegation that Trapani has personal knowledge of the database and alleged data integrity issues at

_____

[9] Rule 9(b) of the Federal Rules of Civil Procedure sets forth specific requirements for alleging fraud. Rule 9(b) requires: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); see also United States v. Lab Corp. of Am., Inc., 290 F.3d 1301, 1310 (11th Cir. 2002). In short, Plaintiff must set forth the "who, what, when, where, and how" of the Defendant's allegedly fraudulent behavior. See In re World Access, Inc. Sec. Litig., 119 F. Supp. 2d 1348, 1353 (N.D. Ga. 2000). Rule 9(b) "ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of." Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1277 (11th Cir. 2006).

>SunTrust throughout 2007.  Thus, the specific facts alleged
>provide a sufficient basis to allege that SunTrust Banks, Inc.
>and SunTrust Capital IX did not truly believe the ALLL and
>Provisions that were disclosed, and the Court thus concludes
>that Plaintiff has sufficiently alleged plausible claims under
>Sections 11 and 12 of the Securities Act.  Plausibility is, of
>course, the pleading standard the Court must apply at this stage
>in the litigation.  All that is required is for Plaintiff to nudge its
>claim across the line from conceivable to plausible.  Twombly,
>550 U.S. at 570.  Plaintiff's factual allegations suggesting that
>Defendants Chancy, Wells, Fortin, and Panther did not believe
>the ALLL and Provision that were disclosed are sufficient,
>albeit barely, to state plausible claims under Sections 11 and 12.

(Id. at 27-28).

Implicit in the Court's September 7th Order denying Defendants' Motions to

Dismiss was the Court's accepting as true Plaintiff's claim that Trapani had

personal knowledge regarding Defendants Chancy, Wells, Fortin, and Panther's

subjective knowledge of the falsity of SunTrust's statements about the ALLL and

Provision when those statements were made in the December 2007 10-K and

February 2008 RS/P.  (Id. at 8 n.5, 25-28, 28 n.10).  Recognizing Plaintiff's

reliance on Trapani's alleged personal knowledge, the Court noted:

>If the facts develop that Defendants did believe the statement to
>be true, Plaintiff likely will not have asserted cognizable claims.
>Based on this factual posture, the Court believes that efficient
>management of this case requires that discovery first be focused
>on this belief issue because all of the statements alleged by
>Plaintiff to be misleading hinge on whether the opinions
>expressed were believed to be true.  Plaintiff has made specific
>allegations regarding the ALLL and Provision against only

> Defendants Chancy, Wells, Fortin and Panther.  The Amended
> Complaint does not allege that any other SunTrust officer or
> director was involved in setting of the ALLL and Provision or
> failed to believe the ALLL and Provision that were disclosed.
> Discovery is thus initially limited to the subjective beliefs about
> the ALLL and Provisions of Chancy, Wells, Fortin, and
> Panther.

(Id. at 28 n.10).

The Court also recognized the possibility that Trapani did not have personal

knowledge of events at SunTrust at the end of 2007 based on the SunTrust

Defendants' assertion that "Trapani ceased working at SunTrust in August 2007

when he 'was placed on administrative leave . . . and never returned to work.'"

(Id. at 8 n.5).  In light of the SunTrust Defendants' assertion about Trapani not

returning to work after August 2007, the Court stated that it:

> of course, views the allegations in the Amended Complaint in a
> light most favorable to the Plaintiff and thus must assume
> Trapani had personal knowledge of the matters upon which
> allegations attributed to him are based including the facts
> alleged about SunTrust's conduct to the end of 2007.  If
> Trapani does not have personal knowledge of events in the
> second half of 2007, the Court will consider later whether these
> allegations support a violation of the pleading standards under
> the Federal Rules of Civil Procedure.

(Id.).

On or about September 18, 2011, after the Court denied Defendants'

Motions to Dismiss based on Plaintiff's claim that Trapani had personal knowledge

that the SunTrust Defendants subjectively knew the ALLL and Provision statements were false when they were made in December 2007 and February 2008, the SunTrust Defendants' counsel contacted Trapani.  After determining that Trapani was not represented by counsel, the SunTrust Defendants' counsel assisted Trapani in drafting two declarations (the "First Trapani Declaration" and "Second Trapani Declaration"), which were signed on September 20, and 26, 2011, respectively.

On September 28, 2011, the SunTrust Defendants filed the First and Second Trapani Declarations in this action [127].  Trapani states in his First Declaration, under penalty of perjury, that:

> 3.  The last day I performed my job at SunTrust was August 28, 2007.  . . .  I never had discussions with [Chancy, Wells, Fortin, and Panther] regarding the ALLL after August 28, 2007, and never told plaintiff's investigator that I did.
>
> 4.  I have no personal knowledge of SunTrust's operations and financial affairs after August 28, 2007.
>
> 5.  I had no involvement in the ALLL process after August 28, 2007 and was not involved in any way in the analysis of SunTrust's loan portfolio or in setting the ALLL estimate for the fourth quarter and year-end 2007.
>
> 6.  I have no personal knowledge of any facts or circumstances regarding the underlying data utilized, or the processes and judgments exercised in establishing the ALLL for the fourth quarter and year-end 2007.

      7.  Although I was involved in the preparation of the 10-Qs for the first and second quarter of 2007, I was not involved in any way in, and have no personal knowledge regarding, the preparation of the 2007 10-K or in the offering of SunTrust Capital IX trust preferred securities in February 2008.

(First Trapani Decl. ¶¶ 3-7).

      In his Second Declaration, Trapani, again under penalty of perjury, states:

      4.  Although my severance agreement provided that my employment with SunTrust did not technically end until December 31, 2007, I made clear to plaintiff's investigators that I was not at SunTrust and did not perform my job function after August 28, 2007.  I have no knowledge from any source regarding SunTrust's ALLL, reserves, provision, or any other aspect of SunTrust's operations or financial affairs after August 28, 2007.

      5.  . . . I have no knowledge from any source regarding the underlying data or data sources utilized in setting the ALLL, reserves or provision (or in exercising any judgments or in analyzing in any other aspects of SunTrust's operations or financial affairs) as of December 31, 2007, or at any other time after August 28, 2007.

      6.  . . . I have no knowledge from any source regarding SunTrust's ALLL, reserves, provision, or any other aspect of SunTrust's operations or financial affairs as of December 31, 2007, or at any other time after August 28, 2007.

      7.  I never told plaintiff's investigator that I discussed the level of SunTrust's ALLL, reserves or provision, or any other aspect of SunTrust's operations or financial affairs as [of] December 31, 2007 with Jim Wells, Ray Fortin, Mark Chancy, or Tom Panther.  I have never had any discussions with any of them, or any other SunTrust Defendant, regarding SunTrust's ALLL, reserves or provision, or any other aspect of SunTrust's

> operations or financial affairs as of December 31, 2007, or at
> any other time after August 28, 2007.
>
> 8.  I have no knowledge from any source regarding what
> opinions or beliefs Wells, Fortin, Chancy, Panther, or any other
> SunTrust Defendant, held regarding the appropriate level of
> SunTrust's ALLL, reserves or provision, or any other aspect of
> SunTrust's operations or financial affairs as of December 31,
> 2007, or at any other time after August 28, 2007.

(Second Trapani Decl. ¶¶ 4-8).

On September 28, 2011, the SunTrust Defendants and E&Y also filed their Motions for Reconsideration [128, 129].  The Underwriter Defendants joined the SunTrust Defendants' Motion for Reconsideration [132].  The SunTrust Defendants assert that the First and Second Trapani Declarations establish that Trapani did not, and does not, have personal knowledge of the subjective falsity of any statements by the SunTrust Defendants after August 27, 2007, and that the Court should reconsider its September 7th Order and dismiss all claims against the SunTrust Defendants.  E&Y moved for reconsideration on the grounds that the Court erred in construing Plaintiff's Amended Complaint as stating a Section 11 claim against E&Y for any purported statements other than its audit opinions, because Plaintiff's Amended Complaint predicates E&Y's Section 11 liability exclusively on E&Y's audit opinions.

On October 17, 2011, Plaintiff filed its responses to the SunTrust Defendants and E&Y's Motions for Reconsideration.  Plaintiff attached, to its response to the SunTrust Defendants' Motion for Reconsideration, a declaration from its investigator, Desiree Monty Torres, who interviewed Trapani before Plaintiff's original Complaint was prepared (the "Torres Declaration").  The Torres Declaration chronicles Plaintiff's investigator's prior interviews with Trapani and asserts that the content of the First and Second Trapani Declarations is in some ways in conflict with what Trapani previously represented to Plaintiff's investigator during those interviews—and, by extension, the information upon which Plaintiff relied when drafting its Complaint and Amended Complaint.  The Torres Declaration also, for the first time, identifies an additional anonymous witness at SunTrust, a Business Analyst in its Risk Management group, who supposedly corroborated certain unspecified statements Plaintiff's claim Trapani made to its investigator during its interviews with him.

On November 3, 2011, the SunTrust Defendants and E&Y filed their Motions for Sanctions pursuant to Federal Rule of Civil Procedure 11 and the PSLRA on the grounds that Plaintiff's allegations in the Amended Complaint, based on statements purportedly made by Trapani to Plaintiff's investigator, were fabricated and alleged without a reasonable basis or inquiry [139, 140].

On November 16, 2011, Trapani signed a third declaration under the penalty of perjury (the "Third Trapani Declaration," collectively the "Trapani Declarations").  The Third Trapani Declaration explains the circumstances under which he was initially contacted and interviewed by Plaintiff, how he was contacted by and provided the First and Second Trapani Declarations to SunTrust Defendants' counsel, and the extent of his contacts and interactions with his attorney during this litigation.  The Third Trapani Declaration does not revise, challenge, or call into question the accuracy of Trapani's statements in either the First or Second Trapani Declarations.

## II.     DISCUSSION

### A.     Standard for reconsideration

A district court has the discretion to revise or reconsider interlocutory orders at any time before final judgment has been entered.  See Fed. R. Civ. P. 54(b); Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1315 (11th Cir. 2000); McCoy v. Macon Water Auth., 966 F. Supp. 1209, 1222 (M.D. Ga. 1997).  The Court does not reconsider its orders as a matter of routine practice.  Local Rule 7.2 E., N.D. Ga.  The Court's Local Rules require the parties file any such motions for reconsideration "within twenty-eight (28) days after entry of the order or judgment."  Id.  The Local Rules also provide that "[p]arties and attorneys for the

parties shall not file motions to reconsider the court's denial of a prior motion for reconsideration." Id.

Motions for reconsideration are left to the sound discretion of the district court and are to be decided "as justice requires." See Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 806 (11th Cir. 1993); Cobell v. Norton, 355 F. Supp. 2d 531, 539 (D.D.C. 2005) ("asking 'what justice requires' amounts to determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances"); United States ex rel. Corsello v. Lincare, Inc., Civil Action No. 1:98-CV-0204-ODE, 2003 WL 25714876, at *6 (N.D. Ga. June 2, 2003). Motions for reconsideration are generally appropriate where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact. See Jersawitz v. People TV, 71 F. Supp. 2d 1330, 1344 (N.D. Ga. 1999); Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996). A motion for reconsideration should not be used to present the Court with arguments already heard and dismissed, or to offer new legal theories or evidence that could have been presented in the previously-filed motion. Bryan v. Murphy, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003); see also Pres. Endangered Areas, 916 F. Supp. at

1560 ("A motion for reconsideration is not an opportunity for the moving party and their counsel to instruct the court on how the court 'could have done it better' the first time.").

In the securities litigation context, where there is a higher scienter pleading standard under the PSLRA, a district court may reconsider an order denying a motion to dismiss, even where the defendant relies upon extrinsic evidence outside the pleadings, when a manifest factual error was made by the court based on "fraud [by the plaintiff], carelessness by [plaintiff's] counsel [in making its factual allegations], or by the court's own misperception of the facts."  See Mizzaro, 544 F.3d at 1247; City of Livonia Emps.' Ret. Sys. v. Boeing Co., Civil Action No. 09 C 7143, 2011 WL 824604, at *3-*5 (N.D. Ill. Mar. 7, 2011).[10]  This is especially true where the plaintiff does not, and cannot, dispute the existence of the "false information concerning [a confidential witness'] position and his personal knowledge" upon which the district court erroneously relied when ruling on the original motion to dismiss.  See id.; cf. In re Dynex Capital, Inc. Sec. Litig., No. 05

_____

[10] The Court notes that Plaintiff's counsel were counsel for plaintiff in Boeing. 2011 WL 824604, at *3-*5.  In Boeing, the district court granted a motion for reconsideration of a denial of a motion to dismiss an amended complaint.  Id.  The district court granted the motion for reconsideration upon determining that a manifest factual error was made after Plaintiff's counsel carelessly misrepresented to the court that a confidential witness, like Trapani, had personal knowledge of the defendants' fraud, and it was later discovered that the witness had no such knowledge.  Id.

Civ. 1897(HB)(DF), 2011 WL 2581755, at *4 (S.D.N.Y. Apr. 29, 2011)

(reconsideration appropriate "in the face of clear and undisputed evidence that the

confidential witnesses who had supposedly provided the basis for allegations of

scienter had not actually worked at the defendant company at the relevant time and

had no personal knowledge of the statements attributed to them").

      B.     <u>Reconsideration of dismissal of the claims against the SunTrust<br>Defendants</u>

The Court's September 7th Order relied on and accepted as true Plaintiff's

assertion that Trapani had personal knowledge of the SunTrust Defendants

knowledge regarding the falsity of the ALLL and Provision statements at the end

of 2007 and in early 2008.  Trapani has since filed declarations that clearly

demonstrate that he did not have personal knowledge of the SunTrust Defendants'

subjective knowledge regarding the ALLL and Provision because he ceased

working at SunTrust on August 28, 2007.  These declarations, which are new

evidence of a manifest factual error caused, at best, by Plaintiff's counsel's

carelessness—which is discussed below—present the Court with the opportunity to

correct its September 7th Order, which was based on its misperception of the facts

due to Plaintiff's carelessness, and ensure justice is done.  <u>See</u> <u>Region 8 Forest</u>

<u>Serv. Timber Purchasers Council</u>, 993 F.2d at 806; <u>City of Livonia Emps.' Ret.</u>

Sys., 2011 WL 824604, at \*3-\*5; Lincare, Inc., 2003 WL 25714876, at \*6;

Jersawitz, 71 F. Supp. 2d at 1344; Pres. Endangered Areas, 916 F. Supp. at 1560.

Plaintiff, in a scattershot of arguments in its response to the SunTrust
Defendants' Motion for Reconsideration, asserts that the Court should disregard
the Trapani Declarations and deny the SunTrust Defendants' motion because the
declarations are recantations, the declarations are not new evidence that was
previously unavailable to the SunTrust Defendants, and there are disputes of fact
between the Trapani Declarations and the Torres Declaration that make dismissal
of Plaintiff's claims inappropriate.  Plaintiff also claims that there are factual
allegations in its Amended Complaint that do not rely upon Trapani's personal
knowledge that support its claims regarding the SunTrust Defendants' subjective
knowledge of the falsity of the December 2007 and February 2008 statements
about the ALLL and Provision.

Plaintiff further asserts, for the first time on reconsideration, that Trapani's
statements to Plaintiff's investigator also are based on hearsay information from
other confidential persons who reported information to Trapani about events at
SunTrust after Trapani left SunTrust's employment.  Plaintiff argues the Court
should now accept that this uncorroborated, hearsay information from confidential
sources, purportedly known by Trapani, is an acceptable basis upon which to base

its fraud allegations in the Amended Complaint.  None of these arguments are
sufficient to preclude this Court from considering the Trapani Declarations or
granting the SunTrust Defendants' Motion for Reconsideration.

>   1.   *Whether the Trapani Declarations are recantations or new*
>        *evidence*

Trapani's declarations are not recantations of testimony because he has not
previously testified or given an inconsistent statement regarding his personal
knowledge of events at SunTrust after August 2007.  See In re Davis, 565 F.3d
810, 825 (11th Cir. 2009) (citing cases).[11]  The Trapani Declarations are new
evidence because the facts in them were unavailable prior to the filing of the
Court's September 7th Order due to Trapani's refusal to provide additional
information without a court order and the unavailability of the discovery process
pursuant to the stay requirements of the PSLRA.  See 15 U.S.C. § 78u-4(b)(3)(B);
Williams v. Obstfeld, 314 F.3d 1270, 1275 n.6 (11th Cir. 2002); (Order of Feb. 17,
2011, at 5-13).[12]

---

[11] That Trapani has "never wavered" in his statements regarding the fact that he has
no personal knowledge of events at SunTrust after August 2007 is an additional
ground for finding that the Trapani Declarations are not recantations that should be
viewed with suspicion.  See United States v. Rodriguez, 437 F.2d 940, 942 (5th
Cir. 1970).

[12] The Court also finds these declarations are not the product of intimidation and
Plaintiff's counsel's conduct in claiming that the SunTrust Defendants compelled
or intimidated a witness into filing a false declaration under oath—especially in

2.     *Whether the Trapani Declarations create disputes of fact and issues of credibility*

Although seemingly in conflict, there are also no disputed facts between the Trapani Declarations and the Torres Declaration regarding Trapani's lack of personal knowledge of the SunTrust Defendant's subjective knowledge of the truth of the ALLL and Provision statements at the end of 2007 and in early 2008.  The Trapani Declarations and the Torres Declaration are consistent in that they both clearly establish that Trapani did not have personal knowledge after August 28, 2007, regarding whether the SunTrust Defendants subjectively knew at the end of 2007 and in early 2008 that the ALLL and Provision statements were false.  In fact, he did not have any knowledge of the ALLL or Provision determination or the reliability of the data and other information on which the ALLL or Provision were evaluated or determined.

---

light of the extensive record of cooperative email correspondence between Trapani and the SunTrust Defendants' counsel—is an unwarranted and implausible accusation.  (Ex. B to SunTrust Defs.' Reply Memo. in Supp. of its Mot. for Rule 11 Sanctions; Pls.' Resp. to SunTrust Defs.' Mot. for Reconsideration at 4).  The Court further notes that Plaintiff's allegation that Trapani was represented by counsel at the time he was contacted is also questionable in light of Trapani's statements in his declarations and the email correspondence submitted by the SunTrust Defendants indicating that Trapani had not engaged an attorney to represent him and did not consider himself to be represented at the time he spoke with the SunTrust Defendants' counsel.  (See, e.g., Ex. A to SunTrust Defs.' Reply in Supp. of Mot. for Reconsideration; Supplemental Trapani Decl. ¶ 2).

The statements from the Torres Declaration regarding what Trapani knew after he was placed on administrative leave on August 28, 2007, further support the conclusion that Trapani did not have any personal knowledge regarding what the SunTrust Defendants subjectively knew at the end of 2007 and in February 2008 regarding the veracity of the ALLL and Provision statements.   The Torres Declaration includes a number of statements made by Trapani to Plaintiff's investigator regarding events or business activities at SunTrust after he was being placed on administrative leave, none of which provide support for Plaintiff's allegation in its Amended Complaint that the SunTrust Defendants knew their statements about the ALLL and Provision were false in December 2007 and February 2008.  (Torres Decl. ¶¶ 44, 54, 58, 59, 72, 75).

Paragraph 44 of the Torres Declaration does not support Plaintiff's allegations because it only states that Trapani learned from some unidentified person at SunTrust after he was placed on administrative leave that "the ALLL Committee lowered the reserves recommended by the Reserve Working Group in December 2007."  (Id. ¶ 44).

Paragraph 54 of the Torres Declaration states: "Based on his review of SunTrust's public filings, Mr. Trapani stated that SunTrust reserves to total loans ratio was 0.97 at the end of 2007, 1.79 at the end of 2008, and 2.63 in 2009."  (Id.

¶ 54).  Paragraph 54 also contains Trapani's opinion that "SunTrust needed to be carrying reserves in the range of 1.75 to 2 percent at the end of 2007 to be adequately reserved for probable and identified losses."  (Id.).  These reviews of documents and statements of Trapani's opinion based on information known to him months before the ALLL and Provision were determined at the end of 2007 do not support Plaintiff's allegations regarding the purported subjective falsity of the SunTrust Defendants' statements.

Paragraph 58 of the Torres Declaration generally states that Trapani was involved in discussions with the SunTrust Defendants regarding SunTrust being under-reserved.  (Id. ¶ 58).  Paragraph 58 does not state that Trapani knew, or could have known, that any SunTrust Defendant had subjective knowledge that SunTrust was under-reserved after Trapani's last day on August 28, 2007.  (Id.).

Similarly, paragraph 59 of the Torres Declaration states that until Trapani went on administrative leave on August 28, 2007, Trapani claimed that Fortin knew SunTrust was under-reserved and represented that after he left SunTrust that Fortin also knew SunTrust was under-reserved.  (Id. ¶ 59).  However, paragraph 59 does not provide any support for Plaintiff's allegation that Trapani knew, after being placed on administrative leave on August 28, 2007, Fortin's subjective knowledge regarding whether SunTrust was under-reserved in December 2007 or

February 2008.  (Id.).  The statement attributed to Trapani by Plaintiff's investigator in the Torres Declaration that Trapani knew, after his departure in August 2007, that Fortin knew SunTrust was under-reserved is speculation and not a factual assertion based on Trapani's personal knowledge.  It is at most opinionated extrapolation disguised as an allegation of fact.

In paragraph 72(c) of the Torres Declaration, Plaintiff claims that Trapani stated his opinion during an interview with Plaintiff's investigator "that he informed [the SunTrust Defendants' counsel] during his discussions with him that SunTrust was **likely** under-reserved through the fourth quarter of 2007 because the delinquencies were rising so fast and SunTrust was so under-reserved as of the third quarter 2007 (i.e., as of August 28, 2007), that there would have had to have been a significant trend reversal or an obvious significant increase in reserves for the reserves to be deemed adequate."  (Id. ¶ 72) (emphasis added).  This statement attributed to Trapani by Plaintiff's investigator states, at most, Trapani's speculation about what happened after Trapani left SunTrust.  It does not provide support for Plaintiff's allegation that the SunTrust Defendants subjectively knew that the ALLL and Provision statements were false in December 2007 and February 2008.  (Id.).

In paragraph 75 of the Torres Declaration, Plaintiff claims that in a September 24, 2010, interview, Trapani "represented that he learned of certain decisions made by the ALLL committee regarding lowering the reserves recommended by the Reserve Working Group in December 2007 from an individual who still worked at SunTrust as a Business Analyst." (Id. ¶ 75). Notably, Plaintiff does not assert that Trapani learned that the SunTrust Defendants subjectively knew that the statements about the ALLL were false in December 2007 or February 2008, but only that he was told certain business decisions were made in December 2007.[13,14]  (Id.).  Like the other statements Plaintiff's attribute

---

[13] In paragraph 76 of the Torres Declaration, Plaintiff also seeks to introduce evidence that has been in its possession since at least February 18, 2010, regarding statements attributable to an additional unnamed witness who was supposedly present at Reserve Working Group and ALLL committee meetings through the end of 2007.  (Torres Decl. ¶ 76).  Because evidence that could have been presented in response to the previously-filed motion to dismiss should not be brought forward on a motion for reconsideration, the Court will not consider these new arguments based on statements by an anonymous witness that Plaintiff seeks to place before the Court through the Torres Declaration.  See Bryan, 246 F. Supp. 2d at 1259. The Court also finds that even if it were to consider this newly-identified anonymous witness who was supposedly present at RWG and ALLL committee meetings through the end of 2007, there is nothing in Plaintiff's proffered statements by this witness that supports its claim that the SunTrust Defendants subjectively knew that the statements about the ALLL and Provision were false in December 2007 and early 2008.  See Mizzaro, 544 F.3d at 1240; (Torres Decl. ¶ 76).  At most and taken in the light most favorable to Plaintiff, these proffered statements reflect the opinions of unidentified members of SunTrust's Credit Risk organization regarding whether SunTrust was adequately reserved for its

to Trapani in the Torres Declaration, this assertion does not support Plaintiff's allegation that the SunTrust Defendants subjectively knew that the ALLL and Provision statements were false at the end of 2007 and in early 2008. (Id.).

The Court finds that the alleged statements by Trapani that are recounted in the Torres Declaration do not support Plaintiff's allegation that the SunTrust Defendants subjectively knew that its ALLL and Provision statements were false in December 2007 or early 2008. The Torres Declaration and Trapani Declarations are consistent with each other, Trapani's credibility is not at issue on this point, and any claimed differences between the Declarations do not alter the indisputable conclusion that Trapani lacks any personal knowledge of the SunTrust Defendants' knowledge and beliefs after August 2007.

---

commercial real estate assets and internal disagreement regarding how to address non-accruing assets at the end of 2007. See id.

[14] In paragraphs 77 through 82 of the Torres Declaration, Plaintiff also identifies yet another anonymous, additional unnamed witness who supposedly has information regarding SunTrust's accounting practices based on his position as a business analyst. This witness is not mentioned in Plaintiff's Amended Complaint and his allegations will not be considered in evaluating the sufficiency of Plaintiff's claims. Even if this anonymous witness' knowledge was included in Plaintiff's Amended Complaint, the Court would find that a review of the knowledge and position of this additional unnamed witness makes clear that he knows nothing about, and was not in a position to know as a business analyst who worked "'downstream' from Chief Risk Officer Freeman," whether any of the SunTrust Defendants subjectively knew that the statements about the ALLL and Provision were false in December 2007 or February 2008. See Mizzaro, 544 F.3d at 1240.

      3.     *Whether other statements by anonymous witnesses support*
              *Plaintiff's allegation of subjective falsity*

Plaintiff additionally claims that even if the Trapani Declarations are considered and its allegations in Plaintiff's Amended Complaint based on Trapani's alleged statements and knowledge are disregarded, statements by other unidentified witnesses support those allegations.  (Am. Compl. ¶¶ 103-112, 139).  The Court has again reviewed Plaintiff's Amended Complaint and there are no statements attributed to any anonymous confidential source, besides Trapani, that support the proposition that the SunTrust Defendants subjectively knew that the statements in the ALLL and Provision were false at the end of 2007 or early 2008.[15]

Plaintiff also now contends that Trapani's knowledge of SunTrust's business practices at the end of 2007 and what transpired after he departed on August 28, 2007, is based on conversations he had with people who worked there after he left on administrative leave.  (Pls.' Resp. to SunTrust Defs.' Mot. for Reconsideration

---

[15] The Court also finds that these newly-disclosed confidential sources—noted in the Torres Declaration—who supposedly corroborate Trapani's statements to Plaintiff's investigator, fail to provide support for Plaintiff's allegation that the SunTrust Defendants subjectively knew the ALLL and Provision statements were false at the end of 2007.  The Court finds these anonymous sources and allegations are not reliable, are not clearly alleged in Plaintiff's Amended Complaint, and do not support Plaintiff's allegations regarding the subjective falsity of the ALLL and Provision statements.  See Mizzaro, 544 F.3d at 1240.

at 8 n.5; Am. Compl. ¶ 139).  The Trapani Declarations, of course, do not disclose that Trapani had conversations after August 28, 2007, with persons employed by SunTrust who were knowledgeable about the ALLL and Provision determination at end of year 2007 or February 2008.  Even if the allegations were based on information purportedly known by persons other than Trapani—a claim for which there is no support in the Amended Complaint—none of the allegations in Plaintiff's Amended Complaint that are based on any of Trapani's second-hand knowledge of SunTrust's business practices regarding the ALLL can be construed as providing support for Plaintiff's allegation that the SunTrust Defendants subjectively knew that their ALLL and Provision statements were false in December 2007 or February 2008.  Trapani is unequivocal in his declarations that he had "no knowledge from any source regarding SunTrust's ALLL, reserves, provision, or any other aspect of SunTrust's operations or financial affairs after August 28, 2007," and did not have any "knowledge from any source regarding what opinions or beliefs [Defendants] held regarding the appropriate level of SunTrust's ALLL, reserves or provision, or any other aspect of SunTrust's operations or financial affairs as of December 31, 2007," or thereafter.  (Second Trapani Decl. ¶¶ 4-8).

The Court finds that the declarations constitute new evidence and that the Court should correct the manifest factual error, caused at least by Plaintiff's counsel's carelessness, that it relied upon in its September 7th Order regarding Trapani's knowledge of the subjective falsity of the SunTrust Defendants' knowledge regarding the ALLL and Provision statements in December 2007 and February 2008.  The Court further finds that Plaintiff's allegation that the SunTrust Defendants subjectively knew the ALLL and Provision statements were false in December 2007 or February 2008 is not supported by the allegations in the Amended Complaint, is based on mere conclusory statements, and fails to meet the Twombly plausibility test.  Plaintiff's allegations regarding the subjective falsity of the SunTrust Defendants' statements about the ALLL and Provision are conclusory and unsupported, and it would constitute a manifest injustice upon the SunTrust Defendants to not reconsider the September 7th Order in light of the new evidence presented to the Court.  In doing so, the Court concludes that Plaintiff's Section 11 claims, and by extension the Section 12 and 15 claims that rely upon the Section 11 claims, are required to be dismissed with prejudice.[16]

---

[16] Because the claims against the Underwriter Defendants are derivative of the claims against the SunTrust Defendants, Plaintiff's claims against the Underwriter Defendants are also dismissed with prejudice.  (September 7th Order at 30).

C.    <u>Reconsideration of dismissal of the claims against E&Y</u>

The Court previously determined, and Plaintiff does not contest, that Plaintiff's "claims against E&Y are based on whether the ALLL and Provision were believed by SunTrust entity Defendants and individual SunTrust Defendants Chancy, Wells, Fortin, and Panther to be true" because those claims are based on E&Y having consented to the incorporation of its audit report in the December 2007 10-K and February 2008 RS/P.  (Pl.'s Opp. to Def. E&Y's Mot. for Reconsideration at 9; Order of Sept. 7, 2011, at 31).  Having found on reconsideration that Plaintiff fails to state a Section 11 claim against the SunTrust Defendants based on their subjective knowledge that the ALLL and Provision were false at year-end 2007, the Court also finds that, to the extent Plaintiff asserts claims against E&Y based on E&Y having consented to the incorporation of its audit report in the December 2007 10-K and February 2008 RS/P, Plaintiff fails to state a Section 11 claim against E&Y.

E&Y also seeks relief on reconsideration on the grounds that Plaintiff's Amended Complaint does not allege a Section 11 claim against E&Y for statements other than its audit opinions.  E&Y asserts that Plaintiff brings claims against it based exclusively on E&Y's allegedly false audit opinions and, because the Court found Plaintiff's Amended Complaint sounds in fraud, Plaintiff has

failed to plead its claims against E&Y with the particularity required by Federal Rule of Civil Procedure 9(b) or plead facts indicating the audit opinions were subjectively false when issued.  (September 7th Order at 18-20).[17]

The Court agrees that Plaintiff's Amended Complaint states claims against E&Y based only on its audit opinions.  (Am. Compl. ¶ 196; see also Pl.'s Consolidated Opp'n to Defs.' Mot. to Dismiss [117] at 37).  In pleading its claim against E&Y regarding the falsity of these opinions, Plaintiff's Amended Complaint, at most, alleges that unknown representatives of E&Y were present at ALLL committee meetings where discussions occurred regarding lowering of SunTrust's ALLL and therefore its audit opinions must be false because it purportedly relied on SunTrust's ALLL and Provision determinations and representations that SunTrust "maintained . . . effective internal controls over financial reporting, based on the COSO criteria."  (Am. Compl. ¶¶ 58, 196-204).[18]

---

[17] Like Plaintiff's allegations against the SunTrust Defendants regarding their statements and opinions about whether SunTrust had adequate reserves for its predicted loan losses, the Court finds that the allegations against E&Y, based on false audit opinions, are also subject to a requirement that Plaintiff allege and show subjective falsity because E&Y's audit opinions are statements of opinion or belief about SunTrust's financial results, the effectiveness of a company's internal controls, and compliance with accounting standards.  See, e.g., Washtenaw Cnty., 2008 WL 2302679, at *8; (September 7th Order at 22-23).

[18] The Court notes that because Plaintiff's Amended Complaint primarily relied upon Trapani's personal knowledge to support for its allegations, there is no support for the allegation that E&Y representatives were present at any SunTrust

We now know that any meetings E&Y personnel might have attended, and upon which the Amended Complaint is based, had to have taken place before August 28, 2007.

A plaintiff in a securities fraud action who asserts claims against an accountant based on the accountant's audit opinions is required to allege, with particularity, that the opinions issued were subjectively false—that is that the accountants did not actually believe their opinions when they were issued.  See Washtenaw Cnty., 2008 WL 2302679, at *8 (citing Va. Bankshares, 501 U.S. at 1095); Rubke, 551 F.3d at 1162; Fait, 712 F. Supp. 2d at 120; In re CIT Grp. Inc. Sec. Litig., 349 F. Supp. 2d at 689; Podany, 318 F. Supp. 2d at 154.

The scant allegations in Plaintiff's Amended Complaint fail to state a claim that the E&Y audit opinions were subjectively false when issued and fail to satisfy the requirements of Federal Rule of Civil Procedure 9(b) by failing to specify the who, what, where, when, and how regarding the development and falsity of E&Y's audit opinions.[19]

---

meetings after August 2007 where they could have obtained knowledge about any lowering of the ALLL or Provision.

[19] Trapani's allegations and declarations now establish that he did not have information regarding E&Y's knowledge of the truth or falsity of the ALLL and Provision determinations and thus there is not any support for the factual allegation that the ALLL and Provision determinations were wrong or unreliable.  The

The Court finds Plaintiff's claims in its Amended Complaint against E&Y only include assertions that E&Y's statements about its audit opinions were false. (Am. Compl. ¶¶ 58, 95-96, 194-215).  The Court further finds Plaintiff's allegations regarding E&Y's audit opinions are conclusory, if not speculative, and Plaintiff's Amended Complaint does not sufficiently allege particularized facts regarding the subjective falsity of E&Y's audit opinions or facts to satisfy the requirements of Federal Rule of Civil Procedure 9(b).  Plaintiff fails to state a claim for relief in its Amended Complaint against E&Y, and, on reconsideration, E&Y's Motion to Dismiss is granted.

D.   <u>Sanctions</u>

Federal Rule of Civil Procedure 11 requires that every pleading or motion filed by an attorney contain "claims, defenses, and other legal contentions [that] are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" and all "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b).

---

Trapani Declarations certainly do not support that E&Y was on notice of an irregularity—if there was any—in the ALLL and Provision determinations.

Federal Rule of Civil Procedure 11 authorizes the district court to impose sanctions if a party files pleadings that contain factual contentions that the party knows to be untrue.  Id. at 11(c).  Rule 11 also requires that parties engage in a reasonable inquiry to determine that the information presented to the court is true.  Id. at 11(b).  The Rule provides that the district court, on its own initiative, may require a party to "show cause" why its conduct has not violated Rule 11(b).  Id. at 11(c)(3).  Imposing sanctions pursuant to Rule 11 is committed to the district court's discretion.  See Attwood v. Singletary, 105 F.3d 610, 612 (11th Cir. 1997).[20]  Before sanctions are imposed, however, due process requires notice and an opportunity to respond.  Id. at 613; see also Fed. R. Civ. P. 11(c).

The Eleventh Circuit has instructed that "a court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made reasonable inquiry."  Jones v.

---

[20] The Court notes Plaintiff's counsel's similar conduct in other jurisdictions and has considered those prior acts in assessing Plaintiff's litigating conduct in this action.  See City of Livonia Emps.' Ret. Sys., 2011 WL 824604; Campo v. Sears Holding Corp., 635 F. Supp. 2d 323 (S.D.N.Y. 2009); Fed. R. Civ. P. 11 Adv. Comm. Notes to 1993 ("whether the person has engaged in similar conduct in other litigation" may be considered "in deciding whether to impose a sanction" after finding a violation of Rule 11).

Int'l Riding Helmets, Ltd., 49 F.3d 692, 695 (11th Cir. 1995); see also Kaplan v. DaimlerChrysler, A.G., 331 F.3d 1251, 1255 (11th Cir. 2003) ("courts determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified").  This determination is to be "gleaned from facts and law known or available to the attorney *at the time of filing*."  See id.

The PSLRA also requires that:

> In any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.

15 U.S.C. § 78u-4(c).  If a party is determined to have violated Rule 11, the PSLRA requires that sanctions be imposed after giving "such party or attorney notice and an opportunity to respond."  Id.

The Court may also award sanctions pursuant to its general power to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases."  Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (internal quotations omitted).  The Court has the inherent power to impose sanctions against attorneys or clients, or both, who act "'in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  Byrne v. Nezhat, 261 F.3d 1075, 1106 (11th Cir. 2001) (quoting Chambers, 501 U.S. at 45-46), abrogated on other grounds by Bridge v. Phoenix

41

Bond & Indem. Co., 553 U.S. 639 (2008).  The threshold inquiry for whether

sanctions should be imposed is a finding of bad faith.  Byrne, 261 F.3d at 1106

(quoting Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998) ("[t]he key to

unlocking a court's inherent power is a finding of bad faith.")).  "Because the

court's inherent power is so potent, it should be exercised with restraint and

discretion."  Byrne, 261 F.3d at 1106 (internal quotation marks omitted).

The record before the Court regarding Plaintiff's counsel's conduct is

troubling.  Having reviewed the Amended Complaint and briefing on Defendants'

motions to dismiss and for reconsideration, the Court reaffirms that it was led to

believe by Plaintiff's counsel that Trapani had knowledge of Defendants' actual

review of data upon which the ALLL and Provision were determined in late 2007

and as represented in public disclosures in February 2008.  Plaintiff's counsel

carelessly—or cleverly—led the Court to believe in the Amended Complaint, and

its response to Defendants' Motions to Dismiss, that Trapani's knowledge was

personal and current through the end of 2007.  That was not true.  The question is

under what circumstances would counsel for Plaintiff make these representations

to the Court—representations that were the underpinning of the Court's decision in

its September 7th Order.  A remaining question is why Plaintiff did not,

immediately after the September 7th Order was docketed, advise the Court that

Trapani, as represented by the SunTrust Defendants, had left SunTrust's employ in late August 2007.

Plaintiff offers a laundry list of excuses to explain its conduct.  For example, it now claims its Amended Complaint actually was, in part, based on other anonymous current and former SunTrust employees—even though neither the Amended Complaint nor Plaintiff's response to Defendants' Motions to Dismiss disclosed or suggested its reliance on these other sources.  Plaintiff also claims it relied entirely on information reported to it by its investigators—Worms & Hirsch, Inc., including its interviews with Trapani.  Plaintiff's counsel suggests that it would be unethical for lawyers for plaintiffs to have personally interviewed Trapani because it could subject them to be witnesses in this litigation—a dubious and unprecedented interpretation of any professional ethics code.[21]  This laundry list of explanations and excuses is itself disturbing.

It appears here that no lawyer representing Plaintiff ever met with or interviewed Trapani about what he knew, whether he was credible, or even how long he actually worked for SunTrust and the currency of his knowledge.  For whatever legitimate or perceived reason, Plaintiff's counsel decided to rely

---

[21] Plaintiff's misguided interpretation of attorney participation in interviews would prohibit prosecutors from interviewing witnesses during criminal investigations and prohibit a responsible lawyer from evaluating witness credibility during the investigation of criminal charges or civil claims.

exclusively on its investigators and believed it was appropriate to do so without further inquiry.

The Torres Declaration chronicles the statements Plaintiff's investigator attributed to Trapani and which she apparently reported to Plaintiff's counsel. The information Torres reported arguably supported Plaintiff's contention that Trapani had personal knowledge of SunTrust's operations through the end of 2007. The question is whether the decision to rely on an investigator was merely careless or whether it was a self-serving calculation, and, if so, whether the result was the filing of a pleading that violated Rule 11. This is a close, difficult issue.

Having closely examined the Torres Declaration, it appears Torres did not include in her report to Plaintiff's counsel information that made clear that Trapani had no personal knowledge of events at SunTrust after he was placed on administrative leave in August 2007. Rather, the Torres Declaration supports a conclusion that Plaintiff's counsel relied upon the information Torres misleadingly reported as factual support for the claims that were made by Plaintiff in the original Complaint and subsequent pleadings. Only now, with the benefit of the Trapani and Torres Declarations, is it clear that Trapani did not have the knowledge Plaintiff's claimed he did in their pleadings. The Court also notes that Trapani had refused to give additional information without a court order and discovery had

largely been stayed—preventing either party from conducting additional fact

development, verifying the statements reported to Plaintiff by its investigator and

contained in its original Complaint, or verifying the SunTrust Defendants'

contention—raised at the time Plaintiff filed its Amended Complaint—that Trapani

lacked personal knowledge of events at SunTrust beyond August 2007.  See

McGuire Oil Co. v. Mapco, Inc., 958 F.2d 1552, 1563 (11th Cir. 1992) (in

assessing reasonableness of party's inquiry, a court may consider extent to which

factual development requires discovery, complexity of facts, and legal issues

involved); see also Fed. R. Civ. P. 11 Adv. Comm. Notes to 1993 ("sometimes a

litigant may have good reason to believe that a fact is true or false but may need

discovery, formal or informal, from opposing parties or third persons to gather and

confirm the evidentiary basis for the allegation").  The Court thus finds, albeit

reluctantly, that at the time Plaintiff filed its pleadings, Plaintiff erroneously, at

least carelessly, or perhaps under the cover of plausible deniability, assumed that

Trapani, based on his position and contacts at SunTrust as reported by its

investigator, had personal knowledge of events at SunTrust through the end of

2007.[22]

---

[22] The Court notes that while Plaintiff could have conducted additional due
diligence beyond relying on its investigator's report of the statements attributed to
Trapani in preparing its pleadings—particularly after being told by the SunTrust

In hindsight and with the benefit of the Torres and Trapani Declarations—as the chart attached to the SunTrust Defendants' Motion for Sanctions amply demonstrates—the positions Plaintiff took in its Amended Complaint were misleading or, at least, unsupported.  See Jones, 49 F.3d at 695 ("The prohibition against using hindsight to determine whether a pleading had a reasonable basis when filed is intended to protect parties who file pleadings which appear well-grounded when filed, but which discovery or subsequent investigation reveals to be meritless.").  Although a close and reluctant call, the Court is simply not able to conclude on the facts here that Plaintiff's conduct violated Rule 11 or rises to the level of bad faith such that sanctions are appropriate.[23]

## III.   CONCLUSION

For the foregoing reasons,

---

Defendants that Trapani was not present at SunTrust beyond August 27, 2007, and in light of prior sanctions imposed on Plaintiff's counsel by other courts—its conduct in relying upon what was conveyed to it by its investigator is not patently unreasonable and there is no proof that Plaintiff believed, at the time of filing its pleadings, that Trapani did not have the knowledge that it claimed he did about the SunTrust Defendants' knowledge of the falsity of the ALLL and Provision statements.

[23] In view of the vigorous defense of Plaintiff's counsel's conduct in response to the Defendants' Motions for Sanctions, the Court concludes a hearing on this matter could not offer additional facts to inform the decision reached here.

**IT IS HEREBY ORDERED** that the SunTrust Defendants' Motion for Reconsideration [128] and E&Y's Motion for Reconsideration [129] are **GRANTED**.  Plaintiff's claims against all Defendants are **DISMISSED**.

**IT IS FURTHER ORDERED** that the SunTrust Defendants' Motion for Rule 11 Sanctions Against Plaintiff and Plaintiff's Counsel [139] and E&Y's Motion for PLSRA and Rule 11 Sanctions Against Plaintiff and Plaintiff's Counsel [140] are **DENIED**.

**SO ORDERED** this 28th day of August, 2012.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE